IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE GOODYEAR TIRE & RUBBER COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:20-cv-06347-JLG-EPD |
| v. | ) ) ) ) | Hon. James. L. Graham <br> Hon. Magistrate Elizabeth A. Preston Deavers |
| CONAGRA FOODS, INC., *et al.*, | ) ) ) ) ) | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST R.J. REYNOLDS TOBACCO HOLDINGS, INC.** |
| Defendants. | ) | |

Plaintiff The Goodyear Tire & Rubber Company ("Plaintiff" or "Goodyear"), by and through counsel and pursuant to Federal Rule of Civil Procedure 56(a), respectfully submits this Reply in Support of its Motion for Partial Summary Judgment (ECF No. 64) on the CERCLA liability of Defendant R.J. Reynolds Tobacco Holdings, Inc. ("Reynolds").

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT........................................................................................................................1

    I.     Plaintiff Established that its Response Costs are Consistent with the NCP ..................2

    II.    Plaintiff Established that Reynolds Disposed of Hazardous Substances at the JCL Site ...................................................................................................................................5

          A.     The Brown Affidavit Presents Testimony that Will be Admissible at Trial......5

          B.     There is no Genuine Dispute that Reynolds' Waste Contained Hazardous Substances.................................................................................................6

CONCLUSION...................................................................................................................10

ii

## TABLE OF AUTHORITIES

**CASES**

*C&C Millwright Maintenance Co. v. Town of Greeneville, Tenn.*, 946 F. Supp. 555 (E.D. Tenn. Nov. 23, 1996) .................................................................................................................. 4
*Containerport Grp. v. Am. Fin. Grp.*, 128 F. Supp. 2d 470 (S.D. Ohio, Jan. 16, 2001) ................ 2
*Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2020 WL 614698 (S.D. Ohio Feb. 10, 2020) ........................................................................................................................... 6
*Matter of James Wilson Associates*, 965 F.2d 160 (7th Cir. 1992) ............................................... 6
*Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335 (6th Cir. 1993) ....................................................... 1
*Nutrasweet Co. v. X-L Engineering Co.*, 227 F.3d 776 (7th Cir. 2000) ........................................ 3
*Sherwin-Williams Co. v. City of Hamtramck*, 840 F. Supp. 470 (E.D. Mich. Dec. 22, 1993) ....... 4
*Whitt Mach., Inc. v. Essex Ins. Co.*, 631 F. Supp. 2d 927 (S.D. Ohio 2009) .................................. 1

**RULES**

40 C.F.R. § 300.700 .......................................................................................................................... 4
Fed. R. Civ. P. 56(a) .......................................................................................................................... i

## INTRODUCTION

Reynolds does not dispute several aspects of its CERCLA liability, entitling Plaintiff to summary judgment at least on these elements: that (1) the JCL Site is a "facility" and (2) there was a release or threatened release of hazardous substances at the Site. For the remaining two elements of CERCLA liability—that the release (3) has caused Plaintiff to incur "necessary" response costs "consistent with the National Contingency Plan" and that (4) Reynolds falls within one of the four categories of potentially responsible parties—Reynolds disputes very little of the underlying facts. Regarding costs, while Reynolds purports to dispute this element, it cannot *genuinely* dispute that Goodyear has incurred at lease *some* recoverable response costs in this case, which is all that Goodyear must show to establish liability.

As to the fourth element, Reynolds admits that it arranged to have food processing waste disposed of at the JCL site, *see* Def.'s Resp. 2 (ECF No. 90), PageID 4928, but claims that waste would not have contained hazardous substances. But, again, Reynolds fails to demonstrate a *genuine* dispute of material fact on this issue. In responding to a motion for summary judgment, "the non-movant must present 'significant probative evidence' demonstrating that 'there is [more than] some metaphysical doubt as to the material facts' to survive summary judgment and proceed to trial on the merits." *Whitt Mach., Inc. v. Essex Ins. Co.*, 631 F. Supp. 2d 927, 932 (S.D. Ohio 2009) (quoting *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339–40 (6th Cir. 1993)). That is exactly what Reynolds did in this case. Accordingly, Plaintiff is entitled to summary judgment on Reynold's arranger liability as well.

