IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| The Goodyear Tire & Rubber Company, | Case No: 2:20-cv-6347 |
| Plaintiff, | Judge Graham |
| v. | Magistrate Judge Deavers |
| ConAgra Foods, Inc., et al., | |
| Defendants. | |

Opinion and Order

Under federal law, a person who is liable for paying to clean up hazardous substances can seek contribution from others who were responsible for a substance's release. *See* Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9613(f). The Goodyear Tire & Rubber Company seeks to do just that for costs it has incurred in responding to the release of hazardous substances at the Jackson County Landfill in southern Ohio. Goodyear admits it contaminated the Landfill in the 1970s and 1980s by dumping thousands of drums containing acetone. But it alleges that the eight defendants are also responsible for dumping a variety of hazardous waste, including animal by-products, food sludge, foundry sand, metal fabrication waste, paints, pesticides, plastics, and sawdust from treated wood.

In an unusual procedural move, Goodyear filed pre-discovery motions for partial summary judgment on the issue of liability, with an allocation of defendants' respective shares of responsibility to be determined later at a bench trial. Defendants raise a host of objections, many of which relate to the admissibility of the evidence which Goodyear has submitted in support of its motions. Defendants also seek relief under Federal Rule of Civil Procedure 56(d) for an opportunity to take discovery to refute the evidence submitted by Goodyear. Finally, defendants Conagra and General Mills argue that Goodyear cannot establish successor liability for the purported actions of their alleged corporate predecessors-in-interest.

This matter is before the Court on Goodyear's eight motions for partial summary judgment, defendants' joint motion in limine to exclude improper evidence, and General Mills' cross-motion for summary judgment on the issue of successor liability. For the reasons stated below, Goodyear's motions are denied, defendants' motion in limine is granted in part, and General Mills' motion is denied.

I.   Background

  A.   The Parties

Plaintiff Goodyear is an Ohio company that manufactures and distributes rubber products. It once operated a plant in Jackson, Ohio.

Defendant ConAgra Foods, Inc. (now Conagra Brands, Inc.) is a food company and alleged successor to Banquet Foods, which prepared food products at a facility in Wellston, Ohio.

Defendant General Mills, Inc. manufactures consumer foods and is the alleged successor to Jeno's, Inc. and the Pillsbury Company. Jeno's operated one or more plants in southern Ohio, producing frozen pizza products. Pillsbury acquired Jeno's in 1985.

Defendant Inland Products, Inc. is an Ohio corporation in the business of rendering animal waste to produce fat and protein products.

Defendant Lancaster Glass Corporation is the legal successor to Jackson Corporation, which manufactured plastic goods at a facility in Jackson.

Defendant Masco Cabinetry, LLC (now Cabinetworks Group Michigan, LLC) is the successor of Merillat Cabinet. Merillat operated a cabinet-manufacturing facility in Jackson.

Defendant National Oilwell Varco, Inc. (now NOV, Inc.) is the successor of Robbins & Myers, which operated an iron foundry and related facilities in southern Ohio.

Defendant OSCO Industries, Inc. was founded as the Ohio Stove Company in Portsmouth, Ohio. It operated foundries in southern Ohio.

Defendant R.J. Reynolds Tobacco Holdings, Inc. is the legal successor to R.J. Reynolds Foods, Inc. In 1966, R.J. Reynolds Foods acquired the Chun King food business and operated a packaged foods facility in Jackson.

  B.   Jackson County Landfill

The Landfill began operations in about 1970 at a 24-acre site in Jackson County. The Ohio Department of Health approved the operation of the Landfill as a solid waste disposal site. Doc. 64-3.[1] The site also had an additional one-acre area for the disposal of foundry sand. The Landfill

---

[1] In describing the history of the Landfill the Court relies in part on recitations of facts contained in documents which appear to have been authored by the Ohio Department of Health and the Ohio Environmental Protection Agency. The Court recognizes that certain defendants have objected to these documents as not having been authenticated. Even so, the Court believes that the basic background facts set forth herein are not in serious dispute. The Court's reliance on the documents cited is without prejudice to the parties arguing that they are inadmissible for purposes of determining liability or allocating responsibility.

received waste from municipal and industrial sources. Doc. 64-2 at PAGEID 470, ¶ 6(h). A creek and nature preserve bordered the site in part. *Id.* at PAGEID 469, ¶ 6(a).

Donald Jenkins initially owned and operated the Landfill. In 1972 his son-in-law J. Gregory Fields took over the Landfill, while the Foundry Sand area was owned by Shawn and Melissa Sexton. Fields later transferred ownership of the Landfill to a company he owned and controlled, Sanitation Commercial Services, Inc. (SCS). Doc. 64-2 at PAGEID 469–70, ¶ 6(c)–(f).

