## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**THE GOODYEAR TIRE & RUBBER COMPANY,**

   **Plaintiff,**

  **v.**

**CONAGRA FOODS, INC.,** *et al.*,

   **Defendants.**

        **Case No. 2:20-cv-6347**
        **Judge Michael H. Watson**
        **Magistrate Judge Elizabeth P. Deavers**

### <u>OPINION AND ORDER</u>

  This matter is before the Court for consideration of OSCO Industries, Inc.'s Rule 37 Motion to Compel Goodyear to Disclose Response Costs Recovered from Insurance Carriers and Parties Allegedly Responsible Under CERCLA for Costs Relating to the Jackson County Landfill (ECF No. 165 (the "First Motion to Compel")), OSCO Industries, Inc.'s Rule 37 Motion to Compel Relating to Rule 30(b)(6) Deposition of Ohio EPA, and Subsequent Rule 45(a)(1) Subpoena for Deposition *Duces Tecum* to Ohio EPA (ECF No. 184 (the "Second Motion to Compel")), and Non-Party Ohio EPA's Response in Opposition to OSCO Industries, Inc.'s Motion to Compel and Ohio EPA's Motion to Quash (ECF No. 186 (the "Motion to Quash").). For the reasons that follow, the First Motion to Compel (ECF No. 165) is **GRANTED IN PART** and **DENIED IN PART**, the Second Motion to Compel (ECF No. 184) is **DENIED**, and the Motion to Quash (ECF No. 186) is **DENIED AS MOOT**.

### I.

  Federal Rule of Civil Procedure 37 permits a party to file a motion for an order compelling discovery if another party fails to respond to discovery requests, provided that the

motion to compel includes "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).  Consistent with this, Local Rule 37.1 requires the parts to "exhaust[] among themselves all extrajudicial means for resolving their differences" before filing an objection, motion, application, or request relating to discovery. S.D. Ohio Civ. R. 37.1.  Local Rule 37.1 also allows parties to first seek an informal telephone conference with the Judge assigned to supervise discovery in the case, in lieu of immediately filing a discovery motion.  *Id.*  The Court is satisfied that this prerequisite has been met here.

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc*., 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted).  "'It is well established that the scope of discovery is within the sound discretion of the trial court.'"  *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).  The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to go fishing and a trial court retains discretion to determine that a discovery request is too broad and oppressive."  *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (citation omitted); *see also Gallagher v. Anthony*, No. 16-cv-00284, 2016 WL 2997599, at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Determining the scope of discovery is within the Court's discretion.  *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998).  "The proponent of a motion to compel discovery bears

the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). If the movant makes this showing, "then the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas*, No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017) (citing *O'Malley v. NaphCare, Inc*., 311 F.R.D. 461, 463 (S.D. Ohio 2015)); *see also* Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment (stating that a party claiming undue burden or expense "ordinarily has far better information—perhaps the only information—with respect to that part of the determination" and that a "party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them").

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also Siriano v. Goodman Mfg. Co., L.P.,* No. 2:14-CV-1131, 2015 WL 8259548, at *5 (S.D. Ohio Dec. 9, 2015). "*Relevance* is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citation omitted)). Despite being construed broadly, the concept of relevance is not unlimited. *Averett v. Honda of Am. Mfg., Inc.*, No. 2:07-cv-1167, 2009 WL 799638, at *2 (S.D. Ohio March 24, 2009). Indeed, "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868 at *2 (citations omitted). Furthermore, when information is "negligibly relevant [or] minimally important in resolving the issues" this will not satisfy the standard. *Id.* (citation omitted).

## II.

Applying the foregoing authority, the Court turns to the subject motions, beginning with the First Motion to Compel.

### A.    The First Motion to Compel (ECF No. 165).

The First Motion to Compel arises out of Defendant OSCO Industries, Inc.'s ("OSCO") discovery requests which seek information from Plaintiff The Goodyear Tire & Rubber Company ("Goodyear") regarding the extent to which it has recovered response costs related to the closed Jackson County Landfill (the "Landfill"). (ECF No. 165.) For its part, Goodyear does not dispute that it has declined to provide such information but opposes the First Motion to Compel because it believes OSCO prematurely filed the motion, OSCO's request is moot as to any insurance recoveries, and OSCO's request for settlement-related recoveries is "outside the relevance standard" of Federal Rule of Civil Procedure 26. (*See* ECF No. 166.)[1] The Court will address each of these issues in turn.

#### 1.    Timeliness.

As a preliminary matter, Goodyear opposes the First Motion to Compel because it believes Defendants did not exhaust all extrajudicial means for resolving the dispute before OSCO filed the First Motion to Compel. (*See* ECF No. 166 at PAGEID ## 9114-9115.) OSCO disagrees, and submits that it only filed the First Motion to Compel after attempting to meet and confer with Goodyear for over six months, at which point it "decided that it could not afford to

---

[1] Defendants General Mills, Inc., Masco Cabinetry, Inc., and R.J. Reynolds Tobacco Holdings, Inc. filed a separate response to indicate that they joined OSCO's arguments in the First Motion to Compel. (ECF No. 170 (the "Joinder").) The Joinder did not raise any arguments, however, so the Court need not discuss it further, except to take note of these other parties' positions.

wait longer to resolve the dispute, and that a conference with the Court would be futile." (ECF No. 171 at PAGEID ## 9158-9159.)

Goodyear's objection is not well taken. First, the Court finds that OSCO substantially complied with Federal Rule of Civil Procedure 37(a)(1), which provides that a motion to compel "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The Court also finds that OSCO did not run afoul of Local Rule 37.1, which directs that discovery-related motions "shall not be filed . . . unless the parties have first exhausted among themselves all extrajudicial means for resolving their differences." S.D. Ohio Civ. R. 37.1.

