IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE GOODYEAR TIRE & RUBBER COMPANY, | ) ) ) ) |
| Plaintiff, | ) Case No. 2:20-cv-06347-MHW-EPD ) |
| v. | ) Hon. Michael H. Watson ) Hon. Magistrate Elizabeth A. Preston Deavers ) |
| CONAGRA FOODS, INC., *et al.*, | ) **PLAINTIFF'S MEMORANDUM IN** ) **OPPOSITION TO DEFENDANTS'** ) **REQUEST FOR ADDITIONAL** ) **DISCOVERY.** |
| Defendants. | ) |

In accordance with the Court's request made during the March 20, 2024, discovery conference and the subsequent minute entry issued on March 25, 2024, Plaintiff, The Goodyear Tire & Rubber Company ("Goodyear"), by and through undersigned counsel, respectfully submits the following memorandum in support of its position that: (1) nothing has changed in the last year that would warrant the Court to revisit its prior Order (ECF No. 200) or otherwise entertain a request from Defendants to reopen fact discovery into the matter; (2) Defendants lack any good cause to justify a request to reopen discovery; and (3) Goodyear has not entered into any settlement agreements with insurers or otherwise received any insurance recovery for the response costs it seeks to recover in this case, and was not obligated to produce irrelevant, confidential settlements with Goodyear's insurers stemming from prior litigation in the matter of *The Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.*, Case No. 93-09-3326.

I. **Factual Background**

The environmental work for the JCL consisted of two separate and distinct phases: (1) an investigation of site conditions and an evaluation of feasible options for remediating those

1

conditions (the Remedial Investigation and Feasibility Study ("RI/FS") phase); and (2) the actual design and implementation of the remedy selected by the Ohio Environmental Protection Agency ("Ohio EPA") after the RI/FS was completed (the Remedial Design and Remedial Action ("RD/RA") phase). In this cost recovery action, Goodyear is *only* seeking to recover from Defendants their equitable share of past costs Goodyear has incurred in connection with the second phase: performing the RD/RA. As Goodyear has repeatedly explained throughout this case, there are no settlement agreements with Goodyear's insurers under which Goodyear received funds relevant to the costs to perform the RD/RA. Goodyear cannot produce documents that simply do not exist. Defendants have not provided any new information which would require the Court to reopen discovery. Defendants instead seek to revive an already resolved issue long after fact discovery closed.

      **A.**      **Initial Dispute and OSCO's Motion to Compel.**

On July 18, 2022, OSCO propounded its first set of written discovery requests to Goodyear which included a request for "all settlements Goodyear has entered into relating in any way to response costs Goodyear incurred, or will in the future incur, at the [JCL]" ("Document Request No. 5"). Because Document Request No. 5 was issued in *this* litigation (and subject to relevance objections), Goodyear understood the request to seek settlements Goodyear had entered into relating to response costs Goodyear seeks to recover in *this* litigation—specifically, those response costs incurred by Goodyear in connection with performing the RD/RA at the JCL pursuant to the December 19, 2016, Director's Final Findings and Order for Remedial Design and Remedial Action ("RD/RA DFFOs"). Ex. A, Bordenkircher Decl. at ¶ 5; Amended Complaint, ECF No. 51, at PAGEID 287–88. Based on its review of internal files and documents, Goodyear concluded that no such insurance recoveries existed. Ex. A, Bordenkircher Decl. at ¶ 5. Goodyear provided OSCO

with its written responses to Document Request No. 5 on September 7, 2022. Ex. B, Goodyear's Discovery Responses at pp. 26–27.

In a letter dated October 3, 2022, OSCO set forth a series of objections to Goodyear's discovery responses, including its response to Document Request No. 5. Ex. C, OSCO R37 Letter to Goodyear at pp. 11–12. Therein, OSCO indicated it was aware of Goodyear's prior separate litigation with certain insurance carriers to recover response costs at the JCL and numerous other sites, and that it understood "that Goodyear had resolved its claim for the JCL in an unspecified manner." *Id.* at p. 12. In response, Goodyear informed OSCO that it had not received insurance recoveries related to JCL remediation costs for which Goodyer sought contribution. ECF No. 166-2 at PAGEID 9135.

