# Exhibit C



Stephen N. Haughey, Member
Environmental Practice Group
301 E. Fourth Street, Suite 3300
Cincinnati, OH 45202
(513) 651-6127
shaughey@fbtlaw.com

October 3, 2022

**Via Email**

Jeffrey D. Talbert
James W. Beers, Jr.
Katherine L. Oaks
PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546

Rachael D. Guthrie
Matthew T. Merryman
Ambereen K. Shaffie
THE JUSTIS LAW FIRM LLC
10955 Lowell Ave.
Suite 520
Overland Park, KS 66210-2336

Re: *Goodyear Tire and Rubber Co. v. Conagra Food, Inc. et al.*, Case No. 2:20-cv-06347-JLG-EPD, S. Dist. OH - OSCO Industries, Inc.'s Local Rule 37.1 Objections to Goodyear's Responses to OSCO's First Set of Interrogatories, Requests for Admission, and Requests for Production of Documents, and Request to "Meet and Confer" Regarding the Adequacy of the Responses

Dear Counsel:

We reviewed Goodyear's ("GY") responses to OSCO's first set of written discovery requests. We appreciate GY's prompt response to the requests and the efforts made in order to stay within the extension that GY requested and OSCO agreed to. Unfortunately, upon reviewing GY's responses and comparing them to its responses to discovery requests previously submitted by other Defendants, nothing appears to have changed in terms of the scope of GY's response to requests seeking specific information, despite the June 27, 2022, "Meet and Confer" Teams call held amongst all counsel. In that call, defense counsel objected to GY not providing specific information in responses to discovery requests under Rules 33 and 34, and instead repeating over and over again a blanket response, to the effect that, responsive information/documents may be found in GY's disclosures, and the burden of finding the responsive information in those documents is the same for GY as for Defendants. (hereinafter "GY's blanket response")

Despite (1) the discussion during the call about Rule 33(d)'s requirement to "specify in sufficient detail" the location of documents wherein responsive information can "readily" be found, and (2) what we thought was an acknowledgement that Rule 33(d) did not allow GY to simply tell Defendants to review over 10,000 pages of documents without providing more

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 2

specificity,[1] GY's responses to OSCO's requests provide this blanket response again and again. Only this time the response is far more objectionable because of GY's July 6 supplement to its Rule 26(a) initial disclosures, which has added more than 200,000 pages to GY's 2021 initial disclosures, which was only approximated 10,000 pages.[2]

While OSCO has additional objections to responses by GY to specific requests, the objection to GY's blanket response permeates GY's responses to discovery requests submitted all Defendants. In our view, it reflects a fundamental misunderstanding of the limited role of Rule 26(a) initial disclosures, and a failure by GY to fulfill its obligations under Rules 33 and 34 once the discovery process began in this case.

With respect to GY's initial disclosures, the purpose thereof is only to promote settlement at the outset of a case and facilitate more efficient discovery to follow, not to limit or somehow supplant the parties' obligations under Civil Rules 33-36. *See e.g.* 146 FRD 401 at 627-628 (Advisory Committee Notes). Under Rule 26(e)(1)(A), supplementation of a party's initial disclosures is required only when it learns that its initial disclosures were incomplete or incorrect. However, a party obtaining documents in response to a public records request submitted after initial disclosures are served and discovery has begun does not somehow make that party's initial disclosures incomplete or inaccurate. Instead, once written discovery begins under Rules 33-36, a party obtaining additional documents from any source that are responsive to discovery requests submitted under these Rules triggers a duty under Rule 26(e)(1)(A) to supplement or amend the party's discovery responses, not a duty to file a supplement to the party's initial disclosures.

Perhaps more importantly, the limited obligation to supplement initial disclosures later found to be incomplete or incorrect does not somehow supplant GY's independent obligation to respond to specific discovery requests from Defendants under Rules 33-36. It is a well-settled principle of statutory construction that the specific provisions under Rules 33-36 prevail over the general provisions in set forth in Rule 26(a). It is also well-settled that the latter, which did not exist as part of the Civil Rules until 1993, does not trump the former, which have existed for many more decades, absent express language indicating such intent, and also that the two must be harmonized to give full effect to both where possible. Under these principles, GY must respond to discovery requests submitted under Rules 33-36 in compliance with the requirements set forth therein.

Once Defendants initiated discovery under Rules 33-36, GY may not limit its obligations thereunder by serving additional files of documents on Defendants in the form of "supplemental" disclosures, coupled with the repeated use of a blanket response that "somewhere in the initial or

---

[1] Our notes from the call reflect an agreement by GY to provide amended responses with more specificity by the end of July. For unknown reasons, this date passed without amended responses being served, and now GY's counsel indicates that they need until sometime in mid-October to compete this task, despite the impending fact discovery deadline in mid-November.

