## IN THE U.S. DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

THE GOODYEAR TIRE & RUBBER COMPANY,

      Plaintiff,

v.

CONAGRA FOODS, INC., *et. al.*,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 2:20-CV-6347
Judge Michael H. Watson
Magistrate Judge Elizabeth P. Deavers

**Joint Memorandum of OSCO Industries, Inc. and R.J. Reynolds Tobacco Holdings, Inc. in Follow-up to the Court's Ruling (Doc. 200) on Defendants' Rule 37 Motion to Compel Goodyear to Produce Documents Addressing Recovery of JCL-Related Response Costs from Insurance Carriers**

_____

Pursuant to Fed. R. Civ. Pro. 37(a), SD Ohio Civ. R. 37.1, the Court's March 20, 2024, Rule 37 telephone conference (Doc. 267), and the Court's March 25, 2024, Notation Order, OSCO, Industries, Inc. and R.J. Reynolds Tobacco Holdings, Inc. ("OSCO," "Reynolds," or collectively "Defendants") file this Joint Memorandum in follow-up to the Court's August 11, 2023, Opinion and Order (Doc. 200) that denied the part of Defendants' Motion to Compel ("MTC") (Docs. 165, 170, and 171)[1] that sought an order for Goodyear to produce documents evidencing its recovery from insurance carriers of response costs for the Jackson County Landfill ("JCL").  Specifically, Defendants seek herein the sanctions and injunctive relief reserved by the Court in that part of its ruling, due to their discovery that Goodyear falsely stated that it had not recovered any JCL-related response costs from insurance carriers, when in fact it recovered close to $245 million from carriers for multiple sites, including the JCL, a recovery that potentially defeats its CERCLA contribution claim, or, at a minimum, may drastically alter the outcome of

---

[1] While OSCO filed the initial MTC, Reynolds, Masco Cabinetry, and General Mills filed a subsequent joinder to OSCO's MTC, having submitted the same or substantially same discovery request to Goodyear for its recovery of response costs.  Doc. 170.

its request for an equitable sharing of the remediation costs for the site.

## I.      Summary of Joint Memorandum and Request for Relief.

Defendants discovered information in January 2024 indicating that Goodyear had falsely stated in an amended discovery response that no JCL-related response costs had been recovered from any insurance carrier.  *See* Doc. 166-2, PAGEID # 9135 (Goodyear's amended response). When confronted with this discovery, Goodyear compounded its culpability with misdirection and concealment designed to keep Defendants from obtaining this information, which could be dispositive of its CERCLA contribution action.[2]  Goodyear's failure to comply with its discovery obligation caused substantial prejudice to Defendants' efforts to obtain information directly bearing on (1) whether Goodyear could file, or continue to prosecute, this action; (2) what equitable fair share, if any, of the JCL-related remedial response costs should be borne by Defendants; and (3) the ability to reach settlements that would have avoided the ensuing, significant costs to complete fact and expert witness-related discovery and depositions, followed by the filing of multiple *Daubert* motions and Motions for Summary Judgment on the merits.

With respect to Defendants' request for relief, Goodyear's deception is particularly egregious.  The Court's denial of this aspect of Defendants' MTC was expressly premised on Goodyear's false statement, to which the Court responded, stating that it could not force production of documents that "did not exist," while also stating that Goodyear's statement was subject to Rule 11 and an appropriate motion should it be determined that Goodyear knew, or should have known, otherwise.  Doc. 200, PAGEID # 11537, *citing* Doc. 166-2, PAGEID # 9135

---

[2] *See* Doc. 165 (MTC) at PAGEID # 9071-9074 (argument and case citations explaining that a private-party plaintiff cannot file or continue to prosecute a CERCLA contribution action if it has recovered the response costs that are allegedly above its equitable fair share, and thus why potential recovery from insurers can be dispositive of such action); *see, e.g. Friedland v. TIC-The Industrial Company,* 566 F. 3d 1203, 1211 (10th Cir. 2009) (*affirming* summary judgment against Friedland based on his recovery of response costs from U.S. Fidelity & Guaranty Company).

(Goodyear's amended response). Goodyear knew, or at least should have known, that this statement was false. Instead of admitting its error after being notified of Defendants' discovery, Goodyear "doubled down" on its misrepresentation. It initially threatened Defendants with sanctions for forcing an alleged "fishing expedition" for non-existing documents, but then turned 180-degrees, serving a declaration *admitting* that JCL-related response costs were recovered from insurance carriers, and blaming its false statement on a "misinterpretation" of Defendants' clear, unambiguous discovery request for this information. Ex. 1, pp. 1-7 (email correspondence between counsel); Ex. 2 (Bordenkircher March 4, 2024, declaration).

