## IN THE U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| THE GOODYEAR TIRE & RUBBER COMPANY, | Case No. 2:20-CV-6347 |
| | Judge Michael H. Watson |
| | Magistrate Judge Elizabeth P. Deavers |
| Plaintiff, | |
| | **Joint Motion of OSCO Industries, Inc. and R.J. Reynolds Tobacco Holdings, Inc. (1) to Dismiss Goodyear's Complaint and Award Fees and Costs, (2) to Strike or Disregard its Improper June 14, 2024, Filing, and, as an Alternative to Dismissal, (3) for Leave to File Joint Supplements to Their Respective MSJ and Joint *Daubert* Motion Regarding Goodyear's Allocation Expert** |
| v. | |
| CONAGRA FOODS, INC., *et. al.*, | |
| Defendants. | |

_____

Pursuant to the Court's May 31, 2024, and June 3, 2024, Opinions and Orders (Docs. 274 and 275) (collectively "the Production Order"), OSCO Industries, Inc. and R.J. Reynolds Tobacco Holdings, Inc. ("OSCO", "Reynolds", or collectively "Defendants") move the Court (1) to dismiss The Goodyear Tire & Rubber Company's ("Goodyear") Complaint due to its false and misleading statements and failure to produce insurance settlements that included recovery of costs incurred at the Jackson County Landfill ("JCL"); (2) to award fees and expenses for Goodyear's misconduct; (3) to strike or disregard its improper filing of 12 additional documents on June 14, 2024, without the Court's permission, in violation of the Production Order; and, as an alternative to dismissal, (4) for leave to file joint supplements to their respective Motion for Summary Judgment ("MSJ") and Joint *Daubert* Motion to Disallow the opinion of Goodyear's allocation expert, to address the impact of the settlements thereon.

**I.     Summary of Goodyear's Insurance Settlements and Their Relevance.**

Consistent with its SEC filings, Goodyear's 10 insurance settlements show that it recovered over $348 million that covered (1) past and ***future*** response costs at multiple cleanup

sites, including the JCL, and (2) a variety of bodily injury claims.  Exhibit 1.[1]  They also confirm that Goodyear's recovery was in the form of lump-sum payouts by all carriers, ***without an allocation of any specific amount to any of the covered sites or claims, and that Goodyear had complete, unfettered discretion to apply all, none, or some portion of each lump-sum to any of the subject sites or claims***.  *Id*.  The settlements also confirm that in exchange for each lump-sum Goodyear released the right to assert a demand for any additional future costs, thus agreeing that it would bear the risk to cover all future costs that might be required at any site or to cover any bodily injury claim.  *Id*.  The relevance of the settlements is unmistakable.  As explained in Defendants' Motion to Compel their production:

1. CERCLA does not allow a private plaintiff to file a contribution claim unless it has incurred response costs beyond its equitable fair share, or, once filed, to continue to prosecute its claim once it recovers the excess costs, nor allow it to double recover any costs;

2. Even when a private plaintiff meets these limitations, its contribution from other parties is limited to what the court, in its broad discretion, determines is the fair and equitable allocation of the response costs among the parties, considering all relevant factors; and

3. Because of CERCLA's limitations and the court's task, all sources of recovery by a plaintiff are relevant, not just at the end of a case when resolving it via trial or a MSJ, but at the beginning, when a defendant assesses plaintiff's compliance with CERCLA's limitations and the ability to negotiate a settlement that takes into account costs plaintiff may have recovered.

*See* Docs. 165, 170, and 171 (Defendants' Motion to Compel and supporting statutory and

---

[1] For ease of reference, Exhibit 1 was prepared with a table of all citations to the terms set forth in the settlements. $348+ million recovered by 2005 equates to over $560 million recovered today.  *See* https://www.inflationtool.com/us-dollar/2005-to-present-value.  (U.S. inflation tool).

2

caselaw) and Doc. 200 (the Court's ensuing Opinion and Order, finding that insurance settlements are relevant for these reasons, but not ordering production because Goodyear stated that they did not exist). For these reasons, because the settlements covered **all** of Goodyear's past and *future* response costs at the JCL, and because its Complaint seeks contribution to Goodyear's costs to remediate the JCL (*See* Doc. 51, PAGEID # 287), its recovery of JCL-related costs from carriers, regardless how much, is clearly relevant. *See also* Doc. 200, PAGEID ## 11536-11537 (Goodyear admitting so, and the Court's concurrence).

