IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE GOODYEAR TIRE & RUBBER COMPANY, | ) ) ) Case No. 2:20-cv-06347-MHW-EPD |
| Plaintiff, | ) ) Hon. Michael H. Watson ) Hon. Magistrate Elizabeth A. Preston Deavers |
| v. | ) ) **PLAINTIFF'S MEMORANDUM IN** |
| CONAGRA FOODS, INC., et al., | ) **OPPOSITION TO DEFENDANTS'** ) **JOINT MOTION** |
| Defendants. | ) ) **ORAL ARGUMENT REQUESTED** ) |

Dated: July 22, 2024

Respectfully submitted,

*/s/ William J. Hubbard*
William J. Hubbard (0077033)
Trial Attorney
THOMPSON HINE LLP
3900 Key Center
Cleveland, Ohio 44114
216-566-5644
Bill.Hubbard@thompsonhine.com

*/s/ Jeffrey A. Thaler*
Jeffrey A. Thaler (admitted *pro hac vice*)
PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207-791-3213
jthaler@preti.com

ATTORNEYS FOR PLAINTIFF THE
GOODYEAR TIRE & RUBBER COMPANY

In accordance with the Court's recent Opinions and Orders (ECF Nos. 274 and 275), Plaintiff The Goodyear Tire & Rubber Company ("Goodyear") respectfully submits this Memorandum in Opposition to Defendants' Joint Motion (ECF No. 277).  Goodyear's delayed disclosure of its historic insurance settlements (the "Insurance Settlements") was well-justified because these insurance recoveries did not reimburse any of the response costs which Goodyear is seeking against Defendants in this action.  As explained below, <u>all but at most $362,199</u> of these insurance proceeds related to the approximately *350 sites other than the Jackson County Landfill ("JCL")*.  None of these $362,199 in response costs[1] are sought against the Defendants in this case.  Goodyear's determination that these Insurance Settlements were not relevant and outside the scope of permissible discovery was well-supported by the facts and applicable law.  *See, e.g.*, Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense*"; emphasis added).  The Insurance Settlements also contain confidentiality restrictions, which presumably is why the Court directed that they be submitted for *in camera* inspection.  *See* ECF No. 275.  The delay was not motivated by bad faith, willfulness or fault, nor did it result in any material prejudice to Defendants.

Goodyear acknowledges that the statement in its counsel's December 2, 2022 letter responding to discovery issues raised by Defendants with respect to Document Request No. 5 ("Goodyear has not received any insurance recoveries related to the JCL Site") was imprecise and not technically accurate, and could have misled Defendants and the Court, which Goodyear sincerely regrets.  This was not intentional, and was based upon counsel's understanding of the facts at the time.  Goodyear promptly attempted to rectify this misstatement in its Opposition to OSCO's Motion to Compel (ECF No. 166) filed on January 25, 2023.  *See id.* at PageID 9115

---

[1] As explained below, these $362,199 of response costs related only to Goodyear's past defense costs and estimated remedial investigation/feasibility study ("RI/FS") costs at the JCL, whereas Goodyear's contribution claims in this case seek only remedial design/remedial action ("RD/RA") costs incurred many years later.

1

("Goodyear … is unaware of any insurance recovery salient to the JCL remediation work for which Goodyear seeks contribution from the PRP Defendants," which is more precise and fully accurate.) To the extent the Court determines that sanctions are appropriate for this prior unintentional misstatement, such sanctions should be limited to the reasonable costs related to Defendants' Motion to Compel.

### Goodyear's Insurance Settlements

In accordance with this Court's recent Orders (ECF Nos. 274 and 275), on June 14 Goodyear produced to Defendants and submitted to the Court for *in camera* inspection its ten historical confidential Insurance Settlements, dated between 1997 and 2005, along with certain related documents to allow the Court to determine precisely what costs the Insurance Settlements reimbursed. The related documents consisted of a series of "Spreadsheets" that summarized the various costs Goodyear had incurred and/or anticipated at the time the settlements were negotiated, which comprised Goodyear's settlement "demands" to the insurance companies. Decl. II of S. Bordenkircher, **Exhibit 1** hereto, at ¶¶4-5. The most recent Spreadsheet is dated June 4, 2004 (GY0101402) and summarizes Goodyear's "Past Costs As of December 31, 2003" and estimated future costs where they were estimable. *Id*. at ¶6.[2]

