# EXHIBIT 1

*Squire, Sanders & Dempsey*
L.L.P.
*Counsellors at Law*
1300 Huntington Center
41 South High Street
Columbus, Ohio 43215

*Telephone (614) 365-2700*
*Telecopier (614) 365-2499*

RECEIVED
AUG 17 1998
LAW DEPT
*Direct Dial Number*
(614) 365-2720

August 13, 1998

[redacted]

VIA FACSIMILE AND REGULAR MAIL

Joseph Koncelik, Esq.
Assistant Attorney General
Environmental Enforcement Section
Office of the Ohio Attorney General
30 East Broad Street, 25th Floor
Columbus, Ohio 43215-3428

Re: *State of Ohio v. Sanitation Commercial Services, et. al.*,
Case No. C2-97-984 (S.D. Ohio)
Jackson County Landfill (a.k.a. Jenkins Landfill)

Dear Joe:

As we discussed on the phone on August 5, The Goodyear Tire & Rubber Company ("Goodyear") wishes to respond to the State of Ohio's ("State") recent offer to negotiate a settlement prior to the State filing suit against Goodyear for injunctive relief and recovery of remedial and response costs at the Jackson County Landfill ("Landfill"). As you will recall, during a meeting with Goodyear representatives on July 16, you offered Goodyear the opportunity to respond to the State's invitation to negotiate a settlement prior to the filing of any claim against Goodyear for remediation of the Landfill. The purpose of this letter is to provide an outline of Goodyear's settlement proposal, which we would intend to discuss more fully with the State at a meeting to be held later this month. Due to your stated deadline of August 14 for determining whether to add Goodyear as a defendant to the cost recovery suit you have brought against the current owners of the Landfill, we are attempting to provide you with as much detail as possible given the time constraints.

Goodyear's proposal squarely meets the State's interests in proceeding with remedial activity as soon as possible. Primarily, the proposed work is designed to generate information

*Bratislava · Brussels · Budapest · Cleveland · Houston · Jacksonville · Kyiv · London*
*Madrid · Miami · Moscow · New York · Phoenix · Prague · Washington*

GY0002459

*Squire, Sanders & Dempsey*
L.L.P.

Joseph Koncelik  August 13, 1998
Page 2

necessary for an evaluation of appropriate remedial action at the Landfill. The proposed work would generate initial data necessary for a remedy to be designed, yet Goodyear is offering to complete this work at its own expense, in lieu of spending its resources on defending a lawsuit by the State. As Goodyear's offer is an essential first step toward remediation that would otherwise be delayed during prolonged litigation, it merits strong consideration by the State.

As an initial matter, Goodyear does not believe that it has any liability for closure under solid waste laws or otherwise. Even if closure obligations could be imposed on waste generators under Ohio solid waste laws (which we dispute), closure should be borne by those who have contributed to the primary environmental concerns. We are aware of no evidence that Goodyear's waste has any connection to the State's concerns at the Landfill. For instance, I understand that the State has indicated that one of its chief concerns is buildup and migration of landfill gas. However, according to Goodyear's records, Goodyear's waste would not have significantly contributed to methane generation, whereas the waste landfilled by food processing companies residences would have contributed most significantly to this problem.

Furthermore, the fact that the State has chosen to proceed against only Goodyear, and no other generator PRPs, suggests that the State may believe Goodyear to be responsible for an imminent and substantial environmental hazard at the Landfill. Again, we are not aware of any evidence that such a threat exists, or that Goodyear contributed in any way to such a threat. Despite this lack of evidence, the State has insisted on mandating a full closure under standards that arguably do not even apply to this Landfill.[1] Without any demonstrated immediate threat at the Landfill, it is fundamentally unfair for the State to attempt to require Goodyear to undertake all closure responsibilities, and we believe that the State would have substantial difficulty in proceeding down this path with a court action solely against Goodyear. Accordingly, the proposal outlined below is eminently reasonable considering the current conditions at the Landfill.

In light of these considerations, Goodyear proposes to perform the following:

- Ground water Assessment and Sampling

- Surface water Assessment and Sampling

- Leachate Seeps Assessment and Sampling

---

[1] The State has suggested to Goodyear that the Landfill should be closed under 1994 RCRA Subtitle D standards, Ohio Admin. Code 3745-27-11 (eff. June 1, 1994). However, according to the State's Complaint against Sanitation Commercial Services, et al., the Landfill stopped accepting waste in August, 1987, causing the facility to be subject at that time to closure requirements under 1976 closure standards (previously, Ohio Admin. Code 3745-27-10). Accordingly, we do not understand the basis or need for closure under 1994 standards.

*Squire, Sanders & Dempsey*
L.L.P.

Joseph Koncelik  
Page 3

August 13, 1998

- Methane Gas Assessment

- Existing Cover Material Evaluation and Sampling

Goodyear will provide a written plan detailing the above sampling and assessment activities. At the completion of field activities, Goodyear will provide a written report of findings and conclusions. <u>Any future involvement concerning remediation at the site will be dependent on the field assessment.</u>

In consideration for this offer, we would expect the State to agree to the following:

1. Provide all existing data regarding any leachate, surface water and landfill gas samples taken from or near the Landfill (by State or others) (including any methane gas studies);

2. Defer filing claim against Goodyear until at least State's review of investigation and preliminary negotiations with Goodyear for future work;

3. Full assistance in obtaining rights of access to Landfill and necessary adjacent properties for investigatory work;

4. Provide all existing information in the State's possession regarding other generators or transporters of waste at the Landfill;

5. Issue and pursue requests for information, drafted with Goodyear's assistance, to other PRPs pursuant to CERCLA § 104(e);

6. Devote all settlement funds contributed by Owner/Operator (and any other settling party) to investigatory work, without reduction in settlement funds for State oversight costs;

7. Actively support Goodyear's efforts to interview and obtain information from the Landfill owner and operator, J. Gregory Fields;

8. Allow Goodyear to collect supplementary data from Landfill beyond scope of agreed work plans and retain confidentiality of such data;

9. Credit in full the amount Goodyear spends on remedial investigation activities, against (a) Goodyear's liability for response costs under CERCLA and State hazardous waste provisions, and (b) to the extent that Goodyear's costs exceed its liability under (a), maintain such credit to be available against any future liability of Goodyear for fines or civil penalties under Ohio environmental laws;

*Squire, Sanders & Dempsey*
L.L.P.

Joseph Koncelik  
Page 4

August 13, 1998

10. Assurance that future remedial work at the Landfill will be supported by site-specific data and based upon sound engineering practices.

11. Agreement to a schedule for prompt and efficient review by Ohio EPA of all necessary work plans, sampling plans, reports and any other items which must be reviewed review prior to performance of the above-described work.

Again, this proposal will promptly provide important and necessary data to evaluate any necessary future work, without the State incurring expenses. Obviously, this settlement offer represents a substantial commitment of funding and effort from Goodyear. Goodyear would prefer to spend these resources on this work rather than on litigation, provided we can reach agreement on Goodyear's involvement at this site.

Goodyear will provide more detail on its offer at a meeting with the State. If you agree that it is more worthwhile to discuss this offer than to proceed with litigation, I will proceed to arrange for Goodyear representatives and consultants to meet with you and Ohio EPA representatives during the last two weeks of August.

We appreciate the State's consideration of this proposal, and we look forward to working with the State toward an agreeable resolution.

Sincerely,

Thomas J. Grever

TJG/dfh

cc: Frank A. Cich, Esq.  
Mark Whitmore  
Geoffrey K. Barnes, Esq.