## ARGUMENT

In its opposition, Reynolds attempts to dispute that Goodyear's response costs are consistent with the NCP and that the food processing waste which it admits it sent to the JCL Site

1

for disposal contained any hazardous substances. Yet as explained below, Reynolds has failed to raise a genuine dispute as to either element of its CERCLA liability.

**I.      Plaintiff Established that its Response Costs are Consistent with the NCP**

Reynolds argues that Goodyear failed to establish that its response costs are necessary and consistent with the NCP, precluding summary judgment. Reynolds submits no evidence in support of its argument and its interpretation of legal authorities relied upon is flawed. Plaintiff is entitled to summary judgment on this element of CERCLA liability as there is no genuine dispute of material fact that Goodyear has incurred at least *some* response costs that are consistent with the NCP, which is all that is required to establish liability.[1]

At the outset, in a partial summary judgment motion on a defendant's liability under CERCLA, a plaintiff need not demonstrate consistency with the NCP to prevail. In *Containerport Group v. American Financial Group.*, this Court previously held that "to establish a prima facie case of CERCLA liability, it is not necessary for Plaintiff to prove that the response costs were 'necessary' or 'consistent with the NCP.'" *Containerport Grp. v. Am. Fin. Grp.*, 128 F. Supp. 2d 470, 480-81 (S.D. Ohio, Jan. 16, 2001). Instead, these issues—whether the costs are "necessary" or "consistent with the NCP'—are "relevant only in determining which costs are ultimately recoverable." *Id.* at 481. Thus, "all that is needed at this stage of the litigation is for Plaintiff to show that it incurred at least one recoverable cost in response to the release of hazardous substances." *Id.* In *Containerport Group*, the Court found that the plaintiff met this test by showing that it had incurred investigatory costs to perform a site assessment, which fall within the definition of response costs. *Id.*

---

[1] Reynold's NCP consistency arguments are thus a red herring. The Court can grant Goodyear's motion without wading into the NCP consistency issue, which will be a subject of expert testimony.

2

In this case, Reynolds cannot seriously challenge that Goodyear has incurred "at least one recoverable cost in response to the release of hazardous substances." In support of summary judgment, Goodyear submitted an affidavit of Jeffrey A. Sussman, Senior Manager of Global Remediation for Goodyear, as sworn testimony concerning Goodyear's response costs incurred through December 4, 2020. (ECF No. 64-13). In response, Reynolds offers no evidence to contradict Mr. Sussman's affidavit or Ohio EPA's statements that actions under the 2016 DFFOs which are approved will be presumed consistent with the NCP.

Defendant challenges the consistency of costs with the NCP by isolating two factors courts consider in determining NCP consistency of a state-led cleanup: approval and monitoring by a state agency and the provision of notice and opportunity for public comment prior to an agency's approval of a plan. Yet, in its opening brief, Goodyear described *exactly* how each of these factors has been met in this case. See Pl.'s Mot. 15 (ECF No. 64-1), PageID 451.

Where, as here, a cleanup plan is approved by a state agency and the state monitors the progress of the remedial activities, response costs incurred by a private party pursuant to a state-led plan are consistent with the NCP. *Nutrasweet Co. v. X-L Engineering Co.*, 227 F.3d 776 (7th Cir. 2000). Here, Ohio EPA selected the cleanup plan which Goodyear designed pursuant to the 2016 DFFOs. *See* 2016 DFFOs at § IV.ll ("On September 15, 2015, Ohio EPA issued a Decision Document, which selected the remedy for the Site"). And Ohio EPA selected this plan after providing notice and opportunity for public comment. *Id.* at § IV.jj ("On February 13, 2015, Ohio EPA notified the public of its Preferred Plan for remediation of the Site and solicited public comments…."); *id.* at § IV.kk ("on April 9, 2015, Ohio EPA held a public meeting and hearing on the Preferred Plan" and following the end of the public comment period on April 17, 2015,

3

"Ohio EPA responded to the public comments in a responsiveness summary dated September 15, 2015").