As early as 1976, the Ohio EPA raised concerns about the Landfill. In a letter to the Jackson County Health Department, the Ohio EPA noted that liquid waste "of an apparent chemical nature" had been observed at the site, and that "leachate had surfaced" in a particular area of the Landfill. Doc. 64-7 at PAGEID 703. The Ohio EPA issued a notice of violation one year later. Doc. 64-2 at PAGEID 470, ¶ 6(g).

In 1984 the Ohio EPA issued a letter to Goodyear. Doc. 64-9. The letter stated that hazardous substances had been detected at the Landfill. The Ohio EPA formally requested Goodyear to respond to a series of questions and requests for documents relating to Goodyear's activities at the Landfill. Goodyear stated that it had disposed of 5,772 drums of waste materials – including acetone, paints and styrene – at the Landfill between 1974 and 1980. Doc. 64-2 at PAGEID 470, ¶ 6(j); Doc. 64-4 at PAGEID 540.

Later in 1984 the Ohio EPA brought an administrative action against the Jackson County Combined General Health District for alleged violations at the Landfill and another site in Jackson County. Fields was later joined to the action. The parties ultimately entered into a settlement agreement establishing conditions and benchmarks which had to be satisfied in order for the Landfill to continue operating. *Sanitary Comm. Servs., Inc. v. Shank*, 57 Ohio St.3d 178, 179, 566 N.E.2d 1215, 1216 (1991).

In 1987 the Ohio EPA found that Fields had failed to comply with the settlement agreement. The Director issued Final Findings and Orders requiring Fields to cease accepting waste and to begin shutting down the Landfill. *Id.*, 57 Ohio St.3d at 179, 566 N.E.2d at 1217.

The Ohio EPA later determined that Fields had not properly closed the Landfill. In 1996 it discovered releases of hazardous substances, including ammonia, benzene and lead. Doc. 64-5 at PAGEID 554.

The Ohio Attorney General's Office brought an enforcement action in this Court in 1997 against Fields and SCS. Case No. 2:97-cv-984 (S.D. Ohio) (Smith, J.). The suit ended in a Consent

Decree by which Fields and SCS agreed to pay $225,000 into a trust fund to help defray the costs of closure and post-closure maintenance of the Landfill.

The Ohio EPA continued monitoring the Landfill. In 2005, it directed Goodyear to complete a Remedial Investigation and Feasibility Study. Doc. 64-2 at PAGEID 472 at ¶ 6(hh). Goodyear prepared two reports, which the Ohio EPA approved in 2009 and 2010. The reports indicated the presence of many "contaminants of concern," including arsenic and mercury, as well as methane gas. *Id.* at PAGEID 473 at ¶ 6(ii). The reports determined that the release of waste materials posed risks to human and ecological health. *Id.*; Doc. 64-5 at PAGEID 556–60.

The Ohio EPA and Goodyear continued working on a plan to remediate the Landfill. Doc. 64-5 at PAGEID 554. In 2015 the Ohio EPA issued public notice of a Preferred Plan for remediation. Doc. 64-2 at PAGEID 473 at ¶ 6(jj). On September 15, 2015, the Ohio EPA issued a Decision Document announcing its selected plan, which called for the placement of a geomembrane cap with leachate treatment at a projected cost of over $10 million. Doc. 64-5 at PAGEID 580.

In late 2016, the Ohio EPA issued a Director's Final Findings and Orders for Remedial Design and Remedial Action. Doc. 64-2. It provided that Goodyear, as the "Work Respondent," would perform the design and action plan selected by the Ohio EPA.

Goodyear alleges that it has incurred over $12.5 million in response costs so far.

According to Goodyear, the Landfill property is still owned by SCS. Fields passed away in 2018.

### C.     Procedural Posture

Goodyear filed its Amended Complaint in April 2021. The Magistrate Judge then set a preliminary pretrial conference for May 25, 2021. The parties conferred pursuant to Federal Rule of Civil Procedure 26(f) on May 11 and agreed to make initial disclosures by June 22. Doc. 72.

On May 17, 2021, Goodyear filed motions for partial summary judgment against each of the defendants. Docs. 64–71. Goodyear argues that the evidence attached to its motions is sufficient to establish that each defendant arranged to dispose of hazardous substances at the Landfill. Goodyear seeks a determination that defendants are liable as a matter of law for contribution. Goodyear contends that the Court should then proceed with discovery and ultimately a bench trial regarding allocation of costs.