To this end, at the outset of the First Motion to Compel, OSCO included a footnote which expressly "acknowledge[d] the Court's preference for holding a conference in lieu of filing a Motion to Compel," and then explained (at length) the meet-and-confer correspondence between the parties and why OSCO believed that the parties had exhausted all extrajudicial means for resolving the dispute, consistent with both Civil Rule 37 and Local Rule 37.1. (ECF No. 165 at PAGEID ## 9068 n.1, 9069-9070.) While OSCO still should have arranged a conference with the Court as directed in the Preliminary Pretrial Order (*see* ECF No. 77), Goodyear's behavior from June 2022 through January 2023 leads the Court to agree that a conference would have been futile under the circumstances. Simply put, OSCO had waited long enough to bring these issues before the Court. The Court will not reward Goodyear's dilatory tactics by requiring that the parties engage in a futile discovery conference, when OSCO has otherwise complied with the applicable rules.

### 2.    Requests for Goodyear's Recovered Costs.

Because Goodyear brings this Complaint under Section 113(f) of the Comprehensive Environmental Response and Compensation Act of 1980, as amended, ("CERCLA"), 42 U.S.C. § 9613(f), OSCO believes that Defendants are entitled to know whether Goodyear has incurred recovery costs that exceed its equitable fair share.  (*See* ECF No. 165 at PAGEID ## 9070-9078.) OSCO's position is rooted in Section 114(b) of CERCLA, which provides as follows:

> Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law. Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter.

42 U.S.C. § 9614(b).  According to OSCO, its discovery requests could shed light on whether Goodyear had the right to file this action in the first place, and/or whether Goodyear should be permitted to continue pursuing it, because "a liable party that has recovered response costs that equal or exceed its equitable fair share has no right to file a contribution action, nor the right to maintain such action if at some point during the action it secures such recovery."  (*Id.* at PAGEID # 9071.)

To this end, OSCO seeks to know whether Goodyear has recovered any response costs from two specific sources.  First, OSCO seeks to know the extent to which Goodyear has recovered any response costs from any insurance carriers.  (*See generally id.*)  Second, OSCO knows Goodyear has entered into settlement agreements with other Defendants in this action, so OSCO seeks to know the extent to which Goodyear has recovered response costs from any other Defendants and/or potentially responsible parties ("PRPs").  (*Id.*)  The Court will address each of these requests in turn.

### a.    Insurance Recoveries.

The first category of information OSCO seeks is whether Goodyear has recovered recovery costs from insurance carriers.  (*See* ECF No. 165.)  In its four (4) sentence response on this point, Goodyear does not dispute that this information is relevant, and instead only submits that it has "explained that it is unaware of any insurance recovery salient to the [Landfill] remediation work for which Goodyear seeks contribution from the PRP defendants."  (ECF No. 166 at PAGEID # 9115.)  Goodyear argues that "[b]ecause [it] has no relevant information to provide on this point at this time and [it] responded to the requests and confirmed that the record would be amended, if necessary, in the future, OSCO should not have troubled this Court with the instant motion."  (*Id.*)  In its Reply brief, OSCO characterizes Goodyear's response as "misleading and incomplete."  (ECF No. 171 at PAGEID # 9160.)  OSCO believes that Goodyear is attempting to make a distinction between a "settlement" with insurance carriers and an "agreement" with insurance carriers, and that regardless of how Goodyear recovered money from its insurance carriers, OSCO and the other Defendants are entitled to know how much. (*Id.*)  Specifically, OSCO discusses an Ohio state court action from 1993 in which Goodyear sought to recover response costs at approximately 100 CERCLA sites, including the Landfill. (ECF No. 165 at PAGEID # 9077.)  OSCO believes that the filings from that case – specifically those related to Goodyear's appeal, which inexplicably do not relate to the Landfill – "suggests strongly" that Goodyear reached at least one settlement with an insurance carrier related to the Landfill.  (*Id.*)  For its part, Goodyear did not acknowledge, let alone address, this case in its Opposition.  (*See* ECF No. 166.)

While the Court appreciates OSCO's skepticism given the procedural history of Goodyear's earlier state court action against various insurers, and Goodyear's reticent language

during the underlying meet-and-confer correspondence, the Court finds that on the record

provided Goodyear has satisfied its discovery obligations on this issue.  Specifically, Goodyear

has stated that it "has no relevant information" to provide for OSCO's request regarding

insurance recoveries.  (ECF No. 166 at PAGEID # 9115.)  Notwithstanding OSCO's disbelief,

this response ends the inquiry, as Goodyear cannot produce documents which it states do not

exist.  *Brown v. Warden Ross Corr. Inst.*, No. 2:10-cv-822, 2011 WL 1877706, at *5 (S.D. Ohio

May 16, 2011) ("Defendants have represented that they do not have the information Plaintiff

seeks. The Court cannot require them to produce what they do not have."); *see also Tolliver v.*

*Liberty Mut. Fire Ins. Co.*, No. 2:06-CV-00904, 2008 WL 4951792, at *2 (S.D. Ohio Nov. 17,

2008) ("A party cannot be compelled to produce documents which do not exist or which it does

not possess or control.") (collecting cases).

As it stands, Goodyear's responses are protected by the bounds of Rule 11,[2] and the

Court is powerless to compel any information which Goodyear attests does not exist.

Accordingly, the First Motion to Compel is **DENIED IN PART** as it pertains to any recovery

costs Goodyear has received from insurance carriers.

### b.    Settlement Agreement Recoveries.

The second category of information OSCO seeks – Goodyear's settlement amounts with

other PRPs – is slightly less straightforward.  While Goodyear cannot, and does not, dispute that

---

[2] In denying that it has any relevant information to provide on this issue "at this time," Goodyear still indicates that it may amend its response at some point "in the future."  (ECF No. 166 at PAGEID # 9115.)  The Court certainly understands that this boilerplate language is standard in responding to discovery matters, but given OSCO's concerns – especially about whether Goodyear may be hiding the fact that it recovered costs from insurers approximately twenty years ago – the Court feels compelled to remind counsel that if Goodyear later supplements its discovery responses to identify any insurance recoveries which it knew about, or reasonably should have known about, at the time of the subject briefing, then the Court will entertain an appropriate motion.  .