On January 4, 2023, without responding to Goodyear's offer to further discuss the nature and basis of Goodyear's objections to Document Request No. 5, OSCO moved the Court to compel the production of Goodyear's prior settlements with its insurers. ECF No. 165; ECF No. 171-1 at PAGEID 9167. Prior to filing its Response to OSCO's Motion to Compel (ECF No. 166), counsel for Goodyear attempted one last time to resolve the underlying dispute with OSCO without having to involve the Court. ECF No. 171-1 at PAGEID 9167. On January 19, 2023, more than a month in advance of the fact discovery deadline, OSCO's counsel informed Goodyear that OSCO and the other defendants were not agreeable to Goodyear's proposed compromise of providing the total cumulative amount of settlements it has received in connection with the costs at issue in this case. ECF No. 171-1 at PAGEID 9166. In the same correspondence, OSCO's counsel reiterated that Defendants were aware of Goodyear's prior litigation and settlements with its insurers and stated that "it is undisputed that GY filed suit to recover costs for the JCL along with close to 100 other sites, and that it entered into some type of settlement and received money from at least some of

the carriers." *Id.* Based on this information, Goodyear re-reviewed its internal files and documents—including those from prior litigation between Goodyear and its insurer in the matter of *Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.*, Case No. 93-09-3226—and confirmed for a second time that Goodyear has not received any insurance recoveries related to JCL remediation costs, for which contribution was being sought in this litigation. Ex. A, Bordenkircher Decl. at ¶¶ 6–12.

Goodyear filed its Response to OSCO's Motion to Compel on January 25, 2023, stating in part that Goodyear had explained to OSCO that it was unaware of any insurance recovery salient to the JCL remediation work for which Goodyear seeks contribution from the PRP Defendants and therefore had no relevant information to provide OSCO regarding insurance recoveries related to past costs at issue in the present litigation. ECF No. 166 at PAGEID 9115. To alleviate any questions the Court may have had about Goodyear's insurance settlement recoveries possibly applying to Goodyear's JCL RD/RA costs or otherwise exceeding Goodyear's "fair share" or constituting a "double-recovery" of RD/RA costs sought in this case, Goodyear offered to produce copies of the relevant insurance settlements and related documentation for *in camera* review. ECF No. 166 at 9123–24. Goodyear also offered OSCO the opportunity "to clarify any remaining questions OSCO might have in regard to historic insurance recoveries [during] Goodyear's upcoming [30(b)(6)] deposition."[1] *Id* at 9124. On Reply, OSCO reiterated its contention that Defendants were entitled to information pertaining to *any* insurance recoveries made by Goodyear for JCL-related response costs (together with the underlying settlement agreements), implying this "right" extended to Goodyear's recovery of insurance proceeds for past costs *not* at issue in the

---

[1] Defendants ultimately chose not to notice for deposition the topic of Goodyear's prior insurance settlements and related recoveries for deposition. *See* Ex. D, Defendants' Joint Notice to Goodyear of 30(b)(6) Deposition.

4

present litigation. In accordance with the Court's prior Order (ECF No. 156), fact discovery in this case closed on February 18, 2023. While Defendants had access to a list of the insurers named as defendants in Goodyear's prior insurance litigation matter, they chose not to issue any subpoenas for any of the underlying insurance settlements or related documents prior to the close of fact discovery. ECF No. 165-1.

In an order dated August 11, 2023, the Court denied the relevant portion of OSCO's motion to compel after concluding from the record that Goodyear had satisfied its discovery obligations on the issue. ECF No. 200 at PAGEID 11536–37. OSCO did not move to seek reconsideration of the Court's decision on the matter.