[2] Based on a recent email from GY's counsel, the bates-labeling for this production reflects far more than the 65,000 or so pages initially thought - as much as 225,000 or more pages - all coming from an OEPA public record request response that GY served on Defendants on July 6 without so much as a cursory review to remove documents irrelevant to the issue of waste disposal at the JCL or duplicates of documents already provided in GY's initial disclosures.

supplemental disclosures the responsive information Defendants seek may be found, and the burden is the the same for GY and Defendants to locate the responsive information." Nowhere in Rule 26(a) is there language indicating that the initial disclosure process was meant to be used in this manner.

The situation created by GY's "supplemental" disclosure is even worse because it is the product of a public records request to OEPA for which GY simply transferred wholesale the voluminous documents it received without first removing documents irrelevant to the issue of waste disposal at the JCL, and duplicates of GY's initial disclosures. In a letter dated July 18, 2022, from counsel for RJ Reynolds, acting on behalf of all Defendants, they objected to this type of production and, among other things, requested that GY undertake the required relevance/duplication review and resend the documents that remained after completing the review. So far GY has refused to undertake this review. It is inconceivable that the Magistrate would not order GY to perform this review if the issue must be presented to her for resolution.

In addition to what we believe is a misapplication of Rule 26(e)'s limited supplemental disclosure obligation, GY's responses do not meet the substantive requirements of Rules 33 and 34. First, under Rule 33(d) GY cannot respond to OSCO's interrogatories with a blanket response to see the disclosures unless GY has determined that the responsive information being sought is in fact in those documents. Yet GY's blanket response repeatedly states that responsive information may be, or at most, is potentially likely to be, found in the documents. *If GY does not know for certain whether responsive information is in its disclosures, it must answer the applicable interrogatory or, if the request is for documents, produce the specific documents.*

Second, under Rule 33(d), GY cannot respond to OSCO's interrogatories with the blanket response unless the burden to derive the responsive information from the initial and supplemental disclosures is the same for both parties. While the burden may arguably be the same for counsel, the only relevant burden is between GY and OSCO. For example, OSCO asked GY to identify the persons responsible for each of the steps associated with generation, storage, packaging, transportation, and disposal of wastes generated at GY's former Jackson, OH plant during a specified time period. The answer thereto is far less burdensome for GY than for OSCO, for the simple reason that GY owned the plant, and it already identified a list of current/former employees who worked there. OSCO's burden is also much greater because it is being directed to search through 200,000+ pages of documents for this information, when none of the titles in the index provided by GY refer with any specificity to, for example, production processes at GY's plant; a list of employees and their job responsibilities or titles; or waste disposal records from the plant, files that might contain the information OSCO seeks. On the other hand, GY can simply talk to current/former employees to find this information and provide a summary in response to the interrogatory.

Third, even when these two requirements of Rule 33 are met, under Rule 33(d)(1) GY must also specify where the responsive information can be found in the documents with sufficient detail to enable OSCO to locate the information as readily as GY. In this case, GY provided no specificity, just directing OSCO to review voluminous documents that comprise GY's initial and supplemental disclosures. Again, it is only the relative burden of GY and OSCO that is relevant

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 4

to how "readily" responsive information can be located in the documents. For obvious reasons, GY can far more readily pinpoint the responsive documents than OSCO.

Even when OSCO submitted interrogatories seeking specific information based off our review of GY's initial/supplemental disclosures, GY provided the same blanket response. For example, GY identified a list of former/current employees who "may have discoverable information" about GY's claims without identifying the nature of the information. Yet when OSCO asked GY to specify the nature of the information, GY provided its blanket response. The same response was provided when OSCO asked GY to identity the specific role in the remediation played by each of GY's extended list of contractors, which are identified in GY's index as only being involved in an undisclosed manner.

Because this overarching objection applies to many of GY's discovery responses, for the sake of brevity, it will be incorporated below, where applicable, by simply adding a statement that OSCO objects to the blanket response as not meeting GY's obligations under Rules 33 or 34.

### GY's Objections to OSCO's Definitions and Instructions

With respect to OSCO's definitions, there is no provision in the Civil Rules giving GY the authority to arbitrarily limit the scope thereof. For example, OSCO defined the term "identify" with respect to a responsive person as providing, *if known*, their name, last known home or business address and email, and home or cell phone number. Yet GY objected, stating that the definition is overly broad and burdensome. It objected on the same grounds to OSCO's definition of "identify" with respect to a responsive document, the definition of "communication," and the definition of "knowledge." In each case, GY stated that it would interpret the term as it saw fit, using an unspecified generic interpretation entirely of its own accord. While these definitions are admittedly broad, they are precise and clear, and not overly burdensome, and are consistent with the scope of definitions of similar terms used in discovery requests submitted by all parties in this case, *including* GY. For this reason, OSCO objects to GY's response, and requests that GY amend its responses to match the scope of OSCO's defined terms.