Despite this belated admission, Goodyear nevertheless has *continued* to refuse to produce the responsive documents, baldly asserting that its recovery of JCL-related costs was just investigative costs, not remediation costs, and thus irrelevant to this case, an assertion that is contradicted by Goodyear's 10K and 10Q filings with the SEC that summarized its recovery. *Compare* Ex. 2 (Bordenkircher declaration) *with* Ex. 3 and Ex. 4 (Goodyear's 2004 10K and excerpts from its 10Qs for the first and third quarters of 2005, stating that Goodyear's (1) estimates of its pollution liability *included* the cost of remediation, not just investigation, and (2) settlements with insurance carriers covered all past, present, and *future* costs for each site addressed in the settlements).[3] Goodyear's assertion is also contradicted by the express relief it sought in the complaint that it filed against its carriers in order to obtain this recovery.[4] Furthermore, Defendants are not required to accept Goodyear's unsupported assertion without seeing the documents for themselves.

Goodyear's deceit is so significant and the impact so prejudicial that Defendants seek

---

[3] The relevant statements contained in these lengthy filings are provided in Section III of this Joint Memorandum.
[4] *See* Doc. 165-1 (Goodyear's 2004 Amended Complaint) at PAGEID # 9092-9094 (requesting that the carriers be required to "indemnify Goodyear for all sums which Goodyear has paid or has or may become legally obligated to pay" at the subject sites).

relief in two phases.  First, they seek an order for Goodyear to immediately produce unredacted copies of all agreements between it and any insurance carrier that included payment of any JCL-related response costs, regardless whether in the form of an unspecified lump-sum payment for multiple sites or a specified allocation for the JCL.  In conjunction with this order, they seek an award of sanctions for Defendants' legal fees and expenses incurred due to Goodyear's failure to produce these agreements in response to Defendants' discovery requests and its false statement that no insurance recovery had occurred.  Second, Defendants request that the Court's order provide notice to Goodyear of potential default and additional sanctions based on the degree of impact of the agreements on the merits of Goodyear's action and the additional level of prejudice caused to Defendants.  A draft proposed order (Ex. 5) is included for the convenience of the Court.

**II.     Factual and Legal Background of this Dispute, and Defendants' Discovery of Goodyear's Insurance Recovery of JCL-Related Response Costs.**

Defendants will not rehash the circumstances that led to their filing a MTC Goodyear to produce documents related to recovery of JCL-related response costs from all sources, including insurance carriers, nor do they need to repeat their explanation why such recovery is relevant in a private-party CERCLA contribution action, and cannot be cloaked in a claim of confidentiality. The circumstances and explanation, along with supporting exhibits and caselaw, are set forth in the memoranda filed in conjunction with the MTC (*See* Docs. 165, 170, and 171 for Defendants, Doc. 166 for Goodyear),[5] and are addressed in the Court's ensuing Opinion and Order (*See* Doc. 200).  The Court's August 11, 2023, decision is subject to the "law of the case doctrine" that,

---

[5] *See also* Ex. 6 (Goodyear's Responses to Reynolds' Second Set of Discovery Requests) at p. 14 (Document Request No. 6) (Reynolds' discovery request for the same documents).

absent extraordinary circumstances not present here, cannot be revisited.[6]

As the Court noted in its decision, due to Goodyear's amended discovery response stating that it had not recovered any JCL-related response costs from insurance carriers, that aspect of the parties' discovery dispute ended, subject to Rule 11 and Goodyear's ongoing obligation to supplement or amend its response.  Doc. 200, PAGEID # 11537.  For that reason, Defendants had no obligation to "test" the truthfulness of Goodyear's statement by, for example, taking Rule 45 discovery against the insurance carriers Goodyear sued in its 2004 Amended Complaint to recover response costs for numerous sites, including the JCL.  *See* Doc. 165-1 (Amended Complaint) and PAGEID # 9095-9107 (list of carriers sued and sites for which costs were sought, including the JCL).

Instead, Defendants moved on, incurring significant costs to complete written and deposition-based fact discovery; issue expert reports; respond to numerous expert reports issued by Goodyear and take written and deposition-based expert discovery thereon; file and defend numerous *Daubert* motions; and file and defend voluminous Motions for Summary Judgment on the merits of Goodyear's claim.  Docs. 201-257.  All of these steps were taken without a reason to suspect that Goodyear might have recovered sums from insurance carriers sufficient to (1) support dismissal of this action because the recovery exceeded the remedial costs allegedly incurred by Goodyear above its equitable fair share; (2) support a judgment allocating a substantially different equitable sharing of remedial costs among the parties; or (3) prompt Goodyear to reconsider its settlement position, thus enabling Defendants to settle this action and avoid the incurrence of significant costs for the tasks listed above.