**II.  The Prejudice Caused by Goodyear's Conduct is not Limited to the Costs to Obtain the Settlements, but Includes Defendants' Defense of the Case from the Beginning Through the Filing of *Daubert* and Dispositive Motions, as well as Prejudice to their Ability to Negotiate a Settlement.**

The prejudice caused by Goodyear's conduct is much more than the costs incurred to obtain the settlements. It includes (1) prejudice to Defendants' strategy to defend Goodyear's contribution claim from the outset, in particular the ability to demonstrate early on, via dispositive motion, that Goodyear had already recovered from carriers any costs allegedly above its equitable fair share, and thus had no right to file a contribution claim;[2] (2) prejudice to their ability to negotiate settlements using knowledge of costs Goodyear already recovered; (3) prejudice to their ability to further discredit the opinion of Goodyear's expert Matthew Low regarding his view of a fair and equitable allocation of the JCL's costs, and the outcome of their pending joint *Daubert* motion; and (4) prejudice to their ability to further demonstrate in their MSJ why Goodyear is not equitably entitled to any contribution to the remediation costs.

With respect to the defense of Goodyear's contribution claim, Civil Rule 26(a)'s initial

---

[2] As discussed *infra*, when a private party filing a CERCLA contribution claim has recovered an unallocated lump-sum from carriers greater than its alleged excess costs, with discretion to apply the sum as it sees fit, the sum will be applied to the subject site, resulting in dismissal of its claim, and the party will not be permitted to assert an after-the-fact attempt to allocate the sum. *Friedland v. TIC-The Industrial Company*, 566 F. 3d 1203, 1211 (10th Cir. 2009). This issue is the subject of Defendants' request for leave to supplement their respective MSJ.

3

disclosure obligations required Goodyear to produce:

> …for inspection and copying as under Rule 34 *any* insurance agreement under which *any* person carrying on an insurance business *may* be liable to satisfy *part or all* of a *judgment* which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. Pro. 26(a)(1)(A)(iv) (emphasis added). The purpose of this broad mandate is the "…disclosure of insurance coverage…[to] enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge, not on speculation," and such disclosure "even when [the carrier] contests liability under the policy." *Turubchuk v. E.T. Simonds Construction Company*, No. 12-CV-594-SMY-SCW, 2017 WL 413137 *1, *3 (S.D. Ill. 2017) (*quoting* from the Rule 26 Advisory Committee Notes). Despite this clear language and knowing it had recovered from carriers a substantial sum that included coverage *for all future costs at the JCL*, Goodyear asserted in its June 22, 2021, initial disclosures that this obligation was "not applicable" (Exhibit 2), even though the settlements were clearly "agreements" under which carriers agreed "to satisfy part or all" of the costs for which Goodyear sought a "judgment."

Thus, before Defendants requested in discovery a copy of any settlements with carriers for any JCL-related costs, Goodyear had already made a false statement to avoid admitting the existence thereof or to produce them. Goodyear's subterfuge continued for three years, during which it issued eight separate amendments to its initial disclosures without changing the response regarding insurance recovery,[3] interspaced with multiple rounds of objecting to Defendants' requests for their production, followed eventually by an amended response that falsely stated that no insurance settlement for any JCL costs even existed, ending only when the Court issued its Production Order.

---

[3] These amendments were issued on July 7, 2022, January 16, 2023, January 24, 2023, January 30, 2023, February 1, 2023, February 3, 2023, March 27, 2023, and October 19, 2023.

4

CERCLA's limitations on the filing of a contribution claim, as well as the Court's duty when deciding the merits of such claim, make Goodyear's actions particularly egregious. Knowing early on what JCL-related costs Goodyear recovered would have enabled Defendants to (1) determine whether Goodyear could file a contribution claim at all; (2) determine whether Goodyear was seeking to recover costs already paid for; and (3) determine whether fair and equitable settlements could be reached with Goodyear.  Goodyear's misconduct denied Defendants an opportunity to effectively undertake these critical steps.