The total amount of these insurance recoveries, combined, was $260,932,500.[3] *Id*. at ¶10. Of this total, *no more than* $362,199 could have related to the "Jackson Landfill", because that was the total amount demanded by Goodyear from its insurers for JCL costs:

|  | Total Costs To Date | | | | | Estimated Costs | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Site | Property Damage | Bodily Injury | Defense (w/o RI/FS) | RI/FS Costs | Total Incurred | Est of Potential Exposure to Liability | Potential Future Legal Expenses | Total Estimate (Future) | GRAND TOTAL |
| Jackson Landfill | $0 | $0 | $53,199 | $0 | $53,199 | $299,000 | $10,000 | $309,000 | $362,199 |

---

[2] A redacted version of GY0101402-12 is filed herewith. On June 14, 2024, an unredacted version was produced to Defendants and to the Court for its *in camera* inspection.
[3] Defendants grossly overstate the combined total recovery, which they assert was $348.345 million. *See* ECF No. 277-1. They erroneously claim that the Fireman's Fund settlement was for $87.5 *million*, whereas the Fireman's Fund settlement agreement actually provides for payment of $87,500. *See* GY0100962.

2

*Id.* at ¶¶7, 11; *see* GY0101406. The total amount demanded for all sites was $280,303,175, which means that $279,940,976 related to the approximately *350 other sites* for which costs were identified. *See* GY0101412. Importantly, Goodyear received only $260,932,500, which left an unrecovered *shortfall* of ($19,370,675) compared to its demand. Ex. 1, ¶10.

As explained in the initial Declaration of Steven Bordenkircher (ECF No. 268-1), these reimbursed costs of at most $362,199 reflected only Goodyear's past defense costs and estimated remedial investigation/feasibility study ("RI/FS") costs at the JCL, which are <u>not</u> being sought by Goodyear in this case. *Id.*, ¶¶9-12. Goodyear's contribution claims against Defendants relate to its *remedial design/remedial action ("RD/RA") costs at the JCL*, which were incurred years later and were not even estimable at the time of the Insurance Settlements. *See id.*, ¶11.

Defendants have moved the Court to "strike or disregard" the Spreadsheets and other related documents (*see* ECF No. 277 at PageID 19075), even though the Spreadsheets are necessary for the Court to understand precisely what costs the Insurance Settlements reimbursed. The Court must "[l]ook to the background of [the failure], not simply the outcomes, to determine if the [failure to cooperate in] discovery [was] substantially justified." *Villalona-Rodriguez v. United States*, No. 3:18-CV-00786-CHB, 2019 WL 13218325, at *4 (W.D. Ky. Aug. 22, 2019) (internal quotations omitted). Goodyear included the Spreadsheets in the documents submitted for *in camera* inspection as essential background, and they do not consist of "any redundant, immaterial, impertinent, or scandalous matter." *See* Fed. R. Civ. P. 12(f). Goodyear produced the Spreadsheets in good faith, and the Court should deny Defendants' request that the Court strike or disregard them.

The applicable caselaw also supports Goodyear's position related to the Insurance Settlements. Defendants rely upon *Friedland v. TIC-The Indus. Co.*, 566 F.3d 1203, 1209 (10th Cir. 2009) (*see* ECF No. 277 at PageID 19069, n. 2; PageID 19076), which ruled that "*if*

3

[plaintiff's] injury and the damages he alleges in this [contribution] lawsuit *are the same* as those addressed by the [insurance] … settlements, then the defendants are entitled to a full credit in the amount of the settlements." (Emphasis added). The plaintiff in that case, by his "own admissions," had conceded that the insurance "settlements remedied the $20,723,181 he incurred in settling the cost-recovery action …, and this contribution action reasserts the same injury and resultant damages." *Id.* at 1210. Goodyear's Insurance Settlements in this case are not for the same costs being sought against Defendants.

As the Seventh Circuit recognized in *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 708 (7th Cir. 2014), *Friedland* "does not otherwise establish a bright-line rule for how a court should treat insurance settlements." It found that "[t]he district court [in that case] rejected as inequitable a reading of *Friedland* that would require all proceeds from an undifferentiated insurance settlement to cover common liability costs." *Id*. (emphasis added). The Court of Appeals closely examined Glatfelter's insurance recoveries, added the contribution amount that Glatfelter sought from NCR, and found that the combined amount of liability insurance and contribution claims would not exceed Glatfelter's full liability, "so there was no danger that Glatfelter would recover more than 100% of its share." *Id*. "Accordingly, it held that Glatfelter's insurance proceeds should not be offset against its contribution claim." *Id*. (emphasis added).