The presence of these factors—the state's approval of a clean-up plan, oversight of remediation, and provision of notice and opportunity for public comment—demonstrate consistency with the NCP. 40 C.F.R. § 300.700; s*ee, e.g., Sherwin-Williams Co. v. City of Hamtramck*, 840 F. Supp. 470 (E.D. Mich. Dec. 22, 1993) (providing that a private party action will be considered "consistent with the NCP" if the action, when evaluated as a whole, is in substantial compliance with the applicable requirements in paragraphs (c)(5) and (6) of this section and results in a CERCLA-quality of cleanup"); *see also C&C Millwright Maintenance Co. v. Town of Greeneville, Tenn.*, 946 F. Supp. 555 (E.D. Tenn. Nov. 23, 1996) (providing that under 42 U.S.C. § 9607(a)(4)(B), a private party response action will be considered consistent with the NCP if the action, evaluated as a whole, is in substantial compliance with the applicable requirements in sub-paragraphs 5 and 6, and results in a CERCLA-quality cleanup). As described throughout the 2016 DFFOs, Ohio EPA oversaw and continues to oversee Goodyear's work pursuant to the orders, reviews and approves work plans, reports, other deliverables, and financial assurance instruments. *See* Pl.'s Mot., Ex. A, at 11-15 (ECF No. 64-2), PageID 474-478; *see also, e.g.,* June 7, 2017 Letter from Ohio EPA to Goodyear (approving Jackson County Landfill Cap and Leachate Collection System Final Design), attached hereto as **Exhibit A**. Ohio EPA stated that the activities completed pursuant to the DFFOs, with its approval, will be considered consistent with the NCP. *Id.* ¶ V.9.c. (ECF No. 64-2), PageID 474 ("Ohio EPA expects that activities conducted pursuant to the Orders, if approved by Ohio EPA, would be considered necessary and consistent with the NCP.").

Goodyear has met its burden to demonstrate that its response costs are consistent with the NCP and as Reynolds has demonstrated no genuine dispute of material fact, Plaintiff is entitled to summary judgment on this issue.

## II. Plaintiff Established that Reynolds Disposed of Hazardous Substances at the JCL Site

Defendant argues that Plaintiff failed to establish that its waste contained hazardous substances because (a) the Brown Affidavit relies on inadmissible evidence and (b) there is no evidence that Reynolds disposed of any hazardous substances at the JCL Site. Def.'s Resp. 7-13 (ECF No. 90), PageID 4933-39. Both arguments are unavailing.

### A. The Brown Affidavit Presents Testimony that Will be Admissible at Trial

Reynolds asks the Court to disregard the Brown affidavit in considering summary judgment, arguing that the affidavit relies on inadmissible evidence: the Fields Deposition and 1998 Interview Notes. As explained in Plaintiff's Response in Opposition to the Defendants' Motion *in Limine*, the Brown affidavit should be considered on summary judgment. Regardless of whether the Fields Deposition and Interview Notes are ultimately admissible at trial, it is apodictic that experts may rely on inadmissible evidence to form an opinion, a rule iterated in *Matter of James Wilson Associates*, upon which Reynolds relies in its opposition. *Matter of James Wilson Associates*, 965 F.2d 160, 173 (7th Cir. 1992). Nor does Plaintiff argue for the admission of inadmissible evidence as Reynolds contests. Def.'s Resp. 10 (ECF No. 90), PageID 4936. Reynolds reliance on *James Wilson* and argument that "the fact that inadmissible evidence is the (permissible) premise of an expert's opinion does not make that evidence admissible for other purposes, purposes independent of the opinion" is therefore inapposite. Def.'s Resp. (ECF No. 90), PageID 4936 (quoting *James Wilson*, 965 F.2d at 173).