Defendants jointly filed a motion in limine to exclude certain exhibits submitted by Goodyear in support of its motions. Doc. 88. Defendants argue that the pieces of evidence on which Goodyear relies the most heavily are inadmissible as hearsay. This includes a deposition of

Fields taken during the enforcement action in this Court and notes recorded by an investigator when he interviewed people who had worked at the Landfill.

General Mills filed a cross-motion for summary judgment concerning successor liability. Doc. 92. It contends that the Purchase Agreement between Jeno's and Pillsbury contained a broad disclaimer that Pillsbury was not assuming the liabilities of Jeno's.

The parties unsuccessfully attempted to mediate their dispute in October 2021. Some initial discovery has since been conducted.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). The moving party bears the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case on which it would bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also Longaberger*, 586 F.3d at 465. "Only disputed material facts, those 'that might affect the outcome of the suit under the governing law,' will preclude summary judgment." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008) (quoting *Anderson*, 477 U.S. at 248). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

A district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. *Daugherty*, 544 F.3d at 702; *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994). Rather, in reviewing a motion for summary judgment, a court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed

in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).

### III. CERCLA

Goodyear is seeking contribution under 42 U.S.C. § 9613(f)(1) for the costs it has incurred and will continue to incur in responding to the release of hazardous substances at the Landfill. To prevail in a contribution action under CERCLA, a plaintiff must establish the following elements:

> (1) the property is a "facility"; (2) there has been a "release" or "threatened release" of a hazardous substance; (3) the release has caused the plaintiff to incur "necessary costs of response" that are "consistent" with the NCP [National Contingency Plan]; and (4) the defendant is in one of four categories of potentially responsible parties.

*Reg'l Airport Auth, of Louisville v. LFG, LLC*, 460 F.3d 697, 703 (6th Cir. 2006); *Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-CV-115, 2019 WL 1755815, at *3 (S.D. Ohio Apr. 19, 2019).

The first two elements do not appear to be in dispute. A "facility" includes a "landfill." 42 U.S.C. § 9601(9). A "release" includes "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing" of substances that are identified in various statutory and regulatory provisions as hazardous. *Id.* at §§ 9601(14); 9602. It does not appear that defendants would dispute that the Ohio EPA has documented the release of hazardous substances at the Landfill.

As to the third element, defendant R.J. Reynolds challenges whether the costs Goodyear has incurred were necessary and consistent with the federal blueprint (the NCP) for responding to the release of hazardous substances, *see* 42 U.S.C. § 9605. Goodyear argues that the fact that it has incurred costs in compliance with the Ohio EPA's orders creates a presumption that the costs are necessary and consistent with the NCP. *See NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 791 (7th Cir. 2000). For purposes of the present motions, the Court need not resolve this dispute.

Under the fourth element, one category of responsibility is "arranger" liability. Any person who "by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person" is liable for the necessary costs of response. 42 U.S.C. § 9607(a)(3).

6

It is the fourth element which receives the greatest amount of attention in the briefs. Goodyear contends that evidence gathered from Fields and others who worked at the Landfill demonstrates that each of the defendants arranged for the disposal of waste there. The evidence includes statements made by Fields in a deposition and in an interview in 1998. It also includes evidence gathered by an investigator, Bruce Kingsland, who was hired by Goodyear's legal department and authored a report in 2006 based in part on interviews that he conducted. Finally, Goodyear relies on affidavits from its expert, Dr. Kirk W. Brown, who opines that each of the defendants' waste streams would have contained certain hazardous substances.

## IV. Rule 56(d) Request

Most of the defendants have responded to the motions for summary judgment by requesting relief under Rule 56(d). The rule provides that upon a party's showing that it "cannot present facts essential to justify its opposition" to a motion for summary judgment, the court may deny the motion or defer consideration of it and allow time for the parties to conduct discovery. The party seeking Rule 56(d) relief must establish what facts it seeks to obtain through discovery and why it has not previously discovered the information. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000) (discussing Rule 56(f), which is now Rule 56(d)).

In support of their request, defendants emphasize that Goodyear filed its motions for summary judgment even before the Rule 26(f) initial disclosures were due and that they have not had an opportunity to conduct any discovery to defend themselves against Goodyear's allegations. Defendants state that the discovery they seek would include deposing the numerous individuals on whose reports, affidavits and recollections (as reflected in interview notes) Goodyear relies. Defendants also wish to retain experts to rebut the expert affidavits submitted by Goodyear.