it has such information, Goodyear instead insists that this information is not relevant "at this point in the proceeding" because disclosing the information "would run counter to the confidentiality provisions of the settlement agreements and could chill settlement discussions, which should be encouraged by the Court." (*See* ECF No. 166.) Goodyear further submits that "there is no compelling need for Goodyear to disclose individual settlement amounts with each settling defendant," and insists that it "has provided ample disclosures and information . . . to support its claims." (*Id.*) Finally, Goodyear also argues that "[w]hile OSCO might argue that Goodyear's recoveries are relevant and necessary to make sure that Goodyear has not double recovered or recovered more than its fair share, such technical calculations would remain impossible to arrive at even if the information were provided." (*Id.*)

Goodyear's arguments are not well taken, as "[t]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe*, 2018 WL 1373868, at *2 (citations omitted). Here, OSCO has repeatedly asserted the defense that Goodyear's claims "are barred by CERCLA's prohibition against double recovery." (ECF No. 21 at PAGEID # 91; ECF No. 52 at PAGEID ## 295-296.) Thus, OSCO's request is plainly relevant, and Goodyear's arguments to the contrary are misplaced at best and frivolous at worst.[3] Needless to say, the Court flatly rejects Goodyear's arguments that this information will only be relevant on the eve of trial, or that disclosure of this information will frustrate settlement talks.

---

[3] The chief case on which Goodyear relies expressly acknowledged that "other courts in this District have found the potential for set-off sufficient to satisfy the relevance standard of Rule 26 and have compelled the disclosure of settlement agreements in similar circumstances." *Wagner v. Circle W Mastiffs*, Nos. 2:08-cv-439, 2:09-cv-0172, 2013 WL 2096655, at *8 (S.D. Ohio May 14, 2013) (internal citations omitted). The *Wagner* Court did not grant the motion to compel on that ground, however, because Plaintiff "[did] not specifically address this issue" in the underlying briefing. *Id.* Obviously that is not the case here, so Goodyear's attempt to align this case with *Wagner* – instead of the other cases throughout this District which have found such settlement agreements to be relevant – is not well taken.

To the contrary, the Court agrees with OSCO that "[d]isclosure of the settlements will promote additional settlements by enabling the remaining Defendants to see what Goodyear considered to be acceptable, fair share contributions by other parties that allegedly disposed of wastes of similar (or dissimilar) characteristics and volumes at the [Landfill], and then use that information to negotiate equitable fair share settlements for themselves." (ECF No. 171 at PAGEID # 9162.)

Having established that the information sought is relevant, the Court must then determine whether it would be overly burdensome for Goodyear to provide the information. *Prado*, 2017 WL 5151377, at *1 (holding that, upon a showing of relevance, "the burden shifts to the non-movant to show that to produce the information would be unduly burdensome."). And here, Goodyear has not even attempted to make this showing. At most, Goodyear merely offers that the Court should review such documents *in camera*, but this only confirms that it is not burdensome for Goodyear to produce. (ECF No. 166 at PAGEID # 9118.) Goodyear's offer for *in camera* review also completely undermines its position that it would be "impossible" for Defendants to determine whether Goodyear "has not double recovered or recovered more than its fair share." (ECF No. 166 at PAGEID ## 9121-9122.) Yet again, Goodyear's position on this point teeters on the edge of frivolity and is not well taken. It is clear to the Court that Goodyear is readily capable of producing this information but simply wishes not to produce it to Defendants. But, the Court (and the Federal Rules of Civil Procedure) will not indulge Goodyear's delay tactics any further.

Accordingly, the First Motion to Compel is **GRANTED IN PART**, as it pertains to any recovery costs Goodyear has received pursuant to any settlements or agreements with other PRPs, including but not limited to those who have been Defendants in this action. Goodyear is

**DIRECTED** to produce this information to OSCO within **FOURTEEN (14) DAYS** of the date of this Opinion & Order.

## B.     The Second Motion to Compel (ECF No. 184).[4]

OSCO's Second Motion to Compel relates to discovery requests OSCO served on non-party Ohio Environmental Protection Agency ("Ohio EPA") in December 2022, as well as a Rule 30(b)(6) deposition of Ohio EPA in January 2023.  Generally, OSCO (and Defendant R.J. Reynolds Tobacco Holdings, Inc., which joined the Second Motion to Compel by a separate filing (*see* ECF No. 185)) seeks information regarding the interactions between Goodyear and the Ohio EPA between approximately 1998 and 2016.  (*See* ECF No. 184.)  According to OSCO, the Ohio EPA worked closely with Goodyear during this period, before ultimately determining that Goodyear would be the only PRP required to sign the Ohio EPA's two remedial orders related to the Landfill.  (*See id.* at PAGEID ## 9447-9451.)

Specifically, the subject dispute stems from OSCO's review of "numerous letters and countless emails" it received from Goodyear during discovery which OSCO submits "evidence constant, unwavering pressure" by Goodyear to implicate other PRPs related to the Landfill.  (*Id.* at PAGEID # 9447.)  Accordingly, OSCO now seeks the Ohio EPA's related internal records

---

[4] As a preliminary aside, the Second Motion to Compel is oversaturated with acronyms and abbreviations, with defined terms sprinkled across ***all but four (4) sentences in the twenty-page filing***.  (*See* ECF No. 184.)  While some shorthand was useful (defining Ohio EPA as "OEPA," for example), others were overly distracting or confusing (alternatively defining Ohio EPA as the "Agency," defining Goodyear as "GY," defining documents as "docts," and defining separate terms with confusingly similar acronyms, for example).  The proliferation of these acronyms and abbreviations created a confusing alphabet soup which actively took the reader out of OSCO's arguments (at the expense of remembering what everything meant), and unnecessarily prolonged the Court's review of the subject motions.  While OSCO affirmatively stated that it did so "[f]or the sake of brevity," the Court has no doubt that it was nothing more than a maneuver to comply with the presiding District Judge's Standing Order regarding page limitation.  Counsel is **ADVISED** that in future filings, less is more when it comes to acronyms and abbreviations – even if it becomes slightly more difficult to comply with an applicable page limitation.

and communications to get the full picture of how the Ohio EPA reached its ultimate conclusions regarding the Landfill. (*Id.* at PAGEID ## 9445-9447.) Of perhaps the most importance to OSCO are documents and/or information which may explain why only Goodyear would be required to implement the Ohio EPA's selected remedy for the Landfill, even though the Ohio EPA investigated approximately 25 other PRPs, including OSCO. (*Id.*)[5] Beyond these document requests, OSCO also has taken a Rule 30(b)(6) deposition of the Ohio EPA. OSCO, however, now seeks to reserve the right to depose two additional Ohio EPA witnesses because it believes the Ohio EPA's designee was not properly prepared for the first deposition. (*Id.* at PAGEID ## 9457-9459.)