**B.      Defendants' Subsequent Discovery Request.**

On February 13, 2024, roughly two weeks after the parties had completed their respective summary judgment briefings and almost exactly one year after the close of fact discovery, Defendants e-mailed counsel for Goodyear out of the blue, threatening to request a Rule 37 conference with the Court unless Goodyear immediately agree to produce "a copy of all documents addressing payment by carriers of response costs incurred at the JCL." Ex. E, Defs. Feb. 13, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at pp. 10–11. Defendants indicated the reason for renewing their demand was that they had purportedly discovered "new information" about Goodyear's prior settlements with certain insurers. *Id* at 10*;* Ex. E, Defs. Feb. 20, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at pp. 8–9; Ex. E, Defs. Feb. 28, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at pp. 6–7. Specifically, Defendants stated they learned "by shear [sic] happenstance" that "a global settlement was reached between Goodyear and numerous carriers involving numerous sites[,]" "the settlement covered all sites for which goodyear sought coverage in [its] amended

complaint[,]" and "because Goodyear included the JCL in the amended complaint, it must have been covered by the global settlement." Ex. E, Defs. Feb. 13, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at p.10; Ex. E, Defs. Feb. 28, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at pp. 6–7 .

In accordance with Defendants' request, Goodyear for a third time conducted a thorough review of its internal files and records pertaining to insurance recoveries (including those records from its prior litigation between Goodyear and its insurers in the matter of *Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.*) in an effort to locate any information pertaining to potential recoveries related to the JCL Site. Consistent with its prior file reviews, Goodyear did not identify any insurance recovery salient to the JCL remediation work for which Goodyear seeks contribution from Defendants. Goodyear then again informed Defendants of its findings, and tried explaining that the only insurance recoveries Goodyear had received in connection with its prior litigation were for a portion of the response costs Goodyear anticipated incurring in connection with performing the remedial investigation at the JCL Site. Ex. E, Pltfs. Feb. 27, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at p. 7. Goodyear again reminded Defendants that it was *only* seeking to recover Defendants' equitable share of response costs Goodyear incurred in connection with performing the RD/RA at the JCL, which are separate and distinct from its costs to perform the RI/FS. *Id.* Lastly, Goodyear pointed out that what Defendants claimed to be "new information" regarding Goodyear's prior litigation and settlements with its insurers had in fact been known to Defendants well in advance of the February 2023 fact discovery deadline. *Id.*

Following further exchanges between the parties and in an effort to avoid burdening the Court with the issue, as a compromise, Goodyear offered to provide Defendants with a sworn

declaration explaining why the insurance recoveries that it had obtained as a result of settlements with its insurers were not relevant to the costs at issue in the present case. Ex. E, Pltfs. Feb. 29, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at p. 5. Goodyear subsequently provided Defendants with a declaration dated March 4, 2024, from Mr. Steven Bordenkircher, Goodyear's Senior Legal Counsel for Environmental and Sustainability. Ex. A, Bordenkircher Decl. Mr. Bordenkircher did not work on the prior insurance litigation, having begun his employment with Goodyear in January 2005, and in his declaration, Mr. Bordenkircher described, among other things, (1) how he interpreted and responded to Document Request No. 5; (2) his review of Goodyear's internal documents and records pertaining to prior confidential insurance settlements and related recoveries; and (3) his basis for concluding that none of Goodyear's insurance recoveries pertain to any of the costs at issue in the present litigation. *Id*. Despite Goodyear's sworn assurances that none of the settlements or related insurance recoveries were relevant to the costs at issue in the present litigation, Defendants refused to withdraw their demand that Goodyear immediately produce all of its prior insurance settlements. Ex. E, Defs. Mar. 8, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at pp. 3–4. Goodyear declined to do so, and thereafter Defendants contacted the Court to request a Rule 37 conference. Ex. F, Defs. Mar. 12, 2024, e-mail re: Rule 37 Request for Conference.

      C.    **Goodyear's Prior Insurance Litigation.**

Through Goodyear's repeated file reviews, Goodyear has confirmed that from approximately 1993 to 2005, Goodyear was engaged in litigation with a number of its insurers regarding Goodyear's coverage under potentially hundreds of comprehensive general liability and other insurance policies. *See generally, Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.*, Case No. 93-09-3226. The litigation ultimately resulted in Goodyear entering into at least 10

separate settlement agreements between 1997 and 2005 with approximately 40 insurer parties. Each settlement involved a different set of claims based on specific policy coverage, including environmental property remediation claims related to over 350 sites as well as numerous other types of claims entirely unrelated to environmental property remediation. Some or all of the settlement agreements contain confidentiality provisions that, in some cases, affirmatively obligate Goodyear to defend against efforts to compel production of the settlements themselves and underlying negotiation materials.