With respect to OSCO's instructions, of most importance is its request that, if GY's responded to a document request by stating that no responsive documents exist, GY provide additional information if the documents existed at one time, but were lost, destroyed, or transferred to a new owner of the Jackson, OH plant, which transaction the Defendants know occurred in 1997. GY cannot avoid providing this information by objecting to OSCO's instructions. This instruction is particularly important because GY's initial and supplemental disclosures are limited to: (1) documents obtained from the files of OEPA via public record requests;[3] (2) a few documents provided by GY's former law firms (Squire and Thompson Hine);[4] and documentation of GY's

---

[3] As proof of this fact, GY's Exhibit A files produced as part of GY's initial disclosures are the same documents that Defendants obtained from a separate public records request submitted by Defendants to OEPA. And all of GY's supplemental disclosures to Defendants came from a separate public records request submitted to OEPA.

[4] The Thompson Hine bates-labeled documents appear to be only the product of the firm's public records request submitted to OEPA on behalf of GY, onto which GY added a second set of bates labeling before producing the documents as GY's initial disclosure.

3300 Great American Tower | 301 East Fourth Street | Cincinnati, OH 45202-4182 | 513.651.6800 | **frostbrowntodd.com**
Offices in Indiana, Kentucky, Michigan, Ohio, Pennsylvania, Tennessee, Texas, Virginia, Washington, DC and West Virginia

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 5

response costs,[5] without any production of records coming directly from the files of GY's former plant in Jackson, OH.

Nowhere in GY's disclosures have we been able to find, for example, production/manufacturing information from GY's former Jackson, OH plant relating to waste generation; documents from the plant discussing waste handling, storage, transportation, disposal, etc.; correspondence between the plant and operators/owners of the JCL, or between the plant and haulers transporting wastes from GY's plant to the JCL; invoices, purchase orders, or payments for waste disposal from the plant; testing results for any analysis of wastes, or discussions about content/makeup of wastes generated at the plant; and the like. Such documents must have existed at one time, at least to some degree, in the plant's files in Jackson, OH.

In addition, the disclosures contain a few letters sent by GY's previous law firms to OEPA's counsel addressing the alleged liability of OSCO and the other Defendants, and a spattering of emails sent in response from OEPA's counsel, but clearly not all correspondence from GY's prior law firms to OEPA has been produced. Bates-labeling at the bottom of GY's initial disclosures indicates that Thompson Hine delivered upwards of 9,000 or more pages of bates-labeled documents to GY (presumably the law firm's entire file relating to the JCL), most likely delivered on or about the time it was determined that another law firm would file GY's contribution claim. Yet only a few hundred or so pages are produced in the disclosures. Unless all but a handful of those 9,000+ pages are privileged attorney-client communications or attorney work product, they should have been disclosed to Defendants as part of GY's initial disclosures, if they relate in any way to the JCL. OSCO is not requesting that produce a privilege log at this time, but is requesting that GY review the file it received from Thompson Hine, and produce all additional documents relating to the JCL that are not privileged. OSCO reserves to right to request a privilege log if GY does not respond to this request in good faith.

Because GY's position in this case has been that resolution of its claim (regardless whether in settlement or at trial) should be based on a simplistic *pro rata* volumetric allocation of all parties' wastes, with at most a minor adjustment based only on whether OEPA-listed constituents of concern were present (regardless of concentration), information relating to wastes generated at GY's former Jackson, OH plant is highly relevant to such allocation scheme, including volume, toxicity, chemical makeup, physical properties, etc., as well as the names of the plant's employees responsible in some manner for waste generation, handling, storage, transportation or disposal from the plant to the JCL.

Because waste-related documents from the files of GY's former Jackson, OH plant are relevant to GY's equitable contribution claim, they must be produced if they still exist. If by chance they were transferred to a new owner of the plant, GY must disclose that fact, so that Defendants can pursue Rule 45 discovery to obtain the documents. And if they were lost or destroyed, GY must explain the circumstances surrounding that event, including whether it occurred notwithstanding GY's obligation to put a litigation hold in place once it knew that it would pursue an equitable contribution claim under CERCLA against the Defendants.

---

[5] The Exhibit B file in GY's initial disclosures contains only its response cost information.