---

[6] *See, e.g. The Scooter Store, Inc. v. Spinlife.com, LLC*, No. 2:10-cv-00018, 2010 WL 3489013 *1 (S.D. Ohio 2010) (Magistrate Judge Deavers) ("Findings made at one point in the litigation become the law of the case for subsequent stages of that same litigation," and will only be revisited under "extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'") (internal citations omitted).

Defendants' discovery that Goodyear had recovered JCL-related response costs from its insurance carriers was sheer happenstance.  *See* Ex. 7 (Affidavit of OSCO's Trial Counsel).  In late fall 2023, as part of an office renovation at Frost Brown Todd's Cincinnati office, counsel for OSCO were relocated to another floor, where the firm's Cincinnati-based litigators reside, including its senior-most insurance coverage litigator, David Walulik.[7]  *Id.*  In late January 2024, counsel mentioned in passing to Mr. Walulik the complaint Goodyear filed against close to 30 insurance carriers seeking coverage for response costs at over 125 sites, along with an inquiry whether he knew of the case.  He responded yes, noting that the number of carriers and sites made the case noteworthy among insurance coverage litigators.  *Id.*  When informed that Goodyear denied recovery of any JCL-related response costs from carriers, despite the site being listed in the complaint, Mr. Walulik stated that he recalled a global settlement having been entered into by Goodyear with multiple carriers for multiple sites, and a subsequent call from him to one of the insurance counsel involved in the case confirmed his recollection and that all sites listed in the complaint had been addressed in the settlement.  *Id.*  In addition, he indicated that the standard practice among carriers providing coverage for pollution-related costs under older CGL policies was to condition their payment upon release of all past, present and future claims for response costs at each site.  *Id.*

**III.  Goodyear's Response to Defendants' Discovery was a Series of Further Misrepresentations, Concealment, and a Threat of Sanctions.**

In an email dated February 13, 2024, counsel for Defendants informed Goodyear's counsel of the finding, and requested that Goodyear revise its response and produce the settlements with its carriers.  Ex. 1, pp. 10-11.  In a series of email responses beginning on February 27, 2024, and ending March 12, 2024, Goodyear engaged in a course of delay,

---

[7] For reference, Mr. Walulik's bio is available at https://frostbrowntodd.com/people/david-walulik/.

misdirection, contradictions, and threats designed to avoid producing a copy of the insurance settlements.

First, Goodyear misrepresented its response to OSCO's discovery request, which had requested a copy of *all* settlements Goodyear had entered into relating in *any* way to response costs Goodyear incurred, or would in the future incur, at the JCL site, with the term "settlement" defined to include insurance carriers.[8]  OSCO's discovery request and Goodyear's initial response, which was limited to a series of objections, are excerpted below:

*DOCUMENT REQUEST NO. 5: Please produce all settlements Goodyear has entered into relating in any way to response costs Goodyear incurred, or will in the future incur, at the Jackson County Landfill Site.*

**Response:** Plaintiff objects to this request as overbroad, unduly burdensome, and disproportionate to the needs of the case in that it seeks information that is not relevant to the any claims or defenses in this litigation nor reasonably limited in time or scope. Plaintiff specifically objects to this request to the extent it seeks information related to confidential settlements and confidential settlement discussions, which are not relevant to the Court's determination of the equitable shares attributable to each party in this case. Absent a Court Order, Plaintiff cannot disclose the confidential settlement terms of its settlements with certain parties without breaching the settlement agreements with such parties. Moreover, cases in the Sixth Circuit follow the majority rule and apply the Uniform Comparative Fault Act ("UCFA") approach to this type of CERCLA contribution case, as opposed to the Uniform Contribution Among Tortfeasors Act ("UCATA") approach, which is the minority view. Under the UCFA approach, OSCO's equitable share of Plaintiff's recoverable response costs is reduced by the equitable shares the Court assigns to settling parties at trial, not the amount any such settling parties paid in settlement. As such, the actual amount of the settlement paid by any such settling parties is not relevant to such settling parties' respective equitable shares to be determined by the Court since OSCO will not receive a dollar-for-dollar credit for such settlement (which is the "pro tanto" approach afforded by the minority-view UCATA approach).

---

[8] In similar terms, Reynolds requested "All documents reflecting settlements or proposed settlements with any person or entity with respect to costs incurred by Goodyear in connection with past or future response costs," to which Goodyear responded with almost the identical initial response thereto as it had provided to OSCO's request, consisting of multiple objections to the request. *See* Ex. 6 at p. 14 (Response to Document Request No. 6).