Even if timely production had not produced settlements or identified grounds for an early dispositive motion, timely production would have enabled Defendants to more fully discredit the opinion proffered by Goodyear's expert Matthew Low (*See* Doc. 206, Defendants' Joint *Daubert* Motion) regarding his view of a fair and equitable allocation of the costs, an opinion that *did not even consider* Goodyear's substantial insurance recovery because Low was never provided the settlements despite their direct bearing on his task.  *See* Doc. 206-3, PAGEID ## 13183-13184 (list of documents provided by Goodyear to Low for his opinion)  Knowledge of Goodyear's substantial insurance recovery would presumably have materially impacted Low's opinion or, if not, such knowledge in Defendants' hands would have enabled them to discredit his entire opinion about a fair and equitable allocation of the JCL's costs, for having not considered the impact of such recovery.  Thus, Goodyear's conduct also prejudiced the potential outcome of Defendants' joint *Daubert* motion.

Finally, OSCO and Reynolds each filed a MSJ regarding their alleged liability under CERCLA, and, in the alternative, regarding what they believe the Court should determine to be a fair and equitable allocation of the remediation costs.  *See* Docs. 230 and 231.  Goodyear's failure to produce the settlements denied Defendants an opportunity to make a significant

5

additional argument why Goodyear should not equitably be awarded any contribution from Defendants, thereby also prejudicing the potential outcome of their MSJ.

For all of these reasons, the prejudice caused by Goodyear dates back to June 22, 2021, when it failed to produce the settlements in its initial disclosures, and continued uninterrupted through the process of fact and expert discovery, and eventually prejudicing the potential outcomes of the Defendants' pending joint *Daubert* motion and their respective MSJ.

**III.    Goodyear's Misconduct was not an Innocent Oversight, a Misunderstanding of Defendants' Discovery Requests, or an Overzealous Effort to Preserve the Settlements' Confidentiality.**

The fact that Goodyear's insurance settlements covered ***all costs***, past, present and future, for the JCL, placed the settlements squarely within Rule 26(a)(1)(A)(iv)'s initial disclosure obligation. Not only did Goodyear fail to produce them with its initial disclosures, it repeated its "not applicable" claim in eight subsequent amendments thereto, and then refused to produce them when requested to do so in discovery. When OSCO sought in discovery a copy of all settlements relating in any way to ***any*** past or future costs for the JCL, the discovery request included the following definition of the term "settlement":

> …***any agreement***, regardless whether in writing or oral, between Goodyear and an individual, business, or entity, ***wherein Goodyear has resolved a claim*** on the part of Goodyear ***for payment, reimbursement, or contribution to response costs Goodyear has allegedly incurred, and/or will incur in the future, with respect the investigation or <u>remediation</u> of the Jackson County Landfill Site. The term "Settlement" includes any recovery that Goodyear has obtained from any insurance carrier for <u>any</u> response costs Goodyear has or will incur with respect to the Jackson County Landfill Site***.

Doc. 175-1, PAGEID # 9252 (emphasis added).[4] It was clear that OSCO requested a copy of all settlements with carriers for any JCL-related costs, past or future, regardless if investigative or remedial in nature. Mr. Bordenkircher's declaration (Doc. 271-2) asserting that Goodyear "misinterpreted" OSCO's discovery request to seek just a copy of settlements unrelated to any

---

[4] Reynolds also requested Goodyear's settlements for past and future response costs. Doc. 271-6, PAGEID # 18986.

costs at issue in this case is disingenuous at best.  OSCO's request clearly sought more, and Goodyear had no authority to unilaterally decide that settlements relating to payment of costs incurred *at the very site at issue in this case* were somehow not potentially relevant to the case.

In addition, Bordenkircher's assertion that the settlements included only investigative costs for the JCL, not future remedial costs, is blatantly contradicted by (1) the settlements themselves, which state that the payments covered *all future* costs at each of the subject sites, regardless of their nature, and (2) Goodyear's SEC filings, which state that the settlements were **based upon Goodyear's best estimates of future remediation costs**, and that the payments covered all past and *future* costs.  See Exhibit 1 (settlements); Doc 271-3, PAGEID ## 18855, 18859, 18889, and 18908 (2004 10K filing); and Doc. 271-4, PAGEID ## 18961 and 18967 (1st and 3rd Quarterly 10Q filing for 2005).  Bordenkircher's assertion also contradicts the relief sought in Goodyear's complaint against the carriers.  *See* Doc. 165-1 (Goodyear's 2004 Amended Complaint), PAGEID ## 9092-9094 (asking that carriers "indemnify Goodyear for all sums which Goodyear has paid or has or may become legally obligated to pay" at the sites).