The Seventh Circuit found the district court's reasoning to be "sound." *Id*. It further noted:

> Contribution actions are governed by equity, and the disposition of insurance settlements to a PRP is one aspect of that equitable determination. *Friedland* affirms that any level of double recovery is inequitable in CERCLA contribution actions, and that ignoring insurance settlements when it would lead to double recovery is inconsistent with the statute's purpose…. The governing rule is equity, and the way equity was achieved in *Friedland* may prove unsuitable to other cases.

*Id*. Since Goodyear never recovered even a dollar in insurance proceeds for Goodyear's RD/DA costs at the JCL, there is likewise no risk of a double recovery. In fact, there was *no overlap at all*

4

between Goodyear's insurance recoveries and the amounts being sought in contribution from Defendants. *See* Decl. of Steven Bordenkircher, ECF No. 268-1, ¶¶11-14. Thus there is no justification for dismissal of Goodyear's contribution claims in this case, which would be inequitable and contrary to CERCLA. *See NCR Corp.*, 768 F.3d at 708.

In fact, absent prior notice from the Court that dismissal is contemplated, "[a] district court should impose a penalty short of dismissal unless the derelict party has engaged in bad faith or contumacious conduct." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 644 (6th Cir. 2005) (internal quotations omitted). The district court, not the opposing party, must provide such notice to the errant party. *Id*. "Contumacious" is defined as "perverse in resisting authority" and "stubbornly disobedient." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008). Goodyear has not engaged in bad faith or contumacious conduct here—it promptly complied with the Court order that it produce the Insurance Settlements to Defendants and to the Court for *in camera* inspection. Goodyear has not disobeyed any Court order nor been warned by the Court of potential dismissal.

The Sixth Circuit has "[i]nstructed district courts to look first to an alternative sanction that would protect the integrity of the judicial process." *Bradley J. Delp Revocable Tr.*, 665 F. App'x 514 at 520–521; *see also Freeland v. Amigo*, 103 F.3d 1271, 1280 (6th Cir. 1997) (explaining that "in the absence of contumacious conduct, an alternate sanction that would protect the integrity of pretrial procedures should be utilized rather than dismissal"); *Exact Software N. Am., Inc. v. Infocon, Inc.*, 479 F. Supp. 2d 702, 717 (N.D. Ohio 2006) ("Dismissal of a party's complaint … is a drastic sanction, and one that should be considered with caution and entered only in extreme cases."). Goodyear engaged in absolutely no conduct that threatened the integrity of the judicial process, and thus the extreme sanction of dismissal is not warranted by the applicable law or facts.

5

## ARGUMENT

### A.     Goodyear's Delayed Disclosure was Substantially Justified.

As explained above, the Insurance settlements are not relevant to Goodyear's claims for contribution, which relate only to JCL RD/RA-related costs. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant to any party's claim or defense*") (Emphasis added). Thus, Goodyear was within its rights to object to the relevancy of Defendants' discovery requests and initially withhold production of the Insurance Settlements. The Sixth Circuit has held that a party can demonstrate that its conduct was substantially justified "[i]f it raises an issue about which 'there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Doe v. Lexington-Fayette Urban Cty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)). "The Court's focus must be on the quality of the justification and the genuineness of the dispute; where an impartial observer would agree that a party had good reason [for the failure], then such a justification is substantial." *Villalona-Rodriguez v. United States,* No. 3:18-CV-00786-CHB, 2019 WL 13218325, at *4 (W.D. Ky. Aug. 22, 2019) (internal quotations omitted). The Supreme Court has further explained that the phrase substantially justified "[h]as never been described as meaning justified to a high degree, … but rather justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood,* 487 U.S. 552, 553 (1988) (internal quotation marks omitted).