5

Additionally, Reynolds' arguments that Plaintiff does not try to authenticate or "properly admit" the Kingsland Report or Interview Notes and that Dr. Brown cannot evaluate the accuracy of the Fields Deposition or Kingsland Report are baseless. As explained in Plaintiff's response to Defendants' Joint Motion *in Limine*, the Kingsland Report and Interview Notes are admissible because both levels of hearsay—the statements of individuals interviewed and the statements of the interviewer Bruce Kingsland—qualify for an exception to the rule against hearsay and therefore can be considered on summary judgment. The statements of those being interviewed, qualify for the residual hearsay exception under Federal Rule of Evidence 807 and the investigator's statements in the Kingsland Report qualify for the business records exception under Federal Rule of Evidence 803(6). *See, e.g., Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-cv-115, 2020 WL 614698 (S.D. Ohio Feb. 10, 2020) (denying motion *in limine* to exclude interview summary and investigator's report in which summary was contained, ruling that summary qualifies under residual hearsay exception in Rule 807 and report falls under Rule 803(6) business records exception).

Finally, as explained in Plaintiff's Response to Defendants' Joint Motion *in Limine,* the Fields Deposition may be considered on summary judgment because it will be admissible at trial under the statement against interest hearsay exception in Federal Rule of Evidence 804(b)(3) and alternatively, under the residual hearsay exception set forth in Federal Rule of Evidence 807. As such, the Court should consider this evidence on summary judgment.

**B.     There is no Genuine Dispute that Reynolds' Waste Contained Hazardous Substances**

Reynolds next argues that Plaintiff failed to establish that Reynolds' waste contained hazardous substances and that the affidavit of Craig Cox raises a genuine dispute of material fact

6

on this issue, precluding summary judgment.[2] But Plaintiff did submit sufficient evidence to establish that Reynolds' waste contained hazardous substances, and the Cox affidavit does not create a *genuine* dispute of fact on this issue because it is fundamentally flawed.

> 1. *Plaintiff's evidence shows that Reynolds' waste contained hazardous substances*

In addition to Dr. Brown's affidavit, Plaintiff submitted a May 17, 1978 letter from Ohio EPA to Reynolds' predecessor R.J.R. Foods Incorporated to demonstrate that Reynolds' waste contained hazardous substances. In relevant part, the letter states:

> This letter is to inform you that, although industrial wastes of what appear to be a hazardous, toxic, or semi-solid nature generated at your facility have been disposed of at the Jackson Landfill for a period of years, you may be in violation of certain sections of Public Law 94-580 [(RCRA)].

(ECF No. 64-14), PageID 914. Reynolds attempts to downplay the significance of Ohio EPA's letter with a subsequent letter, dated, May 22, 1978 letter, from the Jackson Co. Board of Health. (ECF No. 90-1), PageID 4948. Reynolds' reliance on this letter, which does nothing more than posit a question from a local health board to the state's environmental agency, is telling. In the letter, the Jackson Co. Board of Health, which was eventually replaced by Ohio EPA for regulatory oversight of landfills due to the Health Department's repeated violations and failure to ensure compliance with state and federal environmental regulations, asked for "considerable assistance from your agency" so that it could address the "serious problem, not only with solid wastes but also credibility and accountability." *Id.* at 2 (ECF No. 90-1), PageID 4950. Specifically, the Health Department asked "why garbage from R.J.R Foods, Inc. would be considered hazardous, toxic, liquid or semi-solid as it is just plain garbage of vegetable and animal origin…" *Id.* Reynolds

---

[2] Significantly, Reynolds admits that it did send waste to the JCL Site. Def.'s Resp. (ECF No. 90), PageID 4929.

7

cannot create a factual dispute merely by citing a question posed by the local health department to Ohio EPA.