Goodyear responds that this lawsuit should not have taken defendants by surprise. In August 2019 Goodyear approached defendants with at least some of the evidence it had gathered and made pre-litigation settlement demands. Goodyear argues that defendants should have already been preparing to defend themselves and examining their records for evidence of the activities they conducted at the Landfill. Goodyear further argues that discovery would be futile because its motions support a conclusion as a matter of law that defendants are responsible for the disposal of hazardous substances at the Landfill. Questions relating to the amounts and concentrations of the materials disposed of relate to issues of allocation and not to liability.

The Court will grant defendants' request under Rule 56(d). Defendants may have known this suit was coming, but that does not mean that the evidence submitted by plaintiff in support of its early-filed motions is exempt from the truth-testing safeguards provided by formal litigation procedures. Even if some of the relevant evidence is in defendants' hands (such as their own records of activity at the Landfill), defendants have a right to conduct depositions of plaintiff's witnesses and expert. This is particularly true since, as will be discussed below, significant concerns exist about the reliability and admissibility of plaintiff's most critical pieces of evidence.

The Court's decision is supported by Sixth Circuit case law making it abundantly clear that an abuse of discretion is likely to be found when a trial court allows no opportunity at all for discovery. *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) ("Typically, when the parties have no opportunity for discovery, denying the Rule 56(f) motion and ruling on a summary judgment motion is likely to be an abuse of discretion."); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) ("It is well-established that the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment."); *Vance By & Through Hammons v. United States*, 90 F.3d 1145, 1149 (6th Cir. 1996) ("Most significant to the conclusion we reach is the fact that no discovery was conducted before the motion for summary judgment was filed and decided."); *White's Landing Fisheries, Inc. v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. 1994) ("Yet we nevertheless conclude that summary judgment should not have been awarded until the plaintiffs were allowed some opportunity for discovery. . . . In the instant case, we find that the grant of summary judgment, absent any opportunity for discovery, is such a misuse [of discretion].").

Goodyear argues that discovery would be futile. It contends that so long as it can establish "the presence of *any* amount of a hazardous substance in a defendant's waste, no matter how small," then liability will attach under CERCLA. Doc. 64-1 at PAGEID 457 (emphasis in original) (citing *United States v. W. Processing Co.*, 734 F. Supp. 930, 936 (W.D. Wash. 1990)); *United States v. Nicolet, Inc.*, 712 F. Supp. 1205, 1207 (E.D. Pa. 1989) ("[A]s long as a substance is on one or more of the lists identified at 42 U.S.C. § 9601(14), it is a hazardous substance irrespective of the volume or concentration of the substance found at the site in question.").

The Court disagrees with Goodyear's assessment that this case is only about allocation. Goodyear must prove by a preponderance of the evidence that waste containing hazardous substances is attributable to each defendant. 42 U.S.C. § 9607(a)(3). None of the defendants have conceded that element of plaintiff's case. To be sure, plaintiff has submitted some evidence that, if admissible and credited, would support an inference that defendants are responsible for hazardous

8

substances at the Landfill. But defendants have a right to conduct discovery and attempt to refute Goodyear's assertions. For example, several defendants (including General Mills, Masco, NOV, and R.J. Reynolds) believe that discovery and expert opinion will enable them to prove that they disposed of only common garbage, such as food waste, carboard and untreated wood products, and that no hazardous substances can be attributed to them.

In sum, defendants' request under Rule 56(d) for an opportunity to conduct discovery is well-received. The Court therefore denies Goodyear's motions for partial summary judgment without prejudice.

**V.     Defendants' Motion in Limine to Disregard Inadmissible Evidence**

In the alternative, the Court also denies the motions for summary judgment because those motions rely on hearsay evidence which must be disregarded as inadmissible at this early stage. *See* Fed. R. Civ. P. 56(c)(2).

**A.     Fields Deposition**

In June 1998, the deposition of Fields was taken in the State of Ohio's enforcement action in this Court against SCS and Fields. To establish arranger liability, Goodyear relies on statements made in the deposition describing the waste that the Landfill accepted from various defendants. *See, e.g.*, Fields Dep. (Doc. 65-14) at 95–96 (testifying that OSCO dumped dust, pallets and sand at the Landfill); *id.* at 97–98 (NOV's predecessor, Robbins & Myers, dumped dry dock material, including cardboard); *id.* at 42–43 (Lancaster Glass's predecessor, Jackson Corporation, dumped coloring powder and plastic beads).

Defendants argue that plaintiff's attempted use of the Fields deposition does not satisfy the requirements of Rule 32 of the Federal Rules of Civil Procedure. The rule allows a deposition taken in an earlier action to be used "in a later action involving the same subject matter between the same parties, or their representatives or successors in interest." Fed. R. Civ. P. 32(a)(8).