In response, the Ohio EPA opposes OSCO's requests and moves to quash the subpoenas for additional Rule 30(b)(6) depositions and document productions. (ECF No. 186.) First, the Ohio EPA maintains that its designee was properly prepared for the initial deposition, and notes that OSCO has not sought to continue to reopen that deposition. (*Id.*) To this end, the Ohio EPA believes OSCO's requests are "nothing more than [a] desperate attempt[] to 1) circumvent the rules to obtain . . . a second and third 30(b)(6) designee deposition of Ohio EPA, and 2) to explore the confidential internal decision-making deliberations of Ohio EPA that several established privileges are meant to protect." (*Id.* at PAGEID # 9538.) The Ohio EPA also submits that it "offered to meet with OSCO to discuss the undue burden imposed by the subpoenas," but that "[i]nstead, OSCO went straight to the Court." (*Id.* at PAGEID # 9534.)

Goodyear also opposes OSCO's requests. (ECF No. 187.) First, Goodyear maintains that "any testimony that could result from the requested [Ohio EPA] depositions would be

---

[5] Of note, concurrent with the subject briefing, OSCO also has sought the same information and documents from the Ohio EPA through public records requests. (*See* ECF No. 186 at PAGEID ## 9548-9549.)

irrelevant and/or inadmissible hearsay," and that "what [the Ohio EPA] might have said or thought in the past about [] evidence or the case against OSCO has no bearing on this matter." (*Id.* at PAGEID # 9774.)  Goodyear also insists that "OSCO's deposition requests are untimely," as OSCO did not request the depositions until the very last day of discovery despite knowing for years about the individuals it seeks to depose.  (*Id.*)  Finally, Goodyear believes that the Second Motion to Compel is procedurally deficient under this Court's Local Rules.  (*Id.*)

Against this background, while the Court appreciates OSCO's interest in what information the Ohio EPA may possess, the Second Motion to Compel is not well taken.  First, the Court finds that the Ohio EPA's designee was sufficiently prepared for the January 25, 2023 deposition.  Next, the Court also finds that OSCO's February 21, 2023 subpoenas are improper. The Court will discuss each of these points in turn.

1.  **The January 25, 2023 Deposition.**

Because OSCO seeks its "reasonable fees and expenses for the failed Rule 30(b)(6) deposition," the Court must determine whether the Ohio EPA designee, Mark Rickrich, was adequately prepared for his Rule 30(b)(6) deposition.  (ECF No. 184 at PAGEID # 9464.)  For the reasons set forth below, the Court finds that Mr. Rickrich was sufficiently prepared.

"Obviously it is not literally possible to take the deposition of a corporation; instead, when a corporation is involved, the information sought must be obtained from natural persons who can speak for the corporation."  8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure, § 2103, at 451 (3d ed. 2010).  Thus, "the duty to prepare a 30(b)(6) witness extends not only to the matters within the designee's personal knowledge, but also to all matters reasonably known by the corporation."  *Painter-Payne v. Vesta W. Bay, LLC*, No. 2:12-CV-00912, 2014 WL 1599505, at *3 (S.D. Ohio Apr. 21, 2014) (citing *U.S., ex rel. Fry*

*v. Health Alliance of Greater Cincinnati*, No 1:03-cv-167, 2009 WL 5227661, at *2 (S.D. Ohio Nov. 20, 2009)).  A party, therefore, has the responsibility under Rule 30(b)(6) to prepare its designee "to the extent matters are reasonably available, whether from documents, past employees, or other sources . . . ."  *Id.*  Specifically, the company is required "to make a good faith effort to find out the relevant facts possessed by the corporation – to collect information, review documents, and interview employees with personal knowledge just as a corporate party is expected to do in answering interrogatories."  *Clear Cast Grp., Inc. v. Ritrama, Inc.*, No. 1:09CV0169, 2011 WL 13334451, at *3 (N.D. Ohio Sept. 15, 2011) (internal quotation and citations omitted).

While "[a]bsolute perfection is not required of a 30(b)(6) witness," producing an unprepared Rule 30(b)(6) witness is tantamount to a failure to appear, which may warrant sanctions under Federal Rule of Civil Procedure 37(d).  *Wicker v. Lawless*, 278 F. Supp. 3d 989, 1000 (S.D. Ohio 2017) (citing *Lutz v. St. Paul Fire & Marine Ins. Co.*, No. 1:03–cv–750, 2005 U.S. Dist. LEXIS 12568, *7–8 (S.D. Ohio May 24, 2005) ("An improper Rule 30(b)(6) designation may amount to a failure to appear and warrant sanctions under Rule 37.")); *see also Little Hocking Water Ass'n, Inc. v. E.I. Du Pont de Nemours & Co.*, No. 2:09-CV-1081, 2013 WL 1196606, at *14 (S.D. Ohio Mar. 25, 2013) ("[T]he production of an unprepared witness is tantamount to a failure to appear, and warrants the imposition of sanctions.").  Rule 37(d) "provides for a variety of sanctions for a party's failure to comply with its Rule 30(b)(6) obligations, ranging from the imposition of costs to preclusion of testimony and even entry of default."  *Wicker*, 278 F. Supp. 3d at 1000–1001 (citation omitted). The party seeking sanctions must make at least an initial showing—with record citations—suggesting that the designee's preparation was inadequate.  *Id.*  Before imposing sanctions, courts should compare the

14

testimony elicited in the deposition to the topics noticed under Rule 30(b)(6) in order to determine the adequacy of the witness' preparation. *Id.* (citation omitted).