With respect to the environmental property remediation claims involved in the litigation, beginning in the mid-1990s, Goodyear and its in-house and outside counsel developed a single, master calculation spreadsheet of past costs incurred and estimable future costs for environmental remediation sites, including the JCL, which Goodyear used and communicated to the insurers throughout the negotiations and settlements. Goodyear's "demand" amount for each environmental remediation site reflected in the spreadsheet represented the maximum estimate of potential exposure to liability that Goodyear could make for each individual site at that point in time. This document was periodically updated as new information became available.

For JCL specifically, prior to 1998, the settlement spreadsheet used in negotiations with the insurers reflected zero amounts for JCL because Goodyear had not yet offered, agreed, or been ordered to perform any action with respect to the JCL. After Goodyear extended an offer in August 1998 to Ohio EPA to perform a portion of the preliminary investigation at the JCL, Goodyear revised the spreadsheet to include demand amounts consistent with Goodyear's estimated cost to complete that portion of the investigation work, which, at the time it was negotiating the settlements between 1998 and 2005, was all Goodyear could estimate under generally accepted accounting principles. While confidentiality provisions in some or all of the underlying settlements

preclude Goodyear from divulging the exact amount of its corporate estimate for performing that work, Goodyear confirmed and represents that amount was, at all times relevant to the settlement negotiations, in the range of approximately $300,000.

Goodyear maintained its offer to Ohio EPA to perform only a portion of the preliminary investigation at the JCL throughout the period it negotiated and settled with the insurers, and following subsequent negotiations with the agency, Goodyear entered into Directors Final Findings and Orders with Ohio EPA in August 2005 to perform *only* the RI/FS for the JCL ("RI/FS DFFOs"). Notwithstanding the fact that Goodyear was limited in 1998–2005 to estimating only approximately $300,000 in future investigation costs for purposes of establishing its insurance demand related to JCL, Goodyear represents that it incurred more than $1 million in connection with performing the RI/FS. None of those RI/FS-related costs are at issue in the present litigation or otherwise sought from Defendants. ECF No. 51 at PAGEID 287–88.

## II.    Standard of Review

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order may be modified to reopen discovery only for good cause and with the judge's consent. Fed. R. Civ. P. 16(b)(4) While trial courts generally retain broad discretion to decide whether to reopen discovery, additional factors which prior courts in the Sixth Circuit have typically considered include: (1) whether the need for additional discovery was due to the movant's neglect; (2) the relevance of the discovery being sought; and (3) whether there exist other persuasive reasons (such as prejudice to the non-moving party) not to reopen discovery." *Brock v. Harrison*, 2015 WL 6561723, at *1 (S.D. Ohio Oct. 20, 2015 (*citing Morgan v. Gandalf, Ltd.*, 165 Fed.Appx. 425, 431 (6th Cir. 2006)); *U.S. Diamond & Gold v. Julius Klein Diamonds LLC*, 2008 WL 2977891, at *11 (S.D. Ohio July 29, 2008) (*citing Gandalf, Ltd.*, 165 Fed.Appx. at 431). In evaluating the relevant factors, the Sixth

Circuit has emphasized that "the overarching inquiry…is whether the moving party was diligent" while discovery was ongoing. *Marie v. American Red Cross*, 771 F.3d 344, 366 (6th Cir. 2014). Furthermore, "[t]he party seeking to reopen discovery must indicate to the court the need for more discovery, what material facts it hopes to uncover and why it has not previously discovered the information." *Julius Klein Diamonds LLC*, 2008 WL 2977891, at *11