3300 Great American Tower | 301 East Fourth Street | Cincinnati, OH 45202-4182 | 513.651.6800 | frostbrowntodd.com
Offices in Indiana, Kentucky, Michigan, Ohio, Pennsylvania, Tennessee, Texas, Virginia, Washington, DC and West Virginia

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 6

## GY's Interrogatory Responses

**Interrogatory No. 1**: OSCO asked GY to identify all persons it contacted, or attempted to contact, to discuss alleged disposal of waste by OSCO at the JCL. GY's response identified only OEPA and a list of businesses known, or believed, to have hauled wastes to the JCL. Yet we know that GY also contacted Bruce Kingsland, Matt Lowe, and GY's former counsel at Squire and Thompson Hine, to discuss alleged waste disposal by OSCO at the JCL. We also find it difficult to believe that GY never contacted, or attempted to contact, the JCL's owner Mr. Fields, any of JCL's operators, or the Sexton family, whose property adjoined the JCL (where foundry sand from OSCO was staged), to discuss alleged disposal by OSCO. OSCO requests that GY amend this response to include all persons it contacted at any time to discuss alleged disposal by OSCO at the JCL.

**Interrogatory No. 2**: OSCO asked GY to identify all persons with knowledge of alleged waste disposal by OSCO at the JCL. Other than telling OSCO to see its own list of employees, GY's responded with its blanket response. For the reasons discussed above, OSCO objects to GY's blanket response and requests that it amend this response to meet the requirements of Rule 33.

**Interrogatory No. 3**: OSCO asked GY to identify all current/past employees of any hauler from whom GY (or anyone acting on GY's behalf) obtained a deposition, written statement, affidavit, or notes relating to their knowledge of waste disposal by OSCO at the JCL. GY's response identified only Bruce Kingsland's report, and then referred OSCO to review GY's 200,000+ pages of disclosures, coupled with an assertion that (1) responsive information can be found therein, (2) the disclosures are sufficiently detailed to find this information, and (3) the burden is the same for GY as for OSCO to find this information.

We reviewed GY's 135-page Index and found no label or category that could even be suspected as being some type of responsive document containing this information. If the Kingsland report is the only responsive document, GY must clarify so. Otherwise, for the reasons discussed above, OSCO objects to GY's blanket response, and requests that it amend this response to meet the requirements of Rule 33.

**Interrogatory No. 4**: OSCO requested that GY identify all public record requests submitted to federal, state and local agencies and governmental entities asking for records pertaining to the JCL; to state whether GY received any responsive records; and to state whether all records received from these requests have been produced to OSCO as part of GY's initial/supplemental disclosures. GY did not respond to this interrogatory, and misidentified it as OSCO's Request for Documents No. 4. OSCO requests that GY correct this response and respond to Interrogatory No. 4.

**Interrogatory No. 5**: OSCO asked GY if it placed a litigation hold on documents/ESI once GY knew that it would pursue an equitable contribution claim against Defendants relating to the JCL, and if so when such hold was put in place, and if not why no hold was put in place. GY

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 7

objected, asserting a privilege or, in the alternative, that the request is ambiguous, vague and overly burdensome. As to the latter, OSCO specifically defined what it meant by a "litigation hold," so there is nothing vague or ambiguous about the request. Nor is it overly burdensome, but requires a simple yes or no, a potential date, and an explanation if no litigation hold was put in place. As to the former, there is no privilege because litigants are required to put a litigation hold in place as soon as they know, or reasonably should know, that documents/ESI potentially relevant to the claims could be destroyed or lost, and there are potentially severe sanctions for destruction, spoilation, or loss of such information when no litigation hold is put in place. *See e.g. John B. v. Goetz*, 531 F.3d 448, 459 (6th Cir. 2008).

In this case, GY's Complaint asserts that it has incurred more than its equitable fair share of response costs for the JCL, and that Defendants are liable for contribution of their respective, equitable fair shares. Thus, documents/ESI in GY's possession, custody, or control include evidence of (1) what GY's equitable fair share is, (2) whether GY has incurred response costs beyond its equitable fair share, and (3) whether GY's response costs are incurred consistent with the NCP. For this reason, whether responsive documents may have been lost, destroyed, or transferred to a new owner of GY's former Jackson, OH plant, the answer to this interrogatory is not privileged and highly relevant. OSCO requests that GY amend its response to provide this information.

**Interrogatory Nos. 7 and 8**: OSCO asked GY to (1) identify the haulers who took wastes from its former Jackson, OH plant to the JCL, and (2) identify its employees who worked at that plant and were responsible for a list of specific activities associated with the generation and disposal of wastes from the plant to the JCL. GY responded with its blanket response, indicating that somewhere in its initial/supplemental disclosures responsive information may be found, and that an extensive list of names of employees may have responsive information.