Ex. 8 (Goodyear's Responses to OSCO Industries' First Set of Discovery Requests).[9]

On October 3, 2022, OSCO issued a SD Local Rule 37.1 letter that, among other things, objected to this response and explained why potential insurance recovery of JCL-related response costs is relevant to this case, and reiterated OSCO's request for a copy of all settlements involving any recovery of response costs for the JCL. Ex. 9 (October 3, 2022, letter to Goodyear's counsel). After the parties' SD Local Rule 37.1 "meet and confer" conference, Goodyear responded in writing on December 2, 2022, amending its response to OSCO's Document Request No. 5, stating that **"*With respect to any 'settlement' with an insurance carrier, Goodyear has not received any insurance recoveries related to the JCL Site.*"** Doc. 166-2, PAGEID # 9135 (emphasis added). This amended discovery response became the Court's rationale for overruling this aspect of the MTC. *Compare id*. *with* Doc. 200, PAGEID # 11537 (Opinion and Order) (finding that the Court could not order production of documents that did not exist despite Defendants' concern that Goodyear had intentionally cast its amended response with the word "settlement" placed in quotations marks).

Although Goodyear stated in its December 2, 2022, amended discovery response that no insurance recovery related to the JCL had occurred, the email response to Defendants' February 13, 2024, email ignored Goodyear's December 2, 2022, amended discovery response. Instead, the email cited an **argument** Goodyear made in its opposition to the MTC that sought (*albeit* unsuccessfully) to mislead the Court into believing that Goodyear's discovery response was much narrower, *i.e.*, that Goodyear had not recovered **remediation** costs for the JCL from its insurance carriers, which costs are the subject of this action, and thus no "relevant" settlements allegedly existed. Ex. 1, p. 7 (Goodyear's February 27, 2024, email, *citing* its Response in

---

[9] Goodyear's responses to OSCO's discovery requests are the pertinent exhibit for this filing. OSCO's requests that defined the term "settlement" to include insurance carriers are not included for the sake of brevity.

Opposition to the MTC, Doc. 166, at PAGEID # 9115).  This response misrepresented the much broader scope of OSCO's clear and unambiguous discovery request, as well as the much broader scope of Goodyear's clear and unambiguous amended discovery response that stated that *no* recovery of *any* JCL-related costs had been obtained from an insurer.

Second, Goodyear sought to reconcile its misrepresentation by serving a declaration from in-house counsel Mr. Bordenkircher attached to a March 5, 2024, email, a declaration that increased the level of Goodyear's deception and concealment.  Ex. 2.  For the first time, its declarant asserted that Goodyear had unilaterally "interpreted" a clear, unambiguous discovery request for a copy of *all* settlements with carriers for *any* JCL-related response costs to be a *limited* request just for settlements that included *remediation* costs for the JCL, a newfound assertion that blatantly contradicted Goodyear's December 2, 2022, amended discovery response that stated that *no* recovery from carriers had occurred for *any* JCL-related response costs. *Compare id. with* Doc. 166-2, PAGEID # 9135.

In addition, after more than 15 months had passed, Goodyear's declarant **admitted** that Goodyear had in fact recovered JCL-related response costs from insurance carriers, which are the documents Defendants had requested, but Goodyear denied existed.  However, rather than produce them, its declarant asserted without support that the recovery included just *investigative* costs for the JCL, not *remediation* costs for the *same* site, and therefore, because in this action Goodyear seeks contribution only to remediation costs for the JCL, the settlements are allegedly irrelevant.  Ex. 2.  Goodyear's belated admission is sanctionable.

With respect to its self-serving, unsupported declaration, Goodyear has no right to expect Defendants, or the Court, to simply "take its word at face value" that the recovery of JCL-related response costs from carriers is irrelevant to this CERCLA contribution action based on

settlement terms that Goodyear *has steadfastly refused* to disclose to Defendants so that they can make that decision for themselves.  The same party that misled Defendants and the Court for more than 15 months to believe that Goodyear had not recovered any JCL-related response costs from insurers now wants everyone to trust its unsupported assertion that its belated admission of such recovery is unrelated to this case?  The irony of this rhetorical question is profound.  The Court, not a party submitting a self-serving, unsupported declaration after more than 15 months of misleading Defendants and the Court, will determine the relevance of Goodyear's insurance recoveries.   Goodyear must be ordered to immediately produce unredacted copies of all agreements between it and any insurance carrier that included payment of any JCL-related response costs, regardless whether the payment was in the form of an unspecified lump-sum for multiple sites or a specified allocation for the JCL.[10]

Furthermore, the unsupported assertion by Goodyear's declarant that the insurance recoveries included only an unidentified amount covering just Goodyear's investigative costs for the JCL, not its subsequent remediation costs for the same site, is flatly contradicted by (1) Goodyear's SEC filings that summarized the settlements and surrounding circumstances for the SEC and investors, and (2) the scope of the relief expressly sought by Goodyear in the Amended Complaint that it filed against its carriers seeking coverage for numerous sites, including the JCL.