In addition, nothing in Bordenkircher's declaration explains Goodyear's decision to amend its discovery response to state that it *never* recovered *any* costs *whatsoever* from *any* insurance carrier relating to the JCL, and why Goodyear never corrected the false statement when it knew that the Court relied on it as the basis to deny the Motion to Compel production of the documents.

Finally, Goodyear's conduct cannot be justified as an overzealous effort to preserve the settlements' confidentiality.  On the same day (June 22, 2021) that Goodyear served its initial disclosures the Court entered the ***parties'*** agreed confidentiality/protective order, wherein they established a process to assert confidentiality for documents produced in discovery.  Doc. 86.

Thus, nothing stopped Goodyear from producing the settlements under a claim of confidentiality that would limit Defendants' right to use them outside the case or disclose them to a third party. Goodyear's objective was to keep Defendants from ever seeing the settlements due to their impact, not to ensure their confidentiality would be maintained.

IV. **Goodyear's Misconduct Justifies Dismissal of its Complaint as a Discovery Sanction due to the Prejudice that Permeates all Phases of the Case, Along with an Award of Fees and Expenses Dating from the Initial Disclosures through the Resolution of this Motion.**

Dismissing a complaint as a discovery sanction is admittedly an uncommon action, but is justified when the plaintiff's failure to comply with discovery is willful or in bad faith; the defendant is substantially prejudiced as a result; the plaintiff is put on notice of potential default; and a lesser sanction will not be effective. *See, e.g., Exact Software North America, Inc. v. Infocon, Inc.*, 479 F. Supp. 2d. 702, 717-719 (S.D. Ohio 2006) (ordering, among other relief, that plaintiff pay defendant's costs and appear at a show cause hearing to demonstrate why its complaint should not be dismissed) (*citing* multiple Sixth Circuit decisions for support); *see also Wittman v. Wilson*, 95 Fed. Appx. 752, 754 (6th Cir. 2004) (unreported) (*affirming* dismissal of the complaint), and *Snap-On Business Solutions, Inc. v. Hyundai Motor America*, No. 5:07-CV-1961, 2011 WL 9925879 *1, *16-*19 (N.D. Ohio 2011) (explaining application of the four factors).

Goodyear's misconduct meets these factors. Its conduct was both willful and in bad faith, including threats of sanctions against Defendants for continuing to seek a copy of the settlements. If there are doubts about Goodyear's bad faith, its June 14, 2024, filing in response to the Court's Production Order should end them. Defendants requested in fact discovery a copy of any insurance settlements for JCL-related costs, but their requests were denied. Fact discovery ended in February 2023, almost 16 months ago. The Court's Production Order found

8

Goodyear's position lacking any good faith basis and potentially sanctionable, and ordered it in clear, unequivocal terms *to do one, and only one, thing* – produce the settlements that had been requested immediately.  Docs. 274, 275.  Contrary to Goodyear's assertion that it "complied" with the Court's Production Order (Doc. 276), it did not.  While it filed 10 insurance settlements, ***Goodyear also, without seeking leave of Court, decided rather brazenly that the Production Order allowed it to unilaterally file other documents as well***.  Goodyear filed eight separate cost estimate spreadsheets with the Court, and, for inexplicable reasons, filed the same eight *plus* four additional documents/spreadsheets with Defendants.  *Compare* Exhibit 3 (list of documents filed with the Court) *with* Exhibit 4 (list of documents filed with Defendants).

Defendants move the Court to strike or disregard Goodyear's additional filing, and ask the Court to factor the filing in the evaluation of Goodyear's bad faith.  Nothing in the Court's Production Order allowed Goodyear to do anything but file the settlements Defendants requested, but Goodyear concealed for more than three years.  The Production Order did not order Goodyear to produce the settlements "and any other document it wants that it believes is relevant to the settlements."  Unilaterally filing the additional documents without leave of Court is grounds to strike or disregard them, particularly given the brazenness of Goodyear's action in the context of the Court's clear, and somewhat pointed, language in the Production Order.  In addition, filing *different* sets of documents with the Court and Defendants violated a clear requirement from the Court to produce the *same* documents to both.  Furthermore, because the additional documents were not requested in discovery that ended almost 16 months ago, nor produced in any of Goodyear's eight amendments to its initial disclosures, it should not be permitted to unilaterally file documents it wants to be considered in determining the impact of insurance settlements it knowingly concealed for more than three years.  Finally, from a

9

substantive standpoint, Goodyear's improper filing is an attempt to create an after-the-fact argument why its lump-sum recovery of more than $348 million in unallocated monies, with unfettered discretion to apply it any way it chooses, should not lead to dismissal of its contribution claim for the JCL.  This last issue is the subject of Defendants' alternative request below for permission to file a joint supplement to support their pending MSJ.