"[T]o satisfy the discoverability standard, the information sought must have more than minimal relevance to the claims or defenses." *Doe v. Ohio State Univ.,* No. 2:16-CV-171, 2018 WL 1373868, at *2 (S.D. Ohio 2018). When the information is "[n]egligibly relevant [or] minimally important in resolving the issues" the standard is not met. *Id.* "[A]lthough documents are requested the opposing party is not automatically required to produce them if they are not

relevant or if they are privileged." *Fluker v. Trans Union, LLC*, No. 1:22-CV-12240, 2023 WL 10475987, at *2 (E.D. Mich. Aug. 17, 2023) (citing Fed. R. Civ. P. 26(b)(1)).

Defendants seek to obscure the scope of the Insurance Settlements by citing their releases for "future costs." However, this argument also lacks merit. Although the Insurance Settlements contained standard language releasing claims for "future costs," the fact remains that they did not in fact reimburse any of Goodyear's RD/RA costs at the JCL. The Insurance Settlements were all dated 2005 or earlier. Goodyear only began incurring the RD/RA costs at JCL ten years later in 2015. This was clearly disclosed to Defendants in Plaintiff's First Supplemental Rule 26(a) disclosure of damages. *See* Plaintiff's Index of Damages, **Exhibit 2** hereto. Thus, none of the costs Goodyear seeks in contribution were satisfied even in part by any of the Insurance Settlements, regardless of the general release of "future costs."

Defendants ignore that the Insurance Settlements also covered approximately *350 sites other than JCL*, which were at various stages of investigation and remediation at the time of the Insurance Settlements. Some sites were in active remediation, and the Insurance Settlements reimbursed their past or future remediation costs where they were estimable. *See* June 4, 2004 Spreadsheet, GY0101402 *et seq*. It is not surprising, then, that Goodyear's SEC filings made reference to "future remediation costs." *See* ECF No. 277 at PageID19073. These reimbursements for other sites have absolutely no bearing on Goodyear's contribution claims for the JCL.

Furthermore, Goodyear was also concerned with the fact that the Insurance Settlements contain confidentiality restrictions, which placed an affirmative obligation on Goodyear to defend efforts to compel their production. Despite Defendants' assertion, the existence of a protective order did not absolve Goodyear of this obligation. Nevertheless, when the Court ordered them to be produced to Defendants and to the Court for *in camera* inspection, Goodyear timely compiled.

7

### B. Any Sanctions Must Adhere to U.S. Supreme Court Guidelines.

In *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 104 (2017), the U.S. Supreme Court held that a federal court's inherent authority to sanction a litigant for bad faith conduct is "limited to the fees the innocent party incurred solely because of the misconduct." The Court further explained: "the fee award may go no further than to redress the wronged party 'for losses sustained'; it may not impose an additional amount a punishment for the sanctioned party's misbehavior." *Id*. at 108 (citations omitted). Such sanctions must meet a "but-for test: The complaining party … may recover 'only the portion of his fees that he would not have paid but for' the misconduct." *Id*. at 109 (citations omitted). *Accord*, *Oro BRC4, LLC v. Silvertree Apartments, Inc.*, No. 2:19-CV-4907, 2022 WL 19558082, at *14 (S.D. Ohio Mar. 18, 2022) ("The court's fundamental job is to determine whether a given legal fee—say, for taking a deposition or drafting a motion—would or would not have been incurred in the absence of the sanctioned conduct."); *Woods v. Brooks*, No. 219CV5208, 2023 WL 2483764, at *2 (S.D. Ohio Feb. 7, 2023) ("Such fees should be awarded only in a manner that is compensatory—not punitive—and only when the sanctioned party's misconduct is a but-for cause of the recovering party's fees.").

### C. Goodyear's Delayed Disclosure of the Insurance Settlements was Not Due to Willfulness, Bad Faith or Fault.

As explained above, Goodyear's delayed disclosure of the Insurance Settlements was not due to willfulness, bad faith or fault. Rather, it was based upon Goodyear's good faith understanding that the actual costs the Insurance Settlements reimbursed (*i.e.*, RI/FS costs incurred at the JCL) are irrelevant to Goodyear's RD/RA costs being sought in this litigation, and Rule 26(b)(1)'s limitations on the scope of permissible discovery (*i.e.*, matters that are "relevant to any party's claim or defense").