2. *Reynolds' evidence fails to raise a genuine dispute of material fact*

Reynolds also submits an expert affidavit of Craig Cox to challenge Dr. Brown's conclusions. Def.'s Resp. 10 (ECF No. 90), PageID 4936. However, the Cox affidavit fails to "fully rebut" Dr. Brown's conclusions as Defendant claims. Craig Cox' rebuttal of Dr. Brown's affidavit is founded on the baseless argument that Dr. Brown misinterpreted the record and made misleading claims, unsupported conclusions, and "conclusory assertions." Cox Aff. ¶ 32 (ECF No. 90-2), PageID 4959. First, Cox states that Dr. Brown's testimony is based on review of a "limited set of documents, including his review and misinterpretation of the deposition transcript of J. Gregory Fields dated June 10, 1998." *Id.* at ¶ 35 (ECF No. 90-2), PageID 4960. While Cox claims that Brown misinterpreted the Fields Deposition, Cox Aff. ¶ 40, to find that Reynolds waste included pesticides, and that "there is no evidence that Reynolds used pesticides…", the Fields Deposition states exactly what Dr. Brown concluded:

> Q. What about R.J. Reynolds, do you have any knowledge of what waste was accepted from them?
>
> A. Yeah, it was just food bi-product, it would have been any pesticide they used to keep down flies and stuff on their docks. And, again, they did have a tanker truck that they – I can't remember maybe it was a thousand gallons or (sic) 15 hundred gallons, I really can't remember, that they hauled. It was a catch basin, as I understood it, and it went directly to the city sewers, but it caught solids and they would pump those semi-solids off and they would haul those to the landfill, and, again, it was a minimal amount, but I remember seeing the truck.
>
> Q. What do you mean by pesticides?
>
> A. Pesticides, they'd spray the docks for flies and spray their stuff to keep flies off of it.
>
> Q. So you're just talking about any chemicals that would be on the material?
>
> A. Yes, to keep stuff from stinking, I don't know what they used for that, but they used something.

8

Fields Dep. 40:10-41:5 (June 10, 1998) (ECF No. 65-14), PageID 1447-1448.

Second, Cox concludes that Dr. Brown "speculates on a long list of wastes generated" by Reynolds. Cox Aff. ¶ 37 (ECF No. 90-2), PageID 4960. Although he claims there is "no evidence" that Reynolds produced cafeteria waste, ground care waste, or used machinery waste, Cox did not review the underlying scientific literature cited by Dr. Brown, nor did he present any evidence to rebut these conclusions.

Third, Cox argues that there is no evidence that cooking oil was disposed of or that cooking oil contained hazardous substances, but he does not refute Dr. Brown's conclusions to the contrary with any evidence of any kind. In addition to his reliance on statements made by first-hand witnesses with direct and extensive personal knowledge—such as former operator Gregory Fields—Dr. Brown reviewed an abundance of scientific literature relevant specifically to the narrow issue of waste generation within the food processing industry. Brown Aff. app. 3 (ECF No. 64-6), PageID 698-700 (listing references cited).

While conflicting expert opinions can provide the basis for a court to refrain from entering summary judgment, simply submitting an affidavit which states the opposing party's expert is wrong, absent any basis of such a conclusion, falls far short of raising a genuine issue of material fact.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant partial summary judgment that R.J. Reynolds is liable as an arranger under CERCLA, and for such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: August 13, 2021                             Respectfully submitted,


                                                       */s/ Jeffrey D. Talbert*
Jeffrey D. Talbert (admitted *pro hac vice*),
Trial Attorney
James W. Beers, Jr., Esq. (admitted *pro hac vice*)
Katherine L. Oaks, Esq. (admitted *pro hac vice*)
PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207-791-3000
jtalbert@preti.com
jbeers@preti.com
koaks@preti.com

Rachel D. Guthrie, Esq. (admitted *pro hac vice*)
Matthew T. Merryman, Esq. (admitted *pro hac vice*)
THE JUSTIS LAW FIRM LLC
10955 Lowell Ave.
Suite 520
Overland Park, KS  66210-2336
Telephone (913) 955-3710
Facsimile: (913) 955-3711
rguthrie@justislawfirm.com
mmerryman@justislawfirm.com

ATTORNEYS FOR PLAINTIFF THE
GOODYEAR TIRE & RUBBER COMPANY

10

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2021, a copy of the foregoing Plaintiff's Reply in Support of Motion for Partial Summary Judgment against Defendant R.J. Reynolds Tobacco Holdings, Inc. was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's Electronic Case Filing System.

*/s/ Jeffrey D. Talbert*
Jeffrey D. Talbert