Goodyear does not dispute that the earlier action in this Court did not involve the same parties, or their representatives or successors in interest.

Rule 32 further provides that a "deposition previously taken may also be used as allowed by the Federal Rules of Evidence." *Id.* Fields passed away in 2018. Rule of Evidence 804 provides an exception to the rule against hearsay when the declarant is unavailable and gave former testimony as a witness in a lawful deposition and the former testimony "is now offered against a party who had –

9

or, in a civil case, whose predecessor in interest had – an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1).

Here too, Goodyear does not dispute that defendants neither had an opportunity to examine Fields in the prior deposition, nor did the parties to the earlier action have a similar motive to develop the testimony as defendants would have.

Goodyear instead looks to two other hearsay exceptions. The first is a statement against interest. The exception applies to statements which "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3)(A). Goodyear argues that Fields was defending himself against a civil enforcement action and that his testimony concerning unlawful dumping activities at the Landfill exposed himself to civil liability.

The Court finds that Goodyear has not sufficiently established, for purposes of the motions for summary judgment, that the statements relied upon by Goodyear qualify as statements against interest. While the State's suit may have been adversarial to Fields, Goodyear has not demonstrated how the particular statements at issue inculpated Fields. Rule 804(b)(3) "does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory." *Williamson v. United States*, 512 U.S. 594, 600–01 (1994). *See also McClung v. Wal-Mart Stores, Inc.*, 270 F.3d 1007, 1013 (6th Cir. 2001) ("Only those specific statements within a general confession which are self-inculpatory are admissible under Rule 804(b)(3), however.").

It would seem likely that Fields already understood at the time of his deposition that he was subject to liability under CERCLA as a landfill owner and operator. According to a joint status report filed in the enforcement action several months before Fields was deposed, the parties had been seriously exploring settlement and wished to depose Fields "to aide in settlement." Case No. 2:97-cv-984, Doc. 11. Fields then had an incentive to point fingers at others who might share in the blame and the costs of remedial action. His testimony that he was aware of other entities who "would be of interest in pursuing" suggests that his statements do not fit the traditional mold of a statement against interest. Fields Dep. at 154. As the United States Supreme Court has instructed, "[t]he district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else." *Williamson*, 512 U.S. at 601.

10

Goodyear next argues that the residual hearsay exception of Rule 807 applies. The rule permits a court to admit hearsay if "the statement is supported by sufficient guarantees of trustworthiness" and "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807(a). Goodyear argues that the Fields statements are trustworthy because they were given under oath and under cross-examination by the Ohio Attorney's General and are consistent with statements Fields later made to a private investigator.

The Court finds that Goodyear has not demonstrated at this early stage that the Fields deposition should be admitted under the residual exception to hearsay, an exception which "should only be used sparingly." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 113 (3d Cir. 2001). *See also FTC v. E.M.A. Nationwide, Inc.*, 2013 WL 4545143, *2 (N.D. Ohio) (Rule 807 to be used "rarely" and only in "exceptional circumstances"). Though Fields was under oath, he likely had an incentive to implicate other parties to share in his liability and he was not subjected to cross-examination by any of the parties he named. *See* 2 McCormick On Evid. § 324 (8th ed.) (among the factors a court should consider is the declarant's motivation to speak, whether the declarant was subject to cross-examination, and the relationship between the declarant and the person to whom the statement was made).

As importantly, Goodyear has not demonstrated that the Fields deposition is more probative on the points for which it is offered than any other evidence which could be obtained through reasonable efforts. Goodyear argues that Fields, as owner and operator of the Landfill, possessed personal knowledge unmatched by any one else. It may be true that Fields was the potentially the best single source of information, but Goodyear has not attempted to show that it could not reasonably obtain records from SCS, defendants and third parties of the waste disposal activities which occurred at the Landfill. Nor has Goodyear shown why witnesses with personal knowledge of those activities could not be deposed.

Thus, the Court finds that Goodyear has not yet demonstrated that the Fields deposition is admissible under an exception to the rule against hearsay.

  **B.**   **Fields Interview Notes**

An interview was conducted of Fields in October 1998 and notes were taken. Goodyear believes that the interview was conducted by investigator Bruce Kingsland, as the notes are attached to a report Kingsland later authored in 2006 for Goodyear. Doc. 64-12. According to the notes, Fields identified many "top generators" of "waste of concern." *Id.* at PAGEID 906. For instance,

11

he stated that Masco's predecessor, Merillat, sent sawdust to the Landfill every day and that tannic acid from Merillat's spray paint line "probably" got into the Landfill. *Id.* Fields also stated that Conagra's alleged predecessor, Banquet, generated dock waste that would have included a pesticide used for fly control. *Id.* at PAGEID 907. Fields made other statements regarding the activities of other defendants and non-parties.