Against this legal background, the Court finds that Mr. Rickrich was adequately prepared for the January 25, 2023 deposition. As a preliminary matter, the Court is not persuaded by OSCO's argument that "all the witness could do was speculate," citing (in a footnote) to the *entire* 264-page deposition – which, the Court must note, OSCO did not file, and is therefore not part of the record. (ECF No. 184 at PAGEID # 9452.) Later, OSCO provides three citations (again, in a footnote) to various moments in Mr. Rickrich's deposition which OSCO submits are "replete with [Mr. Rickrich's] admission that he never talked to anyone, and was providing the [Ohio EPA's] knowledge on OSCO's list of subjects based largely on his speculation and, at most, a review of the limited [documents] provided by OSCO that, while relevant background for the subjects, clearly did not address the subjects for which OSCO was requesting his testimony," but OSCO does not provide any further information or context for the Court's review. (*Id.* at PAGEID # 9458 n.36.)

OSCO's argument is not well taken for a number of reasons, chief of which being that the subject deposition transcript is not a part of the record in this case such that OSCO's entire argument lacks any basis in the record. *Wicker*, 278 F.Supp.3d at 1000 ("The party seeking sanctions *must make at least an initial showing—with record citations*—suggesting that the designee's preparation was inadequate.") (emphasis added). To be clear, attaching the deposition transcript to informal email correspondence with the Court – as OSCO did here, prior to the subject briefing – does not make the transcript part of the case record. *See Green v. Taylor*, No.

1:03 CV 1804, 2005 WL 8167539, at *3 (N.D. Ohio Apr. 12, 2005) ("[C]orrespondence does not appear on the court's docket, and is thus not a part of the official record.").[6]

But even if it did, or even if OSCO had properly filed the transcript as a part of the record for the subject briefing, OSCO's sweeping, conclusory argument is inadequate, for as the Ohio EPA correctly noted, "OSCO does not point to one instance where it claims [Mr. Rickrich] was not able to provide testimony in response to one of the [noticed] topics."  (ECF No. 186 at PAGEID # 9537.)  On this point, the Court further agrees with the Ohio EPA that – to the extent the Court can follow OSCO's transcript citations – OSCO has only, at most, identified instances in which Mr. Rickrich testified that he could have done more, or done things differently, to prepare for the deposition.  In each of OSCO's cited examples, Mr. Rickrich ultimately testified substantively as to the noticed topics.

First, for example, it appears to the Court that OSCO cites a moment during the deposition when Mr. Rickrich testified as to the extent of his preparation for the deposition.  (ECF No. 184 at PAGEID # 9458 n.36 (citing "Rickrich Dep. 20:12-24.").)  Specifically, Mr. Rickrich testified that he did not speak with the current Landfill site coordinator, any non-lawyers "in the group," or any former Ohio EPA employees who may have worked in some fashion with respect to the Landfill.  (ECF No. 184 at PAGEID # 9458 n.36 (citing "Rickrich Dep. 20:12-24.").)  The Ohio EPA argues that "[t]his is not an instance where OSCO asked a question under a designated topic and [Mr. Rickrich] could not answer the question—it was

---

[6] OSCO's failure in this regard dooms its argument, but for the sake of completeness the Court has attempted to review the citations contained in the Second Motion to Compel in its discussion herein.  While the Court is fairly confident it can follow OSCO's citations for purposes of the subject Opinion & Order, it can never be certain without record citations.  Needless to say, this only reinforces why the movant in such circumstances bears the burden of citing to the record. *See Green*, 2005 WL 8167539, at *3 ("Should an appellate court ever review this case, the appellate court will be reviewing an incomplete record.").

testimony on that [Mr. Rickrich] did to prepare for the deposition." (ECF No. 186 at PAGEID #
9537.) OSCO's reply brief does not refute this argument, so it remains curious to the Court that
OSCO cited this testimony at all.

Next, it appears to the Court that OSCO cites a lengthy discussion during Mr. Rickrich's
deposition regarding whether the Ohio EPA had been satisfied with OSCO's responses to a
CERCLA 104(e) request letter. (ECF No. 184 at PAGEID # 9458 n.36 (citing "Rickrich Dep. . . .
53:11-57:15.").) During this discussion, Mr. Rickrich explained the Ohio EPA's protocol for
such matters, testified that he "wasn't personally involved" in the events, and testified that he
"did not talk to anybody about that . . . as a function of prepping for [the deposition]." In the
subject briefing, the Ohio EPA does not dispute this testimony, arguing that "[e]ven though none
of the noticed deposition topics addressed invitation letters, [Mr. Rickrich] answered that
question." (ECF No. 186 at PAGEID # 9537.) Once again, OSCO's reply brief does not refute
this argument. Regardless, the Court agrees with the Ohio EPA that Mr. Rickrich substantively
answered the questions, even if he didn't speak with everyone he could have during his
preparation.

Finally, it appears to the Court that OSCO also cites Mr. Rickrich's discussion of "Exhibit
B," which is described as a policy document related to an exemption for foundry sand and slag.
(ECF No. 184 at PAGEID # 9458 n.36 (citing "Rickrich Dep. . . . 63:19-66:13.").) Presumably,
OSCO cites this discussion because Mr. Rickrich testified that, in his preparation for the
deposition, he did not "discuss the history of this exemption . . . with someone who's
knowledgeable at Ohio EPA" because he "wasn't aware that that was something that was
required of him." But as the Ohio EPA correctly observes, Mr. Rickrich testified at length about
the same policy document just moments later, when asked if he "ha[d] any passing familiarity

17

with those programs" and could "talk a little bit about those programs without having talked to people more in charge of them."  For this reason, it doesn't matter whether Mr. Rickrich could have done more to prepare for his deposition, because he still was able to substantively address OSCO's concerns and answer OSCO's questions.

To be clear, and as a reminder, the Court did not even need to address OSCO's citations to deny its request for fees associated with Mr. Rickrich's deposition.  But regardless, for these additional reasons, OSCO's request for fees associated with Mr. Rickrich's deposition is not well taken, because OSCO has failed to substantiate even one example in which Mr. Rickrich was materially unprepared for his deposition.  Instead of attempting to show how Mr. Rickrich's testimony failed to address the noticed topics, OSCO cherry-picked isolated moments, out of context, in which Mr. Rickrich testified that he could have prepared more for his deposition.  But this is not the standard for adequate preparation.  What Mr. Rickrich said during his deposition is far more important than what he did to prepare for it.