### III. Argument

#### A. Nothing Has Changed to Warrant the Court Revisiting its Prior Order.

Pursuant to prior order of this Court, fact discovery in this case ended over a year ago, on February 18, 2023[2]. ECF No. 156 at PAGEID 8857. In raising this purported discovery dispute with the Court more than a year after the close of fact discovery, Defendants are effectively seeking to reopen discovery into Goodyear's prior litigation with its insurers and resulting settlements on the misguided belief that Goodyear had already recovered some or all of the past costs, for which it now seeks contribution from Defendants. For the better part of the past two years, Goodyear has repeatedly explained to Defendants through extensive correspondence, declarations, and court filings that Goodyear has not entered into any settlement agreements with its insurers or otherwise received any insurance recovery for the response costs it seeks to recover in this case. Nothing has changed since fact discovery closed and the Court issued its Order denying in relevant part OSCO's motion to compel (ECF No. 200) with respect to the facts and circumstances concerning Goodyear's prior insurance settlements. Defendants fail to identify *any* new facts or circumstances regarding Goodyear's prior litigation with its insurers or the resulting settlements that were not otherwise known to them during fact discovery. Ex. E, Pltfs. Feb. 27, 2024, e-mail re: Defendants'

---

[2] The only minor exception to this deadline was the Court's granting OSCO a two-week extension to complete additional discovery in connection with two declarations served by Goodyear on January 24, 2023 and January 25, 2023.

Rule 37.1 Request for Meet/Confer Conference at p. 7; Ex. C, OSCO R37 Letter to Goodyear at p. 12; ECF No. 171-1 at PAGEID 9166. As such, Defendants have no legitimate basis to raise this issue now, more than a year after discovery has closed, and should not have bothered the Court with their meritless fishing expedition.

### B. Defendants Lack the Requisite Good Cause to Justify a Request to Reopen Discovery.

Because Defendants have not learned of any "new information" since the close of fact discovery, Defendants cannot demonstrate the requisite good cause exists for the Court to entertain any request to reopen discovery. Fed. R. Civ. P. 16(b)(4); *Julius Klein Diamonds LLC*, 2008 WL 2977891, at *11. Indeed, as evidenced in correspondence dating back to several months in advance of the close of fact discovery, Defendants were aware that Goodyear had previously settled with at least some of its insurers for certain claims related to the JCL. Ex. C, OSCO R37 Letter to Goodyear at p. 12; ECF No. 171-1 at PAGEID 9166. Thus, it is patently false for Defendants to characterize this same information as "new information" in recent correspondence with Goodyear's counsel. Ex. E, Defs. Feb. 13, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at pp. 10–11; Ex. E, Defs. Feb. 20, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at pp. 8–9; Ex. E, Defs. Feb. 28, 2024, e-mail re: Defendants' Rule 37.1 Request for Meet/Confer Conference at pp. 6–7.

All other relevant factors similarly weigh against granting any request to reopen fact discovery on the issue. *Julius Klein Diamonds LLC*, 2008 WL 2977891, at *11. Nothing prevented Defendants from issuing subpoenas to Goodyear's insurers for the same information. Defendants admit they knew months in advance of the discovery deadline: (1) that the insurance litigation involved claims for recovery of response costs at the JCL and numerous other sites; (2) the identities of the majority of insurers named as defendants in the litigation; and (3) that Goodyear

had settled its claims with at least some of the insurers named as defendants. Ex. C, OSCO R37 Letter to Goodyear at p. 12; ECF No. 171-1 at PAGEID 9166. Goodyear also understands Defendant Reynolds's counsel, Mr. DeGulis, represented one or more of the defendant-insurers in the prior litigation with Goodyear, thus raising a reasonable conclusion that Defendants were very aware of this same information even before October 2022. *See, e.g., Goodyear Tire & Rubber Company Aetna Casualty & Surety Company et al.*, 769 N.E.2d 835, 838 (Ohio 2002). Despite having this information, Defendants chose not to issue a single subpoena to any of Goodyear's insurers for information pertaining to the prior settlements, or to notice the topic of Goodyear's prior insurance settlements and related recoveries for Goodyear's 30(b)(6) deposition. Defendants should not be rewarded for their inaction by allowing them to reopen discovery more than a year after fact discovery closed.

Furthermore, none of the settlements resulted in insurance recoveries for any of the past costs at issue in this case, and thus there is <u>zero</u> relevancy to the discovery which Defendants are seeking. Ex. A, Bordenkircher Decl. at ¶¶ 11–14.