After reviewing GY's 135-page Index, we found no labels or categories that would even likely contain responsive information, such as, for example, job titles and responsibilities; production processes; waste hauling records; internal waste handling procedures; correspondence files between GY and representatives for the JCL; purchase orders or invoices between GY and the JCL; and the like. With respect to the short list of names provided as part of the response to Interrogatory No. 8, GY did not identify what aspect(s) waste generation and/or disposal activities these people were involved with on behalf of the former Jackson, OH plant; whether any are even still alive; nor an address or phone number if known. For the reasons discussed above, GY's response does not meet the requirements of Rule 33, and OSCO requests that GY amend its response to provide specific information relating to the waste disposal history of GY's former Jackson, OH plant.

**Interrogatory No. 9**: OSCO asked GY to identify all persons who participated in the preparation, review, or approval of GY's June 4, 1984, written response to OEPA's information request letter and questions relating to potential disposal of wastes by GY at the JCL. GY's written response does not identify who helped to prepare the individual responses, who was consulted in order to find the responsive information, and who reviewed the response and approved it on behalf of plant management. Based on other documents OSCO has discovered (enclosed), GY's response

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 8

to OEPA's information request underreported the volume and types of wastes disposed of at the JCL, as well as the years in which wastes were sent to the JCL. OSCO is entitled to know the names of all employees of GY involved in the preparation of GY's written response.

**Interrogatory No. 11**: OSCO incorporates its objections herein as set forth above in response to GY's answer to Interrogatory No. 2.

**Interrogatory No. 12**: Enclosed documents indicate that GY disposed of bulk, uncontainerized wastes from its Jackson, OH plant at the JCL, including, but not limited to, shipments of scrap/off-spec polymerized polystyrene sheets. We have not found any documents in GY's disclosures addressing these shipments. These wastes are not accounted for in GY's written response to OEPA's written information request. As discussed above, because GY has so far approached this case using an overly simplistic allocation of response costs based on volume, adjusted only by the presence or absence of any of OEPA's extensive list of elements or compounds found in any medium at the site (regardless of concentration), OSCO is entitled to take discovery from GY of all wastes its sent to the JCL, not just the 5700+ drums it admitted to in its response to OEPA's information request. OSCO objects to GY's blanket response and requests that GY amend its response to meet the requirements of Rule 33.

**Interrogatory No. 13**: Enclosed documents indicate that GY disposed of drummed waste from its Jackson, OH plant at the JCL many years before, as well as many years after, the limited 6-year timeframe GY estimated in its written response to OEPA's information request. We have not found any documents in GY's disclosures addressing these shipments. These wastes are not accounted for in GY's written response to OEPA's written information request. Once again, due to GY view as to the proper allocation of response costs, OSCO is entitled to take discovery from GY of all drummed wastes its sent to the JCL, not just the 5700+ drums it admitted to in its response to OEPA's information request. OSCO objects to GY's blanket response and requests that GY amend its response to meet the requirements of Rule 33.

**Interrogatory No. 16**: OSCO asked GY to identify documents that constitute communications between GY and OEPA relating to OSCO. GY responded with its blanket response without providing any specificity where in the over 200,000 pages of disclosures this information can be found. In the disclosures we found a few emails sent by OEPA's representative to GY's representatives, produced by OEPA in a public records request response, but not a single email sent from GY's representatives to OEPA's representatives. Yet we know that two law firms (Squire followed by Thompson Hine) corresponded extensively with OEPA's counsel (Joe Koncelik first, followed by Ann Fischbein) about (1) why OSCO and the other Defendants were allegedly PRPs; (2) why OEPA should issue information request letters to OSCO and the other Defendants; and (3) why OEPA should demand that OSCO and the other Defendants sign the 2016 RD/RA order along with GY. *None of these communications are privileged.* If GY put a litigation hold in place, these communications should still be available. OSCO objects to GY's blanket response, and requests that GY amend its response to comply with Rule 33.

**Interrogatory No. 17**: OSCO asked GY to specify the nature of the discoverable information held by a list of names of current/former GY employees identified by GY in its

disclosures as potentially having such information. GY's disclosures do not specify what this information is, and a search of the documents using the list of names did not provide the answer. Therefore, GY must provide a summary of the potentially discoverable information these individuals hold, or otherwise remove their names from the list.