In its Form 10K report for the year 2004, which is the same year that Goodyear filed its Amended Complaint as a prelude to the insurance settlements, are the following excerpts,

---

[10] Goodyear has never explained how any allegedly legitimate claim of confidentiality of these settlements cannot be maintained by producing the related documents subject to a claim of confidentiality under the parties' agreed protective order.  Doc. 84.  Nor can it explain how disclosure thereof would prejudice it in any way, since it always retained the right to move the Court *in limine* to disallow introduction of the documents based on its claim that they are irrelevant to this case.

retyped herein:

> Other (income) and expense in the 2004 fourth quarter included a benefit of $156.6 million ($156.6 million after tax or $0.75 per share) resulting from a settlement with certain insurance companies. ***We will receive $159.4 million ($156.6 million plus imputed interest of $2.8 million) in installments in 2005 and 2006 in exchange for releasing the insurers from certain past, present and future environmental claims.*** A significant portion of the costs incurred by us related to these claims had been recorded over the prior years.
>
> * * * *
>
> *Environmental Matters*. We had recorded liabilities totaling $39.5 million at December 31, 2004, and $32.6 million (as restated) at December 31, 2003, for anticipated costs related to various environmental matters, primarily the remediation of numerous waste disposal sites and certain properties sold by us. ***Our environmental liabilities are based upon our best estimate of the cost to remediate the identified locations. Our process for estimating the costs entails management selecting the best remediation alternative based upon either an internal analysis or third-party studies and proposals.*** Our estimates are based upon the current law and approved remediation technology. The actual cost that will be incurred may differ from these estimates based upon changes in environmental laws and standards, approval of new environmental remediation technology, and the extent to which other responsible parties ultimately contribute to the remediation efforts.
>
> * * * *
>
> ***Environmental insurance settlement in 2004 included a benefit of $156.6 million resulting from a settlement with certain insurance companies. We will receive $159.4 million ($156.6 million plus imputed interest of $2.8 million) in installments in 2005 and 2006 in exchange for releasing insurers from certain past, present and future environmental claims.*** A significant portion of the costs incurred by us related to these claims had been recorded in prior years.
>
> * * * *
>
> We had recorded liabilities totaling $39.5 million at December 31, 2004, and $32.6 million (as restated) as December 31, 2003, for anticipated costs related to various  environmental matters, ***primarily the remediation of numerous waste disposal sites and certain properties sold by us***. Of these amounts, $8.5 million and $7.5 (as restated) were included in Other current liabilities at December 31, 2004, and December 31, 2003, respectively. The costs include:
>
> - legal and consulting fees,
> - site studies,
> - the design and implementation of remediation plans, and
> - past-remediation monitoring and related activities.
>
> These costs will be paid over several years. ***The amount of our ultimate liability in respect of these matters may be affected by several uncertainties, primarily the ultimate costs of required remediation and the extent to which other***

11

> *responsible parties contribute. During 2004, we reached a settlement with certain insurance companies under which we will receive approximately $159 million in installments during 2005 and 2006 in exchange for our releasing the insurers from certain past, present and future environmental claims.* A significant portion of the costs incurred by us related to these claims has been recorded in prior years.

Ex. 3, pp. 35, 42, 102 and 139, respectively (retyped from full text of Goodyear's Form 10K report for fiscal year ending December 31, 2004) (emphasis added). Contrary to the assertion of Goodyear's declarant, Goodyear stated to the SEC and investors that its recovery of $159.4 million from insurance carriers in 2004 for environmental pollution liabilities was based on estimates of its liabilities for the costs of ***remediation***, not just investigative costs, and that its recovery was conditioned on the release of past, present and ***future*** environmental claims for the subject sites. *Id*.

In addition, Goodyear recovered another approximately $86 million the following year from its London, UK-market-based insurance carriers, as reflected in its first and third quarterly 10Q filings with the SEC, excerpted and retyped below:

> *We reached agreement effective April 13, 2005, to settle our claims for insurance coverage for asbestos and pollution related liabilities with respect to pre-1993 insurance policies issued by certain underwriters at Lloyd's, London, and reinsured by Equitas Limited. The settlement agreement generally provides for the payment of money to us in exchange for the release of past, present and future claims under those policies and the cancellation of those policies*, agreement by us to indemnify the underwriters from claims asserted under those policies, and provision addressing the impact on settlement should federal asbestos reform legislation be enacted on or before January 3, 2007.
>
> *Under the agreement, in the second quarter of 2005, Equitas will pay $22 million to use and will place $39 million into a trust*. The trust funds may be used to reimburse us for a portion of costs we incur in the future to resolve certain asbestos claims. Our ability to use any of the trust funds is subject to specified confidential criteria, as well as limits on the amount that may be drawn down the trust in any one month. If federal asbestos reform legislation is enacted into law on or prior to January 3, 2007, then the trust would repay Equitas any amount it is required to pay with respect to our asbestos liabilities as a result of such legislation. If such legislation is not enacted by that date, any funds remaining in the trust will be distributed to us to enable us to meet future asbestos-related

liabilities for other purposes.