Defendants believe that Goodyear's false and misleading statements about its insurance settlements, its other misconduct summarized in Defendants' Joint Memorandum (*See* Doc. 271, PAGEID ## 18811-18812), and its disrespect for the Court's Production Order meet the standard for willful bad faith to support a default dismissal.  In addition, the prejudice caused by its misconduct has impacted every phase of this case, and an order to only pay fees and expenses will not eliminate the prejudice.  Goodyear was also put on notice in Defendants' joint memorandum that they were asking the Court to consider default as a discovery sanction.  Doc. 271, PAGEID # 18815.  For these reasons, dismissal is justified as a discovery sanction. Defendants also request that they be awarded fees and expenses dating from June 22, 2021, the date when Goodyear issued initial disclosures falsely asserting that its insurance settlements were "not applicable" to this case, through the date of the Court's resolution of this Joint Motion.

**V.      If the Complaint is not Dismissed, Defendants Request Leave to File a Joint Supplement in Support of their Joint *Daubert* Motion to Disallow Goodyear's Allocation Expert and their Respective MSJ.**

If the Complaint is not dismissed or Low's opinion disallowed as discovery sanctions, Defendants request leave to file a joint supplement to their joint *Daubert* motion to disallow Low's opinion and their respective MSJ, demonstrating in the latter why, under *Friedland v. TIC-The Industrial Company*, 566 F. 3d 1203 (10th Cir. 2009), the Complaint should be dismissed due to Goodyear's unallocated lump-sum recovery of $348 million from its carriers.

10

## VI. Conclusion.

For the foregoing reasons, Defendants request dismissal of Goodyear's Complaint, an award of fees and expenses dating back to June 22, 2021, and, if the Court does not dismiss the Complaint or disallow Low's opinion as discovery sanctions, leave to file a joint supplement to their MSJs and joint *Daubert* motion, respectively.

Respectfully submitted,

*ss/Stephen N. Haughey*
Stephen N. Haughey (0010459) (Trial Counsel)
William D. Hayes (0037240)
Lindsey A. Bryant (0100606)
David W. Walulik (0076079)
**FROST BROWN TODD LLP**
301 E. Fourth Street, Suite 3300
Cincinnati, Ohio 45202
(513) 651-6800
shaughey@fbtlaw.com
whayes@fbtlaw.com
lbryant@fbtlaw.com
dwalulik@fbtlaw.com
*Attorneys for Defendant OSCO Industries, Inc.*

*ss//Gregory J. DeGulis*
(per June 24, 2024, email authorization)
Gregory J. DeGulis (#0045705)
Megan E. Goedeker (#0099649)
**MCMAHON DEGULIS LLP**
812 Huron Road, Suite 650
Cleveland, OH 44115
(216) 621-1312
gdegulis@mdllp.net
mgoedeker@mdllp.net
*Trial Attorneys for R.J. Reynolds Tobacco Holdings, Inc.*

Stephen R. Berlin
**KILPATRICK TOWNSEND & STOCKTON LLP**
1001 West Fourth Street
Winston-Salem, NC 27101-2400
(336) 607-7300
SBerlin@KilpatrickTownsend.com

Todd S. Roessler
**KILPATRICK TOWNSEND & STOCKTON LLP**
4208 Six Forks Road, Suite 1400
Raleigh, NC 27609
(919) 420-1700
TRoessler@KilpatrickTownsend.com
*Attorneys for R.J. Reynolds Tobacco Holdings, Inc., Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2024, this Joint Motion was filed with the Court's electronic filing system by counsel for OSCO, with approval from counsel for Reynolds, and parties may independently access this filing through the electronic filing system.

*ss/Lindsey A. Bryant*

0124938.0597034   4856-9421-6902v1