8

"[F]or a plaintiff's actions to be motivated by bad faith, willfulness, or fault, his conduct must display either an intent to thwart judicial proceedings or reckless disregard for the effect of his conduct on those proceedings." *Bradley J. Delp Revocable Tr. v. MSJMR 2008 Irrevocable Tr.*, 665 F. App'x 514, 521–522 (6th Cir. 2016). A discovery violation is "willful" if it is a conscious or intentional failure to comply; in "bad faith" if the party's conduct is intentional or in reckless disregard of a party's obligations to comply with a court order; and is motivated by fault when the party demonstrates objectively unreasonable behavior. *Snap-On Business Solutions, Inc. v. Hyundai Motor America*, No. 5:07-CV- 1961, 2011 WL 9925879 *1, *16 (N.D. Ohio 2011) (internal citations omitted). "Willfulness" and "bad faith" are associated with conduct that is intentional or reckless, while "fault" refers to "gross negligence" and does not include conduct classified as a mere mistake or slight error in judgment. *Id*. Gross negligence, in turn, means acting without even slight diligence or care, and in reckless disregard of one's legal duties. *Id*.

There is no evidence that Goodyear's delayed disclosure was motivated by bad faith, willfulness or fault, was intended to thwart judicial proceedings, was objectively unreasonable or grossly negligent, or due to a reckless disregard for the effect of the conduct on the proceedings. On the contrary, Goodyear withheld the Settlement Agreements in good faith based on relevancy and then fully complied with the Court's Orders to produce them to Defendants and for *in camera* inspection, just as Goodyear has consistently abided by this Court's prior discovery-related orders. The one technical misstatement in counsel's December 2, 2022 letter was unintentional and promptly clarified.

### D. Defendants' Only Prejudice, At Most, Are Their Reasonable Attorney Fees for Their Motion to Compel.

As explained above, the Insurance Settlements did not reimburse Goodyear's RD/RA costs at the JCL, and have no legal impact on Goodyear's contribution claims. Thus, Goodyear's

9

delayed disclosure did not prejudice Defendants' ability to defend this case. Defendants' prejudice arguments are based upon the assumption that the Insurance Settlements reimbursed Goodyear's RD/RA costs at the JCL, which is untrue. Goodyear accurately represented to the Court in its Response to OSCO's original Motion to Compel that "[Goodyear] is unaware of any insurance recovery salient to the JCL remediation [RD/RA] work for which Goodyear seeks contribution from the PRP defendants." ECF No. 166 at PageID 9115. The documents recently produced by Goodyear confirm this to be true.

Aside from briefing motions related to production of the Insurance Settlements, the only "prejudice" to Defendants here is the delay in confirming that the Insurance Settlements did not reimburse any of the RD/RA costs which Goodyear is seeking against them in this case. With the production of these confidential documents, along with the related documents, Defendants are now able to see for themselves that the Insurance Settlements are not relevant. Thus, Goodyear's delayed disclosure of the inconsequential Insurance Settlements did not hinder Defendants' ability to defend this case or brief their pending motions.

### E. Defendants Should Not be Allowed to Supplement Their Joint *Daubert* Motion to Disallow Low's Opinion and Motions for Summary Judgment.

Goodyear did not demand or recover any of the RD/RA costs at issue in this litigation from its insurers, and thus, the information contained in the Insurance Settlements and demand Spreadsheets are completely irrelevant to Defendants' pending motions for summary judgment and *Daubert* motions. Therefore, Defendants should not be allowed to revisit those motions or otherwise file supplemental briefs.

## CONCLUSION

For all the aforementioned reasons, the Court should deny Defendants' Joint Motion in its entirety or, at most, award reasonable attorney fees for Defendants' Motion to Compel.

Dated: July 22, 2024  Respectfully submitted,

*/s/ William J. Hubbard*
William J. Hubbard (0077033)
Trial Attorney
THOMPSON HINE LLP
3900 Key Center
Cleveland, Ohio 44114
216-566-5644
Bill.Hubbard@thompsonhine.com

*/s/ Jeffrey A. Thaler*
Jeffrey A. Thaler (admitted *pro hac vice*)
PRETI, FLAHERTY, BELIVEAU &
PACHIOS, LLP
One City Center
P.O. Box 9546
Portland, ME 04112-9546
207-791-3213
jthaler@preti.com

ATTORNEYS FOR PLAINTIFF THE
GOODYEAR TIRE & RUBBER COMPANY

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2024, a copy of the foregoing Opposition was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's Electronic Case Filing System.

*/s/ William J. Hubbard*
William J. Hubbard

11