Defendants correctly observe that Goodyear has failed to authenticate the Fields interview notes. Goodyear has not submitted a sworn statement of Kingsland that the notes are ones that he took. Fed. R. Evid. 901.

But even if plaintiff's assertion that Kingsland took the notes were to be accepted, a hearsay-within-hearsay problem remains. One layer of hearsay is what Fields told Kingsland, and the second is what Kingsland recorded. To be admissible, each layer must either be excluded from the definition of hearsay or fall within a hearsay exception. Fed. R. Evid. 805; *Back v. Nestle USA, Inc.*, 694 F.3d 571, 577–78 (6th Cir. 2012).

Goodyear contends that the statements made by Fields are admissible under the residual exception. Similar to what it argued with respect to the Fields deposition, Goodyear contends that his statements are trustworthy because he was facing liability for the Landfill at the time of the interview, had extensive knowledge of the Landfill's operations, and gave statements consistent with his deposition testimony.

The Court finds that Goodyear has not established at this stage that the residual hearsay exception applies to the interview statements. The interview of course was not taken under oath or subject to cross-examination, and Fields most likely had an incentive to blame others for the violations which the Ohio EPA had found at the Landfill. Additionally, Goodyear has not made a showing that it cannot obtain other probative evidence relating to defendants' Landfill activities through reasonable discovery efforts.

Goodyear has also failed to establish an exception to the other layer of hearsay – Kingsland's notes. Goodyear contends that they are admissible under the business records exception, Fed. R. Evid. 803(6), because Kingsland regularly prepared interview notes as an investigator. However, Goodyear has not yet provided a certification under Rule 803(6)(D) that the conditions of the business records exception are satisfied. And there is no evidence on the record to establish the nature of the circumstances under which Kingsland conducted the interview, some 8 years before Goodyear hired him to prepare a report.

12

The Court therefore finds that Goodyear has not presented the Fields interview notes in admissible form.

### C. Kingsland Report

Goodyear's legal department hired Kingsland to conduct an investigation in 2006 of the Landfill's historic activities. The investigation culminated in a Report dated April 28, 2006. Doc. 64-12. The Report contained a listing of the parties whom Kingsland believed were "potentially responsible." *Id.* at PAGEID 842. For each party, Kingsland summarized the evidence he had found indicating that they had disposed of potentially hazardous waste at the Landfill. The evidence included the Fields interview notes, documents given to him by Goodyear, Ohio EPA records, and interviews he conducted of numerous individuals, including former employees of the Landfill, waste hauler drivers, Goodyear employees, and government employees and inspectors.

Goodyear has submitted the Kingsland Report, as well as attachments belonging to the Report, in support of its motions for summary judgment. Docs. 64-11, 64-12, 65-15, 68-15. Goodyear relies on the Report to establish its claim that each of the defendants arranged for the disposal of certain wastes at the Landfill.

The Court finds that the Kingsland Report must be disregarded at this stage for two reasons. First, it has not been authenticated – a point that Goodyear does not dispute. Second, the Report contains hearsay within hearsay. One of those pieces of double-hearsay evidence is the Fields interview notes discussed above. Other pieces include the notes Kingsland took of the statements made by various individuals whom he interviewed in 2006. Doc. 64-12 at PAGEID 855–57, 860–61, 864–67, 879–98, Doc. 68-15. Goodyear again argues that the interviewee's statements fall within the residual hearsay exception, but the Court must reject that assertion at this time. Goodyear argues only, in blanket fashion, that the interviewees had personal knowledge of the Landfill's operations. Doc. 103 at PAGEID 8234. Goodyear has not made particularized showings of trustworthiness for any of the interviewee's statements, nor has it demonstrated why reasonable discovery efforts would not suffice to produce admissible evidence relating to the activities at the Landfill. Turning to the hearsay layer of Kingsland's notes, again Goodyear argues that they fit within the business records exception, but Goodyear has not made the requisite certification under Rule 803(b)(D).

Once stripped away of hearsay-within-hearsay statements, the Report is primarily left with Kingsland's summary assessments of the potentially responsible parties. Doc. 64-12 at PAGEID 848–53. But Kingsland is not an expert witness, does not have personal knowledge of the activities

at issue, and conducted his investigation for Goodyear's legal department with a motive to identify parties with whom Goodyear could share the liability for the clean-up costs.

Thus the Court finds that the Kingsland Report must be disregarded as inadmissible for purposes of Goodyear's motions for summary judgment.