And even if Mr. Rickrich had been unable to answer certain questions – which OSCO has not demonstrated is even the case – it is well settled that "the inability of a designee to answer every question on a particular topic does not necessarily mean that the corporation has failed to comply with its obligations under the Rule." *Freedom's Path at Dayton v. Dayton Metropolitan Housing Authority*, No. 3:16-cv-466, 2018 WL 2948021, at *11 (S.D. Ohio, 2018) (internal citations omitted); *see also Pogue v. NorthWestern Mut. Life Ins. Co.*, No. 3:14-CV-598-CRS, 2017 WL 3044763, at *8-10 (W.D. Ky. July 18, 2017) (finding that the "questions did not reveal unpreparedness" where deponent "was unable to answer questions without referring to the claim file, even though she claimed to have reviewed the file in preparation for the deposition"); *Costa v. Cnty. of Burlington*, 254 F.R.D. 187, 190 (D.N.J. 2008) ("Simply because defendant's witness

18

could not answer every question posed to him does not equate to the fact that defendant did not satisfy its obligation to prepare its 30(b)(6) witness.") (collecting cases).  Accordingly, the Second Motion to Compel is **DENIED** as to OSCO's request for fees associated with Mr. Rickrich's deposition.

### 2.    The February 21, 2023 Subpoenas.

The remainder of the Second Motion to Compel and the Motion to Quash arise out of and relate to two subpoenas OSCO sent to Ohio EPA witnesses, Ann Fischbein and Kurtis Herlocher, on February 21, 2023 – the last day of discovery.  (*See* ECF No. 184-4 (the "Subpoenas").) OSCO maintains that "[t]he information sought in OSCO's subpoena[s] was the same as its list of subjects from the failed Rule 30(b)(6) deposition, modified to include a request for [documents] relating to the subjects[] which [Mr. Rickrich] speculated to exist during the deposition."  (ECF No. 184 at PAGEID # 9451.)  At the heart of OSCO's request is information regarding why the Ohio EPA decided that only Goodyear, and not other PRPs such as OSCO, would be required to sign an order to implement the Ohio EPA's remedy for the Landfill.  (*Id.*)

The Ohio EPA has resisted OSCO's request, however, and moves to quash the Subpoenas for several reasons.  (ECF No. 186.)  Specifically, the Ohio EPA argues that "[i]t is clear that OSCO's subpoenas are nothing more than desperate attempts to 1) circumvent the rules to obtain, without leave of court, a second and third 30(b)(6) designee deposition of Ohio EPA, and 2) to explore the confidential internal decision-making deliberations of Ohio EPA that several established privileges are meant to protect."  (*Id.* at PAGEID # 9538.)  To this end, Ohio EPA submits that the testimony sought is protected by the attorney-client privilege (as to Ms. Fischbein), the work product doctrine (as to Mr. Herlocher), and the executive/deliberative process privilege (as to both witnesses), and that Ohio EPA has never waived any of these

privileges or protections.  (*Id.* at PAGEID ## 9539-9545.)  Ohio EPA also argues that "there are procedural deficiencies in the [Subpoenas] that create an undue burden," and that the Subpoenas "are not the proper mechanisms for OSCO to obtain documents from Ohio EPA."  (*Id.* at PAGEID ## 9545-9548.)  On that note, Ohio EPA concludes by submitting that the Subpoenas "are duplicative and unnecessary, as OSCO can obtain documents through a public records request."  (*Id.* at PAGEID # 9548-9549.)

Goodyear also opposes the Subpoenas.  (ECF No. 187.)  While not a party to the Subpoenas, Goodyear argues that the Court should reject OSCO's arguments for three reasons: first, "any testimony that could result from the [Ohio EPA] depositions would be irrelevant and/or inadmissible hearsay"; second, "OSCO's deposition requests are untimely," since they were not requested until the last day of discovery; and third, the Second Motion to Compel is "procedurally defective," because OSCO "failed to submit the evidence supporting its many wild assertions, as required by Local Rule 7.2(d)."  (*Id.* at PAGEID # 9774.)

In response to the Ohio EPA's arguments, OSCO insists that the Ohio EPA "misses the crux of this dispute" and that "every effort OSCO has made to obtain this evidence in less burdensome ways has failed, been rejected, or indefinitely delayed."  (ECF No. 193 at PAGEID ## 10267, 10270.)  OSCO also filed with its Reply brief nearly five hundred (500) pages of documents which it submits "demonstrate a multi-year joint collaboration between the two parties that directly involved: (1) discussions regarding the Agency's internal decisionmaking process and enforcement authority relating to alleged waste disposal by all PRPs at the JCL, including OSCO, and (2) the ultimate decision as to whether any PRP other than GY would be required to sign a remedial order with GY."  (*Id.* at PAGEID # 10272; *see also* ECF Nos. 193-4 through 193-12.)

As for the Ohio EPA's claim of privilege, OSCO further submits that "[o]nce [the Ohio EPA] decided to allow [Goodyear] to participate directly in the deliberations of the [Ohio EPA's] enforcement-related decisions affecting all PRPs connected in some way to the [Landfill], there was no privilege to be waived, inadvertent or otherwise." (*Id.* at PAGEID # 10273.)  Finally, regarding OSCO's public record request for the same documents, OSCO argues that it has every right to do so, since "Ohio law allows a litigant to make full use of the State's public record statute to obtain records independent of the right to pursue civil discovery to obtain the records." (*Id.* at PAGEID ## 10274-10275.)