Lastly, reopening discovery into the matter would be prejudicial to Goodyear for numerous reasons. One or more confidential settlements contain provisions requiring Goodyear to affirmatively oppose efforts to compel production, which would create a need for Goodyear to seek an order from the Court not just protecting the confidentiality of the agreements but also instructing Goodyear to redact all content related to claims or provisions that are unrelated to the JCL, unfairly tasking Goodyear with incurring additional time and expense to do so (particularly given the clear lack of relevancy of the settlement agreements as described herein). Goodyear would also be prejudiced by the further delay to this case should discovery be reopened. The parties have fully briefed all *Daubert* and dispositive motions in this matter and are awaiting the Court's

rulings. Even a limited reopening of fact discovery would invariably lead to further delay of this process.

In sum, Defendants lack any justifiable basis to claim any new information has come to light which might otherwise warrant the Court entertaining a request to reopen fact discovery. This purported discovery dispute is one of Defendants' own creation and made in a poorly disguised attempt to re-raise an issue that already has been correctly settled.

### C. Goodyear's Prior Insurance Recoveries are not Relevant to Any Claims or Defenses at Issue in this Litigation and Goodyear was not Obligated to Produce Them.

Goodyear's prior insurance recoveries from 1998 through 2005 did not include *any* of the remediation costs at issue in this case. Because such recoveries were not relevant to any of the parties' claims or defenses, Goodyear had no obligation to produce them to Defendants during the fact discovery period. As this Court acknowledged in its August 2023 Order denying in part OSCO's motion to compel (ECF No. 200), "[t]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." ECF No. 200 at PAGEID 11531–32 (*quoting Gruenbaum v. Werner Enter., Inc.,* 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted)). If the movant does so, "[t]hen the burden shifts to the non-movant to show that to produce the information would be unduly burdensome." *Prado v. Thomas,* No. 3:16-CV-306, 2017 WL 5151377, at *1 (S.D. Ohio Oct. 19, 2017). "[T]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe v. Ohio State Univ.,* No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018) (emphasis in original) (citation omitted)). And when the information is "negligibly relevant [or] minimally important in resolving the issues" the standard is not met. *Id.*

As noted, when Goodyear negotiated the insurance settlements, the only potential activity Goodyear had offered to perform with respect to the JCL was a portion of the investigation of the

13

Site. This approach was, and still is, typical for remediation projects at sites across the country, where the full regulatory activity includes two very separate and distinct phases: (1) an investigation of site conditions and analysis of the feasibility of potential options for remediating those conditions (the RI/FS phase); and (2) the actual design and implementation of the remedy selected by Ohio EPA after the RI/FS is completed (the RD/RA phase). Goodyear ultimately conducted both phases for the JCL – the RI/FS and the RD/RA – under two separate and separately negotiated orders with Ohio EPA entered in August 2005 and December 2016, respectively. However, Goodyear is seeking *only* to recover from Defendants past costs incurred in connection with performing the second phase – the RD/RA beginning in 2017; Goodyear is not seeking to recover *any* of its past costs from the earlier investigation-related work.

As Defendants have previously acknowledged, it is standard practice for insurance carriers to require a policyholder to provide an estimate of past and future response costs at a site before agreeing to pay a settlement amount in exchange for a release of relevant claims. *See* Ex. E, Defs. Feb. 28, 2024, e-mail re Recovery by Goodyear of JCL Response Costs from Insurance Carriers at p. 6. Indeed, Goodyear *did* provide its insurers with the only estimable future costs at the JCL Goodyear could reasonably estimate at the time, and did so in accordance with well-established accounting principles: Goodyear provided to the insurers the anticipated costs of the portion of the remedial investigation for JCL that Goodyear had offered to perform. Goodyear's review (several times) of confidential settlement discussion documents in the prior insurance litigation confirmed that Goodyear's demands to the insurers mirrored what Goodyear could reasonably estimate using those generally accepted accounting principles. As noted, while confidentiality provisions in the insurance settlements preclude Goodyear from divulging the exact amount that it had estimated its future RI/FS costs to be in negotiations with its insurers, Goodyear confirmed and represents that

amount remained approximately $300,000 throughout the negotiations during the period of 1998–2005. Again, any amount of insurance recovery Goodyear *did* receive related to that appx. $300,000 demand for future investigation costs proved to be far less than what Goodyear actually incurred to perform the investigation work required under the 2005 RI/FS DFFOs.