**Interrogatory Nos. 18 and 19**: OSCO asked GY to identify businesses and local governments for which GY requested OEPA to issue a formal information request as a PRP for the JCL, and the dates of each such request. After objecting to this request, GY responded in the alternative that there is no information responsive to the question. That is not true. At a minimum, the Squire law firm sent letters on GY's behalf to OEPA's counsel Joe Koncelik in 1998 or 1999, requesting that OEPA send information requests to a list of names; a GY employee (Win Colbert) sent the same or similar request in 2004 to OEPA's counsel Ann Fischbein; and the Thompson Hine firm send the same or similar request to Ann again in 2011, the latter insisting that OEPA require that entities identified by GY be required to sign the 2016 RD/RA order, and providing OEPA a binder of information on each of the list of names. *OSCO wants all correspondence relating to these submittals.*

**Interrogatory No. 20**: GY's index identified a list of perhaps 100 or more names of persons/contractors involved in an undisclosed manner in the implementation of the remedy at the JCL. OSCO asked GY to specify how these people/contractors were involved in the remedial activities, and GY provided its blanket response. OSCO objects to GY's blanket response, and requests that GY amend its response to comply with Rule 33.

**Interrogatory No. 21**: Enclosed documents show significantly larger volumes of drums and uncontainerized wastes sent by GY's former Jackson, OH plant to the JCL, than what GY estimated in its 1984 written response to OEPA's information request, extending many more years than the limited 6-year span indicated in GY's response. OSCO asked GY to provide specific information about these waste streams, and GY's response was only to direct OSCO to see GY's 1984 written response. OSCO requests that GY amend its response to provide this relevant information.

**Interrogatory No. 23**: OSCO asked GY to identify all correspondence between it and OEPA relating to constituents of concern (a defined term) listed by OEPA in its reports for the JCL. GY's response directs OSCO to see OEPA's reports that discuss constituents of concern at the site. GY's response did not answer OSCO's question. OSCO wants GY to identify the correspondence between it and OEPA discussing constituents of concern. GY's current litigation position reflects its mistaken belief that OEPA's expansive list of constituents of concern are the drivers behind the remedy chosen by the Agency. Thus, what GY stated to OEPA, and vice versa, relating to constituents of concern is relevant evidence. OSCO objects to GY's response, and requests that it amend its response to provide this information, or identify the documents in its disclosures where this information can be found in compliance with Rule 33.

**Interrogatory No. 26**: As noted above, GY's index lists upwards of 100 or more persons /contractors involved in an undisclosed manner in the implementation of the remedy at the JCL, including perhaps as many as 25-30 different companies. Because GY many not recover under

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 10

CERCLA response costs incurred inconsistent with the NCP, the extraordinarily large number of listed persons and companies raises the issue of potentially nonrecoverable duplicative, wasteful, or otherwise unnecessary costs. For this reason, OSCO asked GY to identify any of the listed people, companies, or contractors for which GY fired or replaced them with another company, or disputed invoices therefrom for any reason. GY's response objected to OSCO's question because the number of interrogatories served by OSCO exceeded 25, including subparts.

OSCO objects to GY's response. OSCO specifically asked in its discovery requests that GY answer all interrogatories exceeding 25, including subparts, with an explanation for the request and a *quid pro quo* offer that if GY propounded same, OSCO would answer the additional interrogatories. GY's response reflects its knowledge that the default limit of 25 in Rule 33 includes subparts. Yet GY answered all of OSCO's first 25 interrogatories, despite the fact that many, if not most, included multiple subparts. GY cannot have it both ways. Once it agreed to answer OSCO's additional interrogatories, it cannot arbitrarily reverse position, and object to answering the remaining interrogatories. OSCO requests that GY answer Interrogatory No. 26.

**Interrogatory No. 27**: OSCO asked GY to identify the fact witnesses it intends to call at trial to support its claims against OSCO. GY's response was a combination of its objection to the number of interrogatories, and the assertion that it is not required to provide this information until a deadline to do so is set by the Court in a CMO. With respect to GY's first objection, OSCO incorporates its objection above relating to the number of interrogatories, including subparts, and requests that GY answer this interrogatory. With respect to GY's second objection, just because the Court will eventually issue an amended CMO that establishes a trial date and deadline for all parties to identify fact witnesses for trial, does not mean that parties are not required to identify them sooner if asked in discovery, and if they know now the names of any fact witnesses they intend to call.

GY's response to discovery so far has been to send to Defendants (1) hundreds of OEPA's files obtained in public record requests, without first removing (a) large quantities of documents wholly unrelated to waste disposal at the JCL, and (b) duplicates of documents already produced; (2) a 135-page index of OEPA's files that is of little or no benefit due to the overwhelming majority of files being irrelevant to waste disposal at the JCL; (3) lists containing hundreds of names of individuals and companies with unspecified "potentially discoverable information;" and (4) extensive documentation of response costs, but no summaries nor an explanation why GY's costs have exceeded OEPA's estimated cost for the remedy.