* * * *

*We also reached agreement effective July 27, 2005, to settle our claims for insurance coverage for asbestos and pollution related liabilities with respect to insurance policies issued by certain other non-Equitas excess insurance carriers which participated in policies issued in the London Market. The settlement agreement generally provides for the payment of $25 million to us in exchange for the release by us for past, present and future claims under those policies and the cancellation of those policies*; and agreement by us to indemnify the underwriters from claims asserted under those policies. In conjunction with the settlement we recorded a gain of $14 million during the third quarter.

Ex. 4, First Quarterly 10Q at p. 26, Third Quarterly 10Q at p. 20, respectively (retyped from excerpts of Goodyear's Form 10Q reports for fiscal year ending December 31, 2005) (emphasis added). Just like its annual 10K report for 2004, Goodyear stated to the SEC and investors in its quarterly 2005 reports that the additional recovery was in exchange for a release of past, present and *future* claims for the applicable sites, and, in this/these particular settlement(s), an outright cancellation of the subject policies, both of which statements are in direct conflict with the claim of Goodyear's declarant that the recoveries included only investigative costs, and not *future remediation* costs as well for the sites.

The assertion offered by Goodyear's declarant is further contradicted by the scope of relief that Goodyear sought in the Amended Complaint that it filed against its insurance carriers seeking recovery of response costs for numerous sites, including the JCL. Doc. 265-1. In its Amended Complaint, Goodyear requested that the state court issue a declaration that:

> *…[E]ach CGL Insurance Company is obligated to indemnify Goodyear for all sums which Goodyear had paid or has or may become legally obligated to pay…in connection with any Environmental Actions…including, but not limited to costs incurred and sums expended for the removal, destruction, treatment, or containment of waste materials, and other response actions….*

*Id*. at PAGEID # 9092 (emphasis added). This request clearly included remediation costs, not just investigative costs. In addition, the term "Environmental Actions" was defined as:

> …*claims and liabilities arising out of activities or environmental conditions* at and adjacent to the various locations specifically described in this Amended Complaint [which] have been brought by various private citizens and/or government authorities and allege…property damage, including damage to natural resources, arising out of environmental conditions at or adjacent to the sites."

*Id*. at PAGEID # 9082. This broad definition also included remediation of environmental conditions at the sites. Finally, the Amended Complaint listed the JCL as one of the sites for which Goodyear requested this broad scope of relief. *Id*. at PAGEID # 9104. When read together, the Amended Complaint filed by Goodyear unequivocally shows that it sought coverage for *all* costs it had incurred, or would in the *future* incur, at the JCL, including future *remediation* costs, a scope of relief that accords with what Goodyear told the SEC and investors *after* the settlements had been finalized.

Finally, consistent with its SEC filings and the scope of its Amended Complaint, in three lengthy opinions issued by Ohio's state courts during the 10+ years that Goodyear litigated against its carriers, there is no reference whatsoever in any opinion to Goodyear seeking coverage narrower than *all* sums Goodyear had incurred, or would in the future incur, at each site. *See Goodyear Tire & Rubber Company v. Aetna Casualty & Surety Company*, 95 Ohio St. 3d 512 (2002); *Goodyear Tire & Rubber Company v. Aetna Casualty & Surety Company,* No. 19121, 2001 WL 57170 (9th App. Dist., Summit County 2001); *Goodyear Tire & Rubber Company v. Aetna Casualty & Surety Company,* No. 16993, 1995 WL 422733 (9th App. Dist., Summit County 1995).

These stark contradictions to the unsupported assertion by Goodyear's declarant are yet another reason Goodyear must be ordered to immediately produce an unredacted copy of all agreements between it and any insurance carrier that included payment of any JCL-related response costs, regardless whether the payment was in the form of an unspecified lump-sum for

multiple sites or a specified allocation for the JCL.

Third, in addition to continuing to misrepresent the facts and conceal its insurance settlements, Goodyear sought to intimidate Defendants by threatening to seek sanctions for what it claimed was an untimely request for a "meritless fishing exhibition" by Defendants, asserting that they failed to timely pursue additional discovery against Goodyear or its carriers to uncover more information about potential recoveries. Ex. 1, pp. 7-8. To the contrary, since Goodyear's amended discovery response stated in clear, unambiguous terms that *no* recovery of *any* JCL-related response costs had occurred (*See* Doc. 166-2, PAGEID # 9135), Defendants had no reason or obligation to pursue any additional discovery on the issue, since they were protected under Rule 11 and Goodyear's ongoing obligation under Rule 26(e) to amend discovery responses that it knew, or should have known, to be false or misleading. Goodyear's attempt to intimidate Defendants rings particularly hollow under the present circumstances.