### D. Brown Affidavits

Finally, attached to each motion for summary judgment is an affidavit of plaintiff's expert, Dr. Kirk W. Brown, who opines on the hazardous substances that each of the defendants' waste streams would have contained. *See, e.g.*, Doc. 64-6 (relating to R.J. Reynolds).

Defendants object to the affidavits because Brown relied on the Fields deposition and the Fields interview notes to form his opinions. Defendants argue that an opinion of an expert should be excluded at summary judgment if the facts relied upon by him are not in evidence.

In response Goodyear cites Rule 703. The rule provides that the facts or data on which an expert bases his opinion "need not be admissible for the opinion to be admitted" if "experts in the particular filed would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703.

Goodyear's argument misses the mark at this stage. By Rule 703's own terms, the facts used by an expert to form an opinion must be reliable. *See Isely v. Capuchin Province*, 877 F. Supp. 1055, 1064 (E.D. Mich. 1995) ("By permitting the use of otherwise inadmissible evidence (such as hearsay about studies or experiments conducted by others), the Rule clearly contemplates a foundational requirement that the underlying data which supports an expert's opinion be reliable."). Goodyear has made no effort to show that experts in the field would reasonably rely on sources like the Fields deposition or interview notes in forming opinions about the hazardous substances present at the Landfill.

Further, Rule 703 does not waive the requirement that an expert opinion have a reliable foundation. "[T]he rule does not give an expert free reign to base an opinion on any evidence, including inherently unreliable or untrustworthy evidence. . . . Instead, the Advisory Committee Notes caution that Rule 703 limits the bases of expert opinions to otherwise inadmissible evidence that is also reliable in order to prevent Rule 703 from creating a 'back-door' exception to the other rules of exclusion . . . ." *Trepel v. Roadway Exp., Inc.*, 194 F.3d 708, 719–20 (6th Cir. 1999) (Suhrheinrich, J., concurring in part and dissenting in part).

As discussed above, the Fields deposition testimony and interview notes must presently be disregarded precisely because Goodyear has not established their trustworthiness. Goodyear cannot

attempt to get those materials into evidence by laundering them through their expert. *See United States v. Tipton*, 269 Fed. App'x 551, 560 (6th Cir. 2008) (rejecting attempt to use expert "as a 'conduit' for the admission of the Defendants' otherwise inadmissible hearsay statements regarding their assets"); *Fish Farms P'ship v. Winston-Weaver Co.*, 531 Fed. App'x 711, 712 (6th Cir. 2013) ("Although Dr. Mills was permitted by [Rule] 703 to use this hearsay evidence to reach his opinion, the evidence cannot be used for the truth of the matter, and the district court correctly decided not to consider it for that purpose."); *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013) (excluding expert reports which were "by and large undergirded by hearsay statements" because "[a]lthough the Rules permit experts some leeway with respect to hearsay evidence, Fed. R. Evid. 703, a party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.") (internal quotation marks omitted).

The Court thus disregards the Brown affidavits as inadmissible for purposes of Goodyear's motions for summary judgment.

### E. Summary

In the absence of the Fields deposition, Fields interview notes, Kingsland Report, and Brown affidavits, Goodyear has not established the fourth element (arranger liability) of its CERCLA claims and its motions for summary judgment must be denied.

## VI. General Mills' Cross-Motion for Summary Judgment

Goodyear alleges that General Mills is liable for Jeno's alleged dumping of highly-acidic food sludge at the Landfill. Pillsbury acquired Jeno's in 1985, and Conagra acquired Pillsbury in 2000. *See* Waytashek Decl. (Doc. 92-1) at PAGEID 5262, ¶¶ 3, 5.

General Mills argues that it is not liable as a matter of law for Jeno's alleged violations.[2] General Mills asserts that the 1985 Purchase Agreement between Jeno's and Pillsbury disclaimed that Pillsbury was assuming any of Jeno's liabilities. The Agreement provided: "Except as specifically provided in this Paragraph II, it is expressly understood and agreed that Pillsbury does not assume and shall not be responsible for any liability or obligation of Jeno's of any nature whatsoever." Doc. 97 at PAGEID 6193, ¶ II.

---

[2] Conagra also contests successor liability but did not move for summary judgment on the issue. Because the Court finds that Goodyear's motion for summary judgment as to Conagra should be denied for the reasons stated above, it need not address Conagra's arguments concerning successor liability.