OSCO's arguments are not well taken.  As a preliminary matter, while the Court recognizes that OSCO issued the Subpoenas before discovery closed, the Court nevertheless takes the Subpoenas as nothing more than a transparent attempt to circumvent the Court's scheduling order in this case.  On this point, it is well settled that "a subpoena issued pursuant to Fed. R. Civ. P. 45 is considered to be a discovery device in the Sixth Circuit, and accordingly, must adhere to the deadlines of a court's scheduling order." *FIP Realty Co., Ltd. v. Ingersoll-Rand plc*, No. 2:19-cv-3291, 2020 WL 6060412, at *3 (S.D. Ohio Oct. 14, 2020) (citing *Miami Valley Fair Housing Center, Inc. v. Connor Group*, No. 3:10-cv-00083, 2011 WL 13157347, at *3 (S.D. Ohio July 21, 2011); *Estate of Tierney v. Shellberg*, No. 1:08-CV-866, 2011 WL 13202376, at *2 (S.D. Ohio Jan. 5, 2011) ("[A] Rule 45 subpoena seeking documents from a third-party has generally been held to constitute discovery that is subject to the same deadlines that apply to all other formal discovery.") (internal quotation marks and citations omitted)).  For this reason, allowing a party to use a Rule 45 subpoena "in order to depose a witness after the discovery cut-off deadline has passed, without express approval from this Court, would clearly

amount to nothing more than a circumvention of the [Court's scheduling order]." *Miami Valley Fair Housing Center, Inc.*, 2011 WL 13157347, at *3.

As a result, the Subpoenas, which constitute a continuation of discovery, are only permissible if OSCO can demonstrate good cause for extending the case schedule. *Id.* Under Federal Rule of Civil Procedure 16, the Court will modify its scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Accordingly, "[t]he party seeking modification of the case schedule has the 'obligation to demonstrate 'good cause' for failing to comply with the district court's scheduling order[.]'" *First State Bank v. Peoples Bank, N.A.*, No. 2:17-CV-1156, 2019 WL 13203282, at *2 (S.D. Ohio June 6, 2019) (quoting *Pittman ex rel. Sykes v. Franklin*, 282 F. App'x 418, 425 n.5 (6th Cir. 2008)).

In determining whether good cause exists, the primary consideration "is the moving party's diligence in attempting to meet the case management order's requirements." *Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 377 (6th Cir. 2009) (internal quotations omitted) (quoting *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 625 (6th Cir. 2002)); *see also Leary v. Daeschner,* 349 F.3d 888, 906 (6th Cir. 2003) ("But a court choosing to modify the schedule upon a showing of good cause, may do so only 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'") (quoting Fed. R. Civ. P. 16 advisory committee's notes to 1983 amendment). Additionally, the Court should also consider potential prejudice to the nonmovant, but the "main focus should remain on the moving party's exercise of diligence." *Cooke v. AT&T Corp.*, No. 2:05-CV-374, 2007 WL 188568, at *2 (S.D. Ohio Jan. 22, 2007) ("Prejudice to the party not seeking alteration to the scheduling order should be a factor, but the main focus should remain on the moving party's exercise of diligence.") (citation

22

omitted)); *see also Wagner*, 2011 WL 124226, at *4 ("[T]he absence of prejudice to the opposing party is not equivalent to a showing of good cause.").

But OSCO does not attempt to show good cause for extending the case schedule, and only rests on the argument that the Subpoenas were "timely served under the Court's Orders." (ECF No. 184 at PAGEID # 9447.)  Notably, the Court observes that the Subpoenas do not provide a time or date for the proposed depositions or document productions, instead directing Ms. Fischbein and Mr. Herlocher to appear for a deposition "on a date and time to be mutually agreed upon" and to produce the requested documents "no later than the date before their scheduled deposition."  (*See* ECF No. 184-4 at PAGEID # 9491.)  While this language may have saved the subpoenas from being facially untimely under the Court's scheduling order, it still reflects OSCO's awareness that it would have been impossible for Ms. Fischbein and Mr. Herlocher to comply with the Subpoenas before the close of discovery.[7]  Whether OSCO "timely served" the Subpoenas is therefore a red herring.

Instead, the Court must focus on OSCO's inability to show good cause for extending the case schedule.  While OSCO argues that the Subpoenas were a last resort "[f]ollowing the failed deposition" of Mr. Rickrich, the Court finds that this does not meet the good cause standard. First, as discussed above, the Court rejects OSCO's characterization of Mr. Rickrich's deposition as a failure.  Beyond that, however, OSCO also has failed to demonstrate how it was diligent in issuing the Subpoenas, as it conspicuously fails to refute Goodyear's contention that Ms.

---

[7] Courts quash subpoenas under these circumstances.  *See Arndt v. Ford Motor Company*, No. 2:15-cv-11108, 2016 WL 1161444, at *3 (E.D. Mich. Mar. 24, 2016) (Quashing subpoenas where "Defendant issued the subpoenas on the final day of the discovery period, which did not provide sufficient time in advance of the discovery deadline in which to serve responses, in violation of the Court's scheduling order.") (citing *Taylor v. Countrywide Home Loans*, No. 08-13258, 2009 WL 1913417, at *3 (E.D. Mich. June 30, 2009)).

Fischbein and Mr. Herlocher had "long been known to OSCO," or that OSCO "had more than enough time to request their depositions so that they could be completed during the regular discovery period."[8] (ECF No. 187 at PAGEID # 9774.) These implicit concessions would doom OSCO's efforts to show good cause for extending the case schedule, had OSCO sought to make such a showing.

But even if, *arguendo*, the Court found that good cause did exist to extend the discovery deadline for purposes of the Subpoenas, the Court still would not find OSCO's other arguments to be well taken. First and foremost, the Court agrees with the Ohio EPA that the Second Motion to Compel is fatally noncompliant with Local Rule 7.2(e), which required OSCO to attach its evidence to the Second Motion to Compel or "in an appendix thereto." S.D. Ohio Civ. R. 7.2(e). Instead of complying with this Local Rule, OSCO submitted a chart that summarized why OSCO believes certain documents are important. (*See* ECF No. 184-1.) Then, after the Ohio EPA correctly highlighted OSCO's noncompliance with Local Rule 7.2(e), OSCO filed approximately five hundred (500) pages of documents which it purports demonstrates "a multi-year joint collaboration between the two parties that directly involved: (1) discussions regarding the

---

[8] As an aside, the Court feels compelled to note that on February 20, 2023 – the day before OSCO served the Subpoenas – OSCO opposed Goodyear's effort to extend the discovery deadline. (*See* ECF No. 174.) First, it goes without saying that if the Court had granted Goodyear's proposed extension, then the Subpoenas likely would have been timely. But regardless, in that opposition, OSCO argued (in part) that extending the discovery deadline would prejudice the Defendants, who had "waited long enough for an opportunity to file dispositive motions against Goodyear's overarching contribution claim." (*Id*.) Conveniently, however, OSCO also requested in that opposition that "depositions [noticed] before the close of fact discovery [should] be allowed to be completed after the close of fact discovery," not-so-subtly (in retrospect) foreshadowing the Subpoenas that OSCO would issue a day later. (*Id*.) Further, in that opposition, OSCO also sought a two-week extension to complete its responses to certain discovery, but OSCO did not acknowledge that it would be pursuing additional third-party depositions and document productions. (*Id*.) While not germane to the Second Motion to Compel, the Court does not appreciate such tactics and gamesmanship.