The fact that Goodyear entered into the settlement agreements more than a decade before Goodyear even began negotiating orders with Ohio EPA to perform the RD/RA work at the JCL further supports the fact that Goodyear did not include any RD/RA costs in its estimate of future JCL costs or its demands to its insurers, and that Goodyear received no insurance proceeds related to that work. Simply put, Goodyear has not entered into any settlement agreement with insurers or otherwise received any insurance recovery for the response costs it seeks to recover in this case.

Because the settlement agreements are entirely unrelated to the costs at issue in this litigation, they are not relevant to any claim or defense in this case and Goodyear was under no obligation to produce them to Defendants. Defendants' arguments that the settlement agreements are relevant to the equitable allocation of costs and CERCLA's ban against double recovery entirely ignore this critical fact. Similarly, the settlements and related insurance recoveries have absolutely zero relevance to or bearing on any of the arguments set forth in the parties' summary judgment and *Daubert* briefs given that they pertain to an entirely separate "bucket" of past costs from those which are at issue in this case. Nonetheless, Goodyear has made exceptional efforts in its attempts to alleviate any concerns that Goodyear's settlement recoveries possibly exceeded its "fair share" or otherwise constitute a "double-recovery," including by providing Defendants with sworn declarations and offering the opportunity for Defendants to clarify any remaining questions on the topic during Goodyear's 30(b)(6) deposition[3]. ECF No. 166 at PAGEID 9124; Ex. A,

---

[3] Again, Defendants chose not to notice for deposition the topic of Goodyear's prior insurance settlements and related recoveries. *See* Ex. D, Defendants' Joint Notice to Goodyear of 30(b)(6) Deposition.

Bordenkircher Decl. Defendants have refused Goodyear's offers at every step along the way, continuing to demand confidential settlement agreements that are in no way relevant to this case.

### IV. Conclusion

As was the case at the time this Court entered its prior Order denying Defendants motion to compel on this issue (ECF No. 200), Goodyear remains unaware of any insurance recovery relevant or salient to the JCL remediation work for which Goodyear seeks contribution from the PRP Defendants. While Goodyear may have previously settled with its insurers for certain costs related to its performance of the JCL RI/FS, Goodyear did not demand or receive any amounts related to the JCL RD/RA, and none of those JCL RI/FS costs are at issue in this litigation or are otherwise relevant to any of the parties' claims or defenses therein. Goodyear was therefore not obligated to produce any of the underlying settlements or documents in response to Defendants' discovery requests. For the foregoing reasons, Defendants cannot articulate any cognizable reason why the Court should consider revisiting its prior Order (ECF No. 200) or otherwise reopen discovery into the matter, and therefore Goodyear respectfully requests this Court to reject any request from Defendants to do so. Goodyear further requests that the Court award Goodyear's reasonable fees and expenses that it was forced to incur to defend against Defendants' meritless fishing expedition, along with any additional equitable relief the Court deems just and reasonable under the circumstances.

Dated: April 1, 2024	Respectfully submitted,

*/s/ William J. Hubbard*
William J. Hubbard (0077033)
Trial Attorney
THOMPSON HINE LLP
3900 Key Center
Cleveland, Ohio 44114
216-566-5644
Bill.Hubbard@thompsonhine.com

Jeffrey A. Thaler (admitted *pro hac vice*)
PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207-791-3213
jthaler@preti.com

ATTORNEYS FOR PLAINTIFF THE
GOODYEAR TIRE & RUBBER COMPANY

21693730.1

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2024, a copy of the foregoing Memorandum in Opposition to Defendants' Request for Additional Discovery was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's Electronic Case Filing System.

                                                          */s/ William J. Hubbard*
                                                         William J. Hubbard

21693730.1