When OSCO and other Defendants ask GY to provide specific information about waste disposal by Defendants or GY at the JCL, or about GY's response costs, GY responds telling them to see its 200,000 pages of disclosures, most of time without affirmatively stating that the responsive information being sought is even in the disclosures, and almost always without any effort to assist Defendants by specifying where the documents with responsive information can be located. And now, when OSCO asks GY to disclose the names of its fact witnesses relating to waste disposal at the JCL and GY's response costs, so that OSCO and the other Defendants can potentially take their deposition, GY refuses, stating that it will do so only when ordered by the Court. We are confident that the Magistrate will not tolerate this type of "hide the pea" approach

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 11

to discovery if we need to file a motion to obtain the information needed to defend GY's contribution claim.

OSCO and the other Defendants are not required to serve deposition notices on all of GY's extensive list of names with "potentially discoverable information," so that Defendants can, through the process of elimination and at great expense, eventually get around to deposing those persons with the most comprehensive, relevant information that GY will likely rely upon at trial to make its case against Defendants. To the extent that GY knows now who it intends to call as fact witnesses against OSCO, GY must disclose the names.

### GY's Responses to Requests for Admission

**Request for Admission No. 13**: OSCO requested that GY admit that its Jackson, OH plant sent more wastes to the JCL than what was estimated in GY's 1984 response to OEPA's information request. GY denied this request. Yet the enclosed documents demonstrate otherwise. For this reason, GY must admit this request for admission, or otherwise deny the request with an explanation why those documents do not in fact demonstrate that additional wastes were sent to the JCL that are not reflected in GY's 1984 response to OEPA's information request.

### GY's Responses to Document Requests

**Document Request No. 5**: OSCO asked GY to produce a copy of all settlements (defined to include any insurance recovery) GY has entered into addressing its response costs at the JCL. GY objected, stating the information requested is irrelevant and confidential, and because of the practice of the Southern District of Ohio to give *pro tanto* effect to contribution settlements rather than *pro rata* effect.

With respect to relevance, this information is highly relevant for three reasons. First, GY cannot, as a matter of law, bring a PRP-based contribution action under CERCLA for response costs incurred at the JCL unless GY has incurred costs in excess of its equitable fair share. Second, GY also cannot, as a matter of law, bring such action under CERCLA to recover from Defendants an amount that in total exceeds GY's equitable fair share. Third, because PRPs cannot provide statutory contribution protection under CERCLA to other PRPs, if any PRPs settled with GY for amounts less than their equitable fair share, they are potentially open to a contribution claim filed by Defendants to recover the shortfall.

For these reasons, how much of GY's equitable fair share of response costs has already been recovered by GY, and from whom, directly impacts: (1) whether GY had the right to file this equitable contribution action initially, or to continue to prosecute it today; (2) in the alternative, how much more in response costs GY should recover so that, in the end, GY will not have incurred costs beyond its equitable fair share; and (3) whether GY accepted settlements from other PRPs for substantially less than their equitable fair share. For these reasons, this information is highly relevant to this contribution action.

With respect to GY's allegation that settlements it has entered are confidential, for several

3300 Great American Tower | 301 East Fourth Street | Cincinnati, OH 45202-4182 | 513.651.6800 | frostbrowntodd.com
Offices in Indiana, Kentucky, Michigan, Ohio, Pennsylvania, Tennessee, Texas, Virginia, Washington, DC and West Virginia

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 12

reasons that is irrelevant. First, GY chose to agree to such confidentiality provision, which is not required in CERCLA settlements. Second, since PRPs cannot provide statutory contribution protection under CERCLA to other PRPs, Defendants have the right to know if any PRPs settled with GY for amounts less than their equitable fair share. And third, OSCO (and presumably the other Defendants) would be willing to enter into a confidentiality agreement with GY, limiting the use of this information, and, if necessary, filing documents under seal with the Court.

Finally, whether the Court would give *pro tanto* effect to GY's recovery of response costs from insurance carriers or from settlements with other PRPs is also irrelevant. Such long-term effect does override the statutory limitations noted above for PRP-based contributions under CERCLA, which limitations are well-settled in the courts. A potential finding by the Court that monies obtained by GY have *pro tanto* effect cannot preclude Defendants from obtaining information relevant to these limitations, information that the Court will need to determine the equitable fair share allocation of response costs amongst all parties that go to trial.

As examples of cases addressing these limitations and the right of the Defendants to discover this information, see *American Premier Underwriters Inc. v. General Electric Company*, 2013 WL 1090445 at *2 (S.D. OH 2013) (discovery of APU's insurance recoveries due to CERCLA's prohibition against PRPs recovering more than their equitable fair share in a contribution case); *Friedland v. TIC, Inc.*, 566 F. 3d 1206 (10th Cir. 2009) (seminal case addressing this issue).