**IV.    Goodyear's Sanctionable Conduct is the Latest in a Series of Questionable Actions it has Taken in this Action.**

In deciding the appropriate relief to be awarded for Goodyear's conduct, Defendants ask the Court to consider Goodyear's previous conduct. First, at the outset of this case, Goodyear took what the Court termed "the unusual procedural move" of filing a pre-disclosures/pre-discovery Motion for Summary Judgment on liability against all eight Defendants (1) before the Court had even convened a preliminary prehearing conference to discuss a case management schedule, (2) without making any effort whatsoever to properly support the admissibility of its exhibits, and (3) audaciously arguing that allowing Defendants to take discovery on the question of their liability would be *futile*, a filing denied by the Court on both procedural and substantive grounds. *See* Doc. 131 (March 18, 2022, Opinion and Order).

Second, during fact discovery, Goodyear filed an opposed motion to extend fact

discovery that the Court deemed to be lacking any good cause for support.  *See* Doc. 178 (February 22, 2023, Order).  Third, during the parties' filing of Cross-Motions for Summary Judgment, Goodyear circumvented the Court's 30-page limit for supporting memoranda by filing an additional 36 pages of its memorandum denoted as "Exhibit A," resulting in a Motion to Strike (Doc. 246), and the Court's Order threatening to disregard Exhibit A in its entirety unless Goodyear filed an amended memorandum to meet the 30-page limit.  *See* Doc. 247 (January 19, 2024, Order).  Finally, just last month, the Court entered an Order awarding sanctions against Goodyear for filing an improper supplemental expert report.  *See* Doc. 257 (February 26, 2024, Opinion and Order).  Defendants believe that these previous occurrences demonstrate why Goodyear's latest action should not be viewed as merely an honest mistake on its part.

**V.      Defendants' Request for Phased Relief from the Court.**

As reflected in its SEC reports, Goodyear's declaratory judgment action filed against numerous insurance carriers for environmental pollution-related coverage for more than 125 sites, including the JCL (*See* Doc. 165-1, PAGEID # 9104), netted approximately $243.4 million in payments from multiple carriers in exchange for the release of all past, present and ***future*** response cost claims for the sites, and in some cases a buyout/cancellation of the applicable policies.  Its statements to the SEC, including the statement that its pollution-based liabilities were derived from estimates of ***remediation*** costs, not just investigative costs, are subject to severe penalties if false or misleading.[11]  Goodyear's statements to the SEC and investors, as well as the broad scope of relief expressly requested in its Amended Complaint, are wholly inconsistent with the March 4, 2004, declaration offered by Goodyear's declarant Mr. Bordenkircher.

---

[11] *See* 15 U.S.C. § 87r (codifying Section 18 of the 1934 Securities and Exchange Act of 1934 prohibiting the filing of false or misleading reports with the SEC).

Goodyear's SEC reports are also consistent with OSCO's insurance counsel's knowledge of the standard practice of carriers that settle pollution claims under older CGL policies by paying a sum designed to cover ***all*** past, present and future response costs for each site, coupled with a broad release, as a means to avoid being piecemealed with additional future claims.[12] And perhaps most importantly, Goodyear's SEC reports show that its December 2, 2022, amended discovery response, which the Court relied upon for its ruling, falsely stated that Goodyear had not recovered any JCL-related response costs from any insurance carrier.

Goodyear's failure to timely respond accurately and in good faith to Defendants' discovery request for a copy of all settlements with insurance carriers for any JCL-related response costs has significantly prejudiced the defense of Goodyear's CERCLA contribution claim in several ways. First, it deprived Defendants of documents that, at a minimum, would have prompted additional discovery to ascertain, if possible, how much of the payments from carriers was earmarked for JCL-related remediation costs. Second, depending on the terms of the settlements and the amount properly allocated to the JCL's remediation costs, disclosure of the settlements may have prompted a much earlier, and more limited, Motion for Summary Judgment filed by Defendants based on Goodyear having already recovered the JCL-related remediation costs that are above its alleged equitable fair share, which is not permitted as a matter of law in a private-party CERCLA contribution action.