15

State law determines successor liability under CERCLA. *Hobart Corp. v. Dayton Power & Light Co.*, 407 F. Supp. 3d 732, 739 (S.D. Ohio 2019). The Purchase Agreement selects Minnesota law to govern. Doc. 97 at PAGEID 6254, ¶ XXII. Under Minnesota law, a successor is generally not liable for the obligations of the transferor corporation. *Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn. 1989). But a successor is liable when the transferor "sells or otherwise transfers all of its assets to another corporation, and either (1) the successor expressly or impliedly agreed to assume its debts, (2) the transaction amounts to a merger or consolidation, (3) the successor is merely a continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape liability for the transferor's debts." *A.P.I., Inc. Asbestos Settlement Tr. v. Home Ins. Co.*, 877 F. Supp. 2d 709, 734 (D. Minn. 2012) (internal quotation marks omitted).

The parties have focused their briefing on the first exception. General Mills cites Paragraph II of the Agreement in arguing that the parties expressly disclaimed that Pillsbury was assuming Jeno's liabilities. Goodyear counters that the disclaimer was accompanied by "except as specifically provided" language and that the Agreement then outlined several pages worth of liabilities and obligations which Pillsbury had agreed to assume.

Under Paragraph 2.1 of the Agreement, Pillsbury agreed to assume liabilities relating to contracts "listed in the Disclosure Schedule pursuant to Paragraph 4.17." Doc. 97 at PAGEID 6194, ¶ 2.1. But there is an evidentiary problem – General Mills acknowledges that the copies of the Agreement kept in its corporate archives are missing the page (page 31) in which most of Paragraph 4.17 appeared. *Id.* at PAGEID 6217–18 (showing that Paragraph 4.17 started at the very bottom of page 30 and ended on page 32); Waytashek Decl. at PAGEID 5262, ¶¶ 3–4 (stating that General Mills' copies are missing page 31, as well as two other pages).

Goodyear argues that a reasonable inference could be drawn about the effect of the missing paragraph by looking at context. Though Paragraph 4.17 is largely missing, the Disclosure Schedule referenced in Paragraph 2.1 is attached to the Agreement. Doc. 97-1 at PAGEID 6916. Among the contracts listed in the Disclosure Schedule are six trash removal contracts between SCS and Jeno's. Goodyear contends that this means Pillsbury assumed all liabilities relating to the trash removal contracts with SCS. Goodyear argues that CERCLA arranger liability arises out of the trash removal contracts because it was through those contracts that Jeno's arranged for the disposal of its waste containing hazardous substances.

General Mills responds that Goodyear's argument regarding what the missing page might say is speculative. General Mills further contends that it is too big of a leap to extend the assumption of

16

liability for the performance of trash removal contracts to an assumption of environmental liabilities. And General Mills believes that the trash removal contracts may not have even related to the Landfill at issue, but perhaps concerned the disposal of waste at other landfills in the area.

The Court agrees with General Mills' view that trying to argue what Paragraph 4.17 might have said is currently too speculative. But that counsels against granting summary judgment to General Mills. The parties have not had an opportunity to conduct discovery, which possibly could produce the missing page or shed light on what Paragraph 4.17 said through, for example, deposing the individuals who negotiated the Agreement. Moreover, accepting that the Disclosure Schedule likely will play a part in the ultimate analysis of successor liability, the Court finds that there are significant factual and legal issues which need to be developed. Those issues include whether the trash removal contracts listed in the Disclosure Schedule included waste disposal at the Landfill and, if so, whether an assumption of liability for a trash removal contract can be construed as encompassing any environmental liabilities that might follow the disposal of the waste.

The Court thus denies the cross-motion of General Mills for summary judgment.

### VII. Conclusion

Accordingly, plaintiffs' motions for partial summary judgment (docs. 64, 65, 66, 67, 68, 69, 70, 71) are DENIED WITHOUT PREJUDICE so the parties can conduct discovery.

Defendants' motion in limine (doc. 88) is GRANTED IN PART and DENIED IN PART. It is granted as to defendants' request that the Court disregard the Fields deposition, Fields interview notes, Kingsland Report, and Brown affidavits in considering plaintiffs' motions for partial summary judgment. It is denied as premature as to defendants' request that the exhibits be excluded from trial. *See Hobart Corp. v. Dayton Power & Light Co.*, No. 3:13-CV-115, 2019 WL 4602177, at *1 (S.D. Ohio Sept. 23, 2019) ("Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because a court is almost always better situated during the actual trial to assess the value and utility of evidence.") (internal quotation marks omitted).

Defendant General Mills' cross-motion for summary judgment (doc. 92) is DENIED WITHOUT PREJUDICE.

s/ James L. Graham  
JAMES L. GRAHAM  
United States District Judge

DATE: March 18, 2022