Agency's internal decisionmaking process and enforcement authority relating to alleged waste

disposal by all PRPs at the JCL, including OSCO, and (2) the ultimate decision as to whether any

PRP other than GY would be required to sign a remedial order with GY." (*Id.* at PAGEID #

10272; *see also* ECF Nos. 193-4 through 193-12.)

But OSCO leaves its argument there and does not specifically point the Court towards

any actual evidence in support of this sweeping conclusion. Instead, OSCO merely submits that

"[t]he Court will decide for itself" what the hundreds of documents mean. (ECF No. 193 at

PAGEID # 10272.) But it is not the Court's job to parse through hundreds of disorganized pages

of documents – a majority of which are either subject to interpretation or downright illegible –

without any guidance. To this end, it is well established that "the Court is not required to scour

the record to find support for Plaintiff's Motion." *Wicker*, 278 F. Supp. 3d at 1001; *see also*

*Browder v. Ankrom*, 473 Fed.Appx. 499, 500 ("[W]e are not required to scour the record for

potential arguments on [a party's] behalf.") (citing *Wells v. Brown,* 891 F.2d 591, 594 (6th Cir.

1989)). Even to the extent the Court believes it can cross-check OSCO's documents against the

summary chart it attached to the Second Motion to Compel,[9] the Court simply does not agree

with OSCO that the documents "demonstrat[e] that the [Ohio EPA] allowed [Goodyear] to

directly participate in all stages of [the Ohio EPA's] deliberations about what [PRPs] would be

required to sign one or both [Ohio EPA] orders." (ECF No. 184 at PAGEID ## 9446.)

This conclusion rebuts OSCO's argument that "[t]here was no privilege applicable to the

[Ohio EPA's] deliberations once it allowed an outside party . . . to be an active participant

---

[9] OSCO appears to have produced **hundreds** of pages of documents (including, but not limited
to, news articles, photographs, and a 75-page (illegible) deposition transcript) which it did not
reference in the Summary Chart. (*Compare* ECF No. 184-1 *with* ECF Nos. 193-4 through 193-
12, PAGEID ## .)

therein."  (ECF No. 184 at PAGEID # 9447.)  As OSCO affirmatively concedes, the Ohio EPA's claimed deliberative process privilege applies to an agency's internal deliberations, and the Court cannot discern from OSCO's produced documents that the Ohio EPA did anything to waive the deliberative process privilege (or any other privilege) which otherwise would shield OSCO's requested documents from disclosure.  *Bd. of Commrs. of Clermont Cnty., Ohio v. United States Environmental Protection Agency*, No. 1:17-CV-389, 2021 WL 391715, *3 (S.D. Ohio Feb. 4, 2021) ("[T]he deliberative-process privilege aims to protect documents that are both 'predecisional' and 'deliberative.' A document is predecisional when it is received by the decisionmaker on the subject of the decision prior to the time the decision is made, and deliberative when it reflects the give-and-take of the consultative process." (internal quotation marks and citations omitted).[10]  OSCO has therefore provided no basis on which to compel the requested documents.[11]

Accordingly, the Court does not find the Second Motion to Compel to be well taken.  The Second Motion to Compel is therefore **DENIED**.[12]

---

[10] The Court also agrees that the Ohio EPA's inadvertent disclosure of a single privileged document in discovery did not waive the Ohio EPA's applicable privileges in this case.  To this end, it is clear to the Court that the Ohio EPA takes sufficient precautions regarding its extensive confidential records, that the Ohio EPA acted quickly and reasonably to remedy the (extremely limited) disclosure, and that the interests of justice strongly weigh against any kind of blanket waiver of privilege in this instance.  *See Nilavar v. Mercy Health Systems-Western Ohio*, No. 3:99-cv-612, 2004 WL 5345311, *3 (S.D. Ohio March 22, 2004).

[11] To be clear, the Court does not believe that this Opinion & Order has any impact on OSCO's concurrent attempts to obtain the requested documents by way of public records requests.  The Court has no opinion about how those public records requests should resolve.

[12] This conclusion moots the Motion to Quash.

## III.

For the reasons set forth above, OSCO Industries, Inc.'s Rule 37 Motion to Compel Goodyear to Disclose Response Costs Recovered from Insurance Carriers and Parties Allegedly Responsible Under CERCLA for Costs Relating to the Jackson County Landfill, ECF No. 165, is **GRANTED IN PART** and **DENIED IN PART**, OSCO Industries, Inc.'s Rule 37 Motion to Compel Relating to Rule 30(b)(6) Deposition of Ohio EPA, and Subsequent Rule 45(a)(1) Subpoena for Deposition Duces Tecum to Ohio EPA, ECF No. 184, is **DENIED**, and Non-Party Ohio EPA's Response in Opposition to OSCO Industries, Inc.'s Motion to Compel and Ohio EPA's Motion to Quash, ECF No. 186, is **DENIED AS MOOT**.

Goodyear is therefore **DIRECTED** to produce all settlements and/or agreements with other potentially responsible parties, including but not limited to those who have been Defendants in this action, related to the Landfill, within **FOURTEEN (14) DAYS** of the date of this Opinion & Order.

**IT IS SO ORDERED.**

Date: August 11, 2023                      /s/ *Elizabeth A. Preston Deavers*
                                           **ELIZABETH A. PRESTON DEAVERS**
                                           **UNITED STATES MAGISTRATE JUDGE**