We also know that GY filed a declaratory judgment action against several insurance carriers to recover response costs from 22 sites, including the JCL. *See Goodyear Tire & Rubber Co. v. Aetna Casualty & Surety Co.*, 95 Ohio St. 3d 512, 514 (2002). The Complaint filed in that case identified the JCL as one of the 22 sites, and language in the Supreme Court's decision indicates that GY resolved its claim for the JCL in an unspecified manner. Based on CERCLA's limitations on PRP-based contribution actions, OSCO is entitled to discover the amount of JCL-based response costs GY may have recovered from its carriers.

For these reasons, OSCO requests that GY amend its response to this document request. If GY is willing to provide this information under a confidentiality agreement, please provide us a draft of such agreement.

**Document Request Nos. 22 and 23**: OSCO asked GY to produce all correspondence between its former Jackson, OH plant and the JCL's owners/operators, and all correspondence between GY's former Jackson, OH plant and any haulers who transported wastes from the plant to the JCL. GY objected, asserting a number of inapplicable privileges, but then, in the alternative, asserting its blanket response, directing OSCO to search the over 200,000+ pages of GY's disclosures, without GY asserting that the responsive information that OSCO seeks is even in the disclosures, and without providing reasonable specificity as to where the information is located.

OSCO is unable to find the responsive information in GY's disclosures, which is consistent with the fact that GY's disclosures are only copies of OEPA's files and GY's cost documentation, and do not contain documents obtained from the files of GY's former Jackson, OH plant. Because

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 13

of GY's position regarding the proper way to allocate response costs for the JCL, this information is highly relevant. Under Rule 34(b)(2)(E), GY must produce responsive documents (1) in the same manner by which GY maintained the files at its former plant in the ordinary course or business, or (2) labeled in order to correspond to OSCO's request. GY's blanket response does not meet the requirements of Rule 34(B)(2)(E). If responsive documents existed at one time at GY's former Jackson, OH plant, but were lost, destroyed, or transferred to a new owner, GY must provide the information that OSCO requested in its instructions in order to explain the circumstances behind such event.

For these reasons, OSCO requests that GY amend its responses to these two document requests.

---

Upwards of 90% or more of OSCO's alleged wastes sent to the JCL was spent foundry sand that was tested multiple times, and found to consistently meet OEPA's criteria for spent, nontoxic foundry sand. As such, not only was it exempted from the statutory definition of "solid waste," it was approved for use as an alternative daily cover at the JCL, and in fact was used in that manner, a use expressly noted by OEPA in its decision document for the JCL's remedy, and a use that GY does not dispute. That approval continues today at other landfills in SW Ohio. As such, the sand was a useful product, substituting for other sources of daily cover that would otherwise have been required, and therefore met CERCLA useful product exemption. *See e.g. American Premier Underwriters v. General Electric Company*, 14 F.4th 560, 2021 WL 4272652 (6th Cir. 2021).

Even for OSCO's much smaller amounts of baghouse dust and slag, those materials were tested and found to contain, at most, a few ppm of a few metals. And the rest of its alleged waste was just general trash.

As reflected in the enclosed letters from OEPA to OSCO and GY, respectively, on one hand, OEPA commended OSCO for the proactive management of its wastes; whereas, on the other hand, OEPA told GY that it needed to stop sending drummed chemical wastes to the JCL, due to the passage of RCRA, and needed to consult with the Agency to find an alternative landfill. Yet GY ignored OEPA's advice, sending thereafter as much as 40% or more of its admitted 5700+ drums of chemical waste.

Despite these and other undisputed facts, GY maintains that the volumes attributed to its drums of chemical wastes and OSCO's sand, respectively, should basically be treated the same for purpose of a settlement or judicial allocation of equitable fair shares of response costs. We are confident the Court will follow precedent from the SD Court and not accept this approach to allocating costs. However, as a precaution, OSCO must take discovery of GY to determine the correct volume of wastes sent from its former plant to the JCL, as well as the chemical and physical makeup of all such wastes.

In conclusion, pursuant to LR 37.1, OSCO requests a "Meet and Confer" with GY to discuss OSCO's objections and hopefully reach a mutually-agreeable resolution without the need

Counsel for Goodyear Tire & Rubber Co.
October 3, 2022
Page 14

for either party to file a motion with the Magistrate. Please contact us to discuss potential dates/times for this call, which needs to occur asap due to the impending fact discovery deadline.

          Very truly yours,

          **FROST BROWN TODD LLC**

          Stephen N. Haughey
          Lindsey A. Bryant
          William D. Hayes
          *Counsel for OSCO Industries, Inc.*

Enclosures

0124938.0597034  4874-0874-2451v1