Third, depending on the amount properly allocated to the JCL's remediation costs, the disclosure may have prompted Goodyear to settle with Defendants to avoid the Court, which

---

[12] *See* Ex. 7; *see also Goodrich Corporation v. Commercial Union Insurance Company*, Nos. 23585-23586, 2008-Ohio-3200, 2008 WL 2581579 *1, *8-*9 (9th App. Dist., Summit County 2008) (summarizing the carriers' payment of past and future cleanup costs in exchange for a release of all potential future liability under the subject policies for the sites in question).

must use its broad discretion to equitably allocate the JCL's remediation costs in a judgment on the merits, seeing how much Goodyear had already recovered from its carriers.  And finally, depending on the amount properly allocated to the JCL's remediation costs, the disclosure would have materially impacted the portion of Defendants' ultimate Motions for Summary Judgment on the merits of Goodyear's claim, where they presented their equitable arguments why Goodyear should bear all of the costs to implement Ohio EPA's remedy for the JCL.

All but the first of these options would have *significantly* reduced Defendants' costs to complete fact and expert-related discovery, file and defend multiple *Daubert* motions, and file and defend lengthy Motions for Summary Judgement on the merits with voluminous exhibits thereto.  The second would have eliminated these costs altogether.

For the foregoing reasons, Goodyear's actions significantly prejudiced Defendants' defense of its claim, and merit an Order from the Court with the following two phases of relief:

1.	An Order to immediately produce to Defendants complete, unredacted copies of all agreements between it and any insurance carrier that included payment of any JCL-related costs, regardless whether the payment was in the form of an unspecified lump-sum for multiple sites or a specified allocation for the JCL;

2.	An Order awarding sanctions to Defendants for Goodyear's false and misleading December 2, 2022, amended discovery response, in the amount of the legal fees and expenses incurred by Defendants for their Rule 37.1 objection letter; the ensuing Rule 37.1 "meet and confer" conference with Goodyear; the review of Goodyear's December 2, 2022, amended discovery response; the filing of the subsequent MTC and review of the Court's Opinion and Order; the Rule 37.1 efforts to resolve this dispute this past two months without the Court's involvement; and the preparation and filing of this Joint Memorandum; and

3.      A statement in the Court's Order putting Goodyear on notice of potential default of its Amended Complaint, followed by a potential second award of sanctions, depending on the degree of impact of the agreements on the merits of Goodyear's CERCLA contribution action, and the level of additional prejudice to Defendants.[13]  As noted above, a draft proposed Order is enclosed for the convenience of the Court.

Respectfully submitted,

*ss/Stephen N. Haughey*
Stephen N. Haughey (0010459) (Trial Counsel)
William D. Hayes (0037240)
Lindsey A. Bryant (0100606)
David W. Walulik (0076079)
**FROST BROWN TODD LLP**
301 E. Fourth Street, Suite 3300
Cincinnati, Ohio 45202
(513) 651-6800
shaughey@fbtlaw.com
whayes@fbtlaw.com
lbryant@fbtlaw.com
dwalulik@fbtlaw.com
*Attorneys for Defendant OSCO Industries, Inc.*

*ss//Gregory J. DeGulis*
(per April 1, 2024, email authorization)
Gregory J. DeGulis (#0045705)
Megan E. Goedeker (#0099649)
**MCMAHON DEGULIS LLP**
812 Huron Road, Suite 650
Cleveland, OH 44115
(216) 621-1312
gdegulis@mdllp.net
mgoedeker@mdllp.net
*Trial Attorneys for R.J. Reynolds Tobacco Holdings, Inc.*

---

[13] Dismissing a plaintiff's complaint via default as a discovery sanction is admittedly a drastic action, one to be taken with caution and only in extreme circumstances, but certainly not unprecedented where the plaintiff's failure to comply with discovery was willful or in bad faith or fault; the defendant was substantially prejudiced as a result; the plaintiff was put on notice of potential default; and a lesser sanction would not be effective. *See, e.g., Exact Software North America, Inc. v. Infocon, Inc.*, 479 F. Supp. 2d. 702, 717-719 (S.D. Ohio 2006) (ordering, among other relief, that plaintiff pay defendant's costs and appear at a show cause hearing to demonstrate why its complaint should not be dismissed by default with prejudice) (*citing* multiple Sixth Circuit decisions for support); *see also Wittman v. Wilson*, 95 Fed. Appx. 752, 754 (6th Cir. 2004) (unreported) (*affirming* dismissal of plaintiff's complaint and finding that a pre-dismissal warning is pivotal to a finding of willfulness).

Stephen R. Berlin
**KILPATRICK TOWNSEND & STOCKTON LLP**
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7300
SBerlin@KilpatrickTownsend.com

Todd S. Roessler
**KILPATRICK TOWNSEND & STOCKTON LLP**
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1700
TRoessler@KilpatrickTownsend.com
*Attorneys for R.J. Reynolds Tobacco Holdings, Inc.,*
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2024, this Joint Memorandum was filed with the Court's

electronic filing system by counsel for OSCO Industries, Inc., and parties may independently

access this filing through the electronic filing system.

*ss/Lindsey A. Bryant*

0124938.0597034  4863-